RINEY & MAYFIELD
Thomas C. Riney, SBN: 16935100
W. Heath Henricks, SBN: 240556451
320 South Polk Street, Suite 600
Amarillo, Texas 79101
Telephone: (806) 468-3200
Facsimile: (806) 376-4509
Email: triney@rineymayfield.com
Email: hhendricks@rineymayfield.com

    -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com

*Attorneys for Defendant Rabo AgriFinance LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>WAGGONER CATTLE, LLC, ET AL<br><br>    Debtors. | Chapter 11<br><br>CASE NO. 18-20126-11-rlj<br>Jointly Administered |
| LONE STAR BANK OF WEST TEXAS,<br><br>    *Plaintiff,*<br><br>v. | **ADV. PROC. NO. 18-02007-rlj** |

| RABO AGRIFINANCE LLC, f/k/a RABO AGRIFINANCE, INC.; WAGGONER CATTLE, LLC; CLIFF HANGER CATTLE, LLC; and CIRCLE W OF DIMMITT, INC., <br><br> *Defendants*. | |
|---|---|

**ANSWER AND COUNTERCLAIM OF RABO AGRIFINANCE LLC, AND JURY DEMAND**

Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC, f/k/a Rabo Agrifinance, Inc. ("**Rabo**"), through counsel, hereby answers and otherwise responds as follows to *Plaintiff's Original Complaint* (the "**Complaint**") filed on June 29, 2018 [Dkt. 1] by Plaintiff Lone Star State Bank of West Texas ("**Lone Star**") and admits, denies and avers as follows:

<u>ANSWER</u>

Answering the specifically numbered paragraphs of the Complaint, Rabo admits, denies and avers as follows:

1.     Rabo admits the allegations of paragraph 1.

2.     Answering paragraph 2, Rabo admits that 28 U.S.C. §§ 157(a) and (b) and 1334 address jurisdiction over adversary proceedings and provide the definition of core proceedings. Rabo expressly denies that any of the claims that remain in this action are "core" claims and, instead, affirmatively states that at best any remaining claims are non-core, related to claims pursuant to which Rabo is entitled to a jury trial. Rabo lacks information or knowledge

sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 2 and, therefore, denies the same.

3.      Rabo admits the allegations of paragraph 3.

4.      Rabo admits the allegations of paragraph 4.

5.      Answering paragraph 5, Rabo denies that it is a Delaware corporation and asserts that it is a Delaware limited liability company.  Rabo also denies that its principal place of business is in St. Louis and, instead, affirmatively states that its principal place of business is in Chesterfield, Missouri.  Rabo admits the remaining allegations of paragraph 5.

6.      Answering paragraph 6, Rabo admits upon information and belief that the listed entity is a Texas limited liability company or corporation.  Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 6 and, therefore, denies the same.

7.      Answering paragraph 7, Rabo admits upon information and belief that the listed entity is a Texas limited liability company or corporation.  Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 7 and, therefore, denies the same.

8.      Answering paragraph 8, Rabo admits upon information and belief that the listed entity is a Texas limited liability company or corporation.  Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 8 and, therefore, denies the same.

9.      Rabo admits the allegations of paragraph 9.

10-11. Answering paragraphs 10 and 11, Rabo admits that the Complaint seeks the relief described in these paragraphs, denies that Lone Star is entitled to the relief requested, and denies any remaining allegations of paragraphs 10 and 11.

12-15. Answering paragraphs 12 through 15, Rabo admits upon information and belief that Lone Star entered into various loan agreements with some or all of the debtors identified in these paragraphs, denies any assertion or characterization of these written loan documents that is not consistent with their written terms, asserts that Rabo is not a party to the described loan documents, and denies all remaining allegations in these paragraphs.

16.     Answering paragraph 16, Rabo admits that the Waggoner Entities hired Moseley & Riddle and denies any assertion or characterization of the written loan documents between Lone Star and the Waggoner Entities that is not consistent with their written terms. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 16 and, therefore, denies the same.

17.     Answering paragraph 17, Rabo admits that it received periodic borrowing base reports from the Waggoner Entities. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 17 and, therefore, denies the same. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star reasonably relied upon borrowing base reports that the Waggoner Entities would have supplied to Rabo.

18-21. Answering paragraphs 18 through 21, Rabo asserts that the written loan documents entered into between the Waggoner Entities and Lone Star, and the Waggoner

Entities and Rabo describe and define the arrangements to loan money, and denies any assertion

or characterization of the written loan documents by Lone Star that is not consistent with these

written loan documents. These paragraphs also contain allegations of law rather than fact, to

which no answer is required. To the extent that an answer is required to these allegations of law,

Rabo denies the same. Rabo lacks information or knowledge sufficient to form a belief about the

truth or falsity of the remaining allegations set forth in paragraphs 18 through 21 and, therefore,

denies the same.

22.      Answering paragraph 22, Rabo denies any assertion or characterization of any

Forbearance Agreement between Waggoner Cattle and Lone Star that is not consistent with the

written terms of any such agreement, and asserts that Rabo is not a party to the described

agreement. Rabo lacks information or knowledge sufficient to form a belief about the truth or

falsity of the remaining allegations set forth in paragraph 22 and, therefore, denies the same.

23-23. Answering paragraphs 23 through 25, Rabo lacks information or knowledge

sufficient to form a belief about the truth or falsity of the allegations set forth therein and,

therefore, denies the same.

26-28. Answering paragraphs 26 through 28, Rabo admits that it expressed an interest in

financing to Waggoner-related entities, admits that it entered into a loan agreement and an

amended and restated loan agreement with Cliff Hanger and other Waggoner entities, asserts that

the amended and restated loan agreement and related written loan documents describe the terms

of financing provided by Rabo, and denies any allegation or characterization by Lone Star that is

not consistent with those written documents. Rabo lacks information or knowledge sufficient to

form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 26

through 28 and, therefore, denies the same.

29-33. Answering paragraphs 29 through 33, Rabo admits that Rabo and Lone Star

discussed an intercreditor agreement, admits that Rabo and Lone Star entered into an

Intercreditor Agreement, asserts that the Intercreditor Agreement describes the parties'

agreement, denies any allegation or characterization by Lone Star that is not consistent with the

written documents, and denies any remaining allegations of paragraphs 29 through 33.

24-35. Answering paragraphs 34 and 35, Rabo lacks information or knowledge sufficient

to form a belief about the truth or falsity of the allegations set forth therein and, therefore, denies

the same.

26-40. Answering paragraphs 36 through 40, Rabo asserts that the Intercreditor

Agreement and the Credit Agreement describe Rabo's agreement and denies any allegation or

characterization by Lone Star that is not consistent with the written loan documents. Rabo

further asserts that these paragraphs contain allegations of law rather than fact, to which no

answer is required. To the extent that an answer is required to these allegations of law, Rabo

denies the same. Rabo denies any remaining allegations of paragraphs 36 through 40.

41-43. Answering paragraphs 41 through 43, Rabo asserts that these allegations relate to

causes of action that have been dismissed by the court and therefore no response is required.

Rabo further asserts that these paragraphs contain allegations directed to defendants other than

Rabo and therefore no response is required. To the extent any response is required, Rabo lacks

information or knowledge sufficient to form a belief about the truth or falsity of the allegations

set forth in paragraphs 41 through 43 and, therefore, denies the same.

44-49.   Answering paragraphs 44 through 49, Rabo denies that it instructed the Debtors to

transfer cattle without paying full value or price, asserts that the Intercreditor Agreement

describes the parties' agreement, and denies any allegation or characterization by Lone Star that

is not consistent with the Intercreditor Agreement.  These paragraphs also contain allegations of

law rather than fact, to which no answer is required.  To the extent that an answer is required to

these allegations of law, Rabo denies the same. Rabo lacks information or knowledge sufficient

to form a belief about the truth or falsity of the remaining allegations of paragraphs 44 through

49 and, therefore, denies the same.

50.   Rabo denies the allegations of paragraph 50.

51.   Answering paragraph 51, Rabo asserts that this paragraph contains allegations of

law rather than fact, to which no answer is required.  To the extent that an answer is required to

these allegations of law, Rabo denies the same.  To the extent this paragraph contains any factual

allegation, Rabo denies the same.

52-63.   Answering paragraphs 52 through 63, Rabo asserts that these paragraphs contain

allegations related to causes of action that have been dismissed by the court and therefore no

response is required.  Rabo further asserts that these paragraphs contain allegations of law rather

than fact, to which no answer is required.  To the extent that an answer is required to these

allegations of law, Rabo denies the same.  To the extent these paragraphs contain any factual

allegations, Rabo denies the same.

64-111.    Answering paragraphs 64 through 114, Rabo asserts that these paragraphs contain allegations related to causes of action that have been dismissed by the court and therefore no response is required. Rabo further asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent these paragraphs contain any factual allegations, Rabo denies the same.

115.    Answering paragraph 115, Rabo incorporates and reasserts its answers, denials and averments to the preceding paragraphs of the Complaint, as if fully set forth.

116.    Answering paragraph 116, Rabo admits that Rabo and Lone Star entered into the Intercreditor Agreement, asserts that the Intercreditor Agreement describes the parties' agreement, denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement, and denies any remaining allegations of paragraph 116.

117.    Answering paragraph 117, Rabo asserts that this paragraph contains allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent this paragraph contains any factual allegations, Rabo denies the same.

118-119.    Answering paragraphs 118 and 119, Rabo admits that Rabo and Lone Star entered into the Intercreditor Agreement, asserts that the Intercreditor Agreement describes the parties' agreement, and denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.

120-121.        Answering paragraphs 120 and 121, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent these paragraphs contain any factual allegations, Rabo denies the same.

122.        Answering paragraph 122, Rabo admits that Rabo and Lone Star entered into the Intercreditor Agreement, asserts that the Intercreditor Agreement describes the parties' agreement, and denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in this paragraph.

123-125.        Answering paragraphs 123 through 125, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent these paragraphs contain any factual allegations, Rabo denies the same.

126.        Answering paragraph 126, Rabo incorporates and reasserts its answers, denials and averments to the preceding paragraphs of the Complaint, as if fully set forth.

127.        Answering paragraph 127, Rabo admits that Rabo and Lone Star entered into the Intercreditor Agreement, asserts that the Intercreditor Agreement describes the parties' agreement, and denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement.

128-131.        Answering paragraphs 128 through 131, Rabo asserts that the Intercreditor Agreement describes the parties' agreement, and denies any allegation or characterization by

Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.

132.    Rabo denies the allegations of paragraph 132 for, among other reasons, the reasons outlined in Rabo's Counterclaim.

133-135.    Answering paragraphs 133 through 135, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent these paragraphs contain any factual allegations, Rabo denies the same.

136.    Answering paragraph 136, Rabo incorporates and reasserts its answers, denials and averments to the preceding paragraphs of the Complaint, as if fully set forth.

137-141.    Answering paragraphs 137 through 141, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent these paragraphs contain any factual allegations, Rabo denies the same.

142.    Answering paragraph 142, Rabo asserts that the Intercreditor Agreement describes the parties' agreement, denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in this paragraph.

143.    Answering paragraph 143, Rabo denies that Lone Star is entitled to the amounts demanded by Lone Star, asserts that this paragraph contains allegations of law rather than fact, to

which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any remaining factual allegation contained in this paragraph.

144-145.    Answering paragraphs 144 and 145, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent these paragraphs contain any factual allegations, Rabo denies the same.

146.    Answering paragraph 146, Rabo incorporates and reasserts its answers, denials and averments to the preceding paragraphs of the Complaint, as if fully set forth.

147-148.    Answering paragraphs 147 and 148, Rabo asserts that the Intercreditor Agreement describes the parties' agreement, denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.

149.    Answering paragraph 149, Rabo denies that it entered into the Intercreditor Agreement with no intent to perform, asserts that the Intercreditor Agreement describes the parties' agreement, denies any allegation or characterization by Lone Star, including regarding any duties of Rabo, that is not consistent with the Intercreditor Agreement, denies that Rabo failed to comply with any duty in the Intercreditor Agreement, and denies any remaining factual allegation contained in this paragraph.

150.    Answering paragraph 150, Rabo asserts that this paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to

these allegations of law, Rabo denies the same. To the extent this paragraph contains any factual

allegations, Rabo denies the same.

151-153.        Rabo denies the allegations of paragraphs 151 through 153.

154.    Answering paragraph 154, Rabo asserts that this paragraph contains allegations of

law rather than fact, to which no answer is required. To the extent that an answer is required to

these allegations of law, Rabo denies the same. To the extent this paragraph contains any factual

allegations, Rabo denies the same.

155-156.        Rabo denies the allegations of paragraphs 155 and 156.

157.    Answering paragraph 157, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

158-161.        Answering paragraphs 158 through 161, Rabo denies that Lone Star is

entitled to the relief requested in these paragraphs. Rabo also asserts that these paragraphs

contain allegations of law rather than fact, to which no answer is required. To the extent that an

answer is required to these allegations of law, Rabo denies the same. To the extent these

paragraphs contain any factual allegations, Rabo denies the same.

162.    Answering paragraph 162, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

163-166.        Answering paragraphs 163 through 166, Rabo asserts that these

paragraphs contain allegations related to causes of action that have been dismissed by the court

and therefore no response is required. Rabo further asserts that these paragraphs contain

allegations of law rather than fact, to which no answer is required. To the extent that an answer

is required to these allegations of law, Rabo denies the same.  To the extent these paragraphs

contain any factual allegations, Rabo denies the same.

167.    Answering paragraph 167, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

168-170.      Rabo denies the allegations of paragraphs 168 through 170.

171.    Answering paragraph 171, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

172.    Answering paragraph 172, Rabo denies that any fraudulent transfers or

preferential transfers exist, asserts that this paragraph contains allegations of law rather than fact,

to which no answer is required, and denies any factual allegation in this paragraph.

173.    Answering paragraph 173, Rabo lacks information or knowledge sufficient to

form a belief about the truth or falsity of these allegations and, therefore, denies the same.

174-177.      Answering paragraphs 174 through 177, Rabo asserts that these

paragraphs contain allegations of law rather than fact, to which no answer is required.  To the

extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent

these paragraphs contain any factual allegations, Rabo lacks information or knowledge sufficient

to form a belief about the truth or falsity of these allegations and, therefore, denies the same.

178-181.      Answering paragraphs 178 through 181, Rabo asserts that these

paragraphs contain allegations of law rather than fact, to which no answer is required.  To the

extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent

these paragraphs contain any factual allegations, Rabo denies the same.

182-183.    Rabo denies the allegations of paragraphs 182 through 183.

184.    Answering paragraph 184, Rabo asserts that this paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent this paragraph contains any factual allegations, Rabo denies the same.

185.    Rabo denies each and every allegation of the Complaint not expressly admitted herein.

**FIRST AFFIRMATIVE DEFENSE**

Lone Star's Complaint, and all claims set forth therein that have not already been dismissed by the Court, fails to state a claim against Rabo upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Some of Lone Star's claims in this action may be barred, or alternatively the damages that Lone Star may recover on such claims may be reduced, by the applicable statutes of limitation related to such claims, including but not limited to Tex. Civ. Prac. & Rem. Code §§ 16.003(a), 16.004(a)(3), 16.004(4), and/or 16.051, as applicable.

**THIRD AFFIRMATIVE DEFENSE**

This Court lacks subject matter jurisdiction over Plaintiff's Seventh, Eighth, Ninth, Tenth, Eleventh, and Thirteenth Causes of Action, alleging claims under state law for which there is no related to jurisdiction.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's equitable claims against Rabo are barred by Plaintiff's unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims seeking relief that differs from the terms of the Intercreditor Agreement are barred by the statute of frauds, including without limitation, Tex. Bus. & Comm. Code Sec. 26.01(b)(6).

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Rabo are barred, in whole or in part, by the doctrine of laches, waiver, and/or estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, in that the relief sought in Plaintiff's Complaint would constitute an unjust enrichment of Plaintiff to the detriment of Rabo.

## EIGHTH AFFIRMATIVE DEFENSE

All or part of Plaintiff's claims for relief are or may be barred by the doctrine of *in pari delicto* because the Plaintiff was more at fault concerning the allegations of fault or culpability between the parties.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's tort claims are barred by the economic loss rule and the fact that a written contract governs the rights of the Plaintiff and Rabo.  Therefore, Plaintiff's damages, if any, should sound in contract and all tort claims should be dismissed.

### TENTH AFFIRMATIVE DEFENSE

Pursuant to the US and Texas Constitutions and applicable law, Rabo is entitled to a jury

trial in this action on Plaintiff's state-law claims, and those claims are the only remaining claims

in this case.  Rabo objects to a bench trial or to a jury trial in Bankruptcy Court.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for the reasons set forth in Rabo's Counterclaim.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for the reasons set forth in Rabo's Counterclaim.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and Rabo is entitled to attorneys' fees and costs as well as

sanctions if the allegations of the Waggoner entities' Combined Disclosure Statement [Dkt. 191,

filed Nov. 15, 2018] are correct.  Specifically, that document states that Lone Star attempted to

bribe the Debtors with $4 million to induce them to file for bankruptcy so that Lone Star could

sue Rabo.  Further, that document states that Quint Waggoner "hired two business students from

Texas Tech and they reviewed and compiled the transactions between the two companies for the

past three years.  The data was compiled into binders and presented to bank's personnel and its

attorneys at a meeting in January.  The data showed that Rabo Bank had in fact over paid LSSB

between 3 and 4 Million Dollars for the value of the cattle."

## FOURTEENTH AFFIRMATIVE DEFENSE

Rabo reserves the right to assert additional defenses, or to delete affirmative defenses already plead, to the extent that such defenses become known as a result of discovery or otherwise.

WHEREFORE, having fully responded to the Complaint, Rabo prays for judgment in its favor and against the Plaintiff, as follows:

A.      That Plaintiff take nothing on its Complaint as it relates to Rabo, and that the Complaint be dismissed with prejudice and upon the merits as it relates to Rabo.

B.      That the Court enter judgment against Plaintiff and in favor of Rabo, finding no cause of action.

C.      That the Court award Rabo its reasonable attorneys' fees and costs incurred in this action, to the extent they are allowed by contract or by law.

D.      That the Court award Rabo such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure and Rule 7013 of the Federal Rules of Bankruptcy Procedure, Defendant and Counterclaim Plaintiff Rabo AgriFinance LLC, f/k/a Rabo Agrifinance, Inc. ("**Rabo**"), through counsel, hereby counterclaims against Counterclaim Defendant Lone Star State Bank of West Texas ("**Lone Star**") and seeks relief as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Rabo is a Delaware limited liability company with its principal place of business in Chesterfield, Missouri.

2.      Lone Star is a Texas corporation with its principal place of business in Lubbock County, Texas.

3.      Based on the Court's Memorandum Opinion dated February 5, 2019 [Dkt. 30], this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409 (a) because the Waggoner Debtors' Chapter 11 cases are pending before the Bankruptcy Court.

5.      The claims set forth in this Counterclaim are "non-core" claims that are related to the underlying Chapter 11 cases filed by Quint Waggoner and the Waggoner Corporate Debtors.

## GENERAL ALLEGATIONS

6.      On April 9, 2018, each of the following related entities (collectively, the "**Waggoner Corporate Debtors**") filed separate Chapter 11 petitions with the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"): (a) Waggoner Cattle, LLC, Case No. 18-20126, (b) Circle W of Dimmitt, Inc., Case No. 18-20127, (c) Bugtussle Cattle, LLC, Case No. 18-20128, and (d) Cliff Hanger Cattle, LLC , Case No. 18-20129.

7.    The separate Chapter 11 cases of each of the Waggoner Corporate Debtors are being jointly administered under the case number for Waggoner Cattle, LLC, Case No. 18-20126.

8.    Michael Quint Waggoner ("**Quint Waggoner**") is the owner and manager/president, as applicable, of all of the Waggoner Corporate Debtors.

9.    On April 9, 2018, Quint Waggoner filed his own separate Chapter 11 petition with the Bankruptcy Court, Case No. 18-20125.

10.    The Waggoner Corporate Debtors and Quint Waggoner are collectively referred to herein as the "**Waggoner Debtors.**"

11.    Prior to the bankruptcies of the Waggoner Debtors, Rabo agreed to extend credit to the Waggoner Debtors, as described in an *Amended and Restated Credit Agreement*, dated December 2, 2014, entered into by the Waggoner Debtors and Rabo, as amended by (a) that certain *First Amendment to Credit Agreement and Other Loan Documents*, dated January 16, 2015, (b) that certain *Second Amendment to Credit Agreement and Other Loan Documents* dated February 20, 2015, (c) that certain *Third Amendment to Credit Agreement and Other Loan Documents*, dated January 12, 2016, and (d) that certain *Fourth Amendment to Credit Agreement and Other Loan Documents*, dated May 3, 2016 (collectively, the "**Credit Agreement**").

12.    In connection with the Credit Agreement, the Waggoner Debtors and others each executed and delivered to Rabo (a) that certain *Amended and Restated Line of Credit Note*, dated December 2, 2014, (b) that certain *Amended and Restated Line of Credit Note*, dated February 20, 2015, and (c) that certain *Amended and Restated Line of Credit Note*, dated January 12, 2016,

pursuant to which the Waggoner Debtors jointly and severally promised and agreed to pay to

Rabo or its order the principal sum of the amount borrowed from Rabo up to $42,000,000.00 in

accordance with the terms of the Credit Agreement, as amended (collectively, the "**Note**"). The

loan evidenced by the Credit Agreement, as amended, and the Note, is hereafter referred to as the

"**Rabo Loan**."

13.     A security for their obligations under the Rabo Loan, the Waggoner Debtors

executed and delivered to Rabo (a) an *Amended and Restated Security Agreement* dated

December 2, 2014, and (b) a *Security Agreement*, dated January 12, 2016 (collectively, the

"**Security Agreements**"), wherein the Waggoner Debtors jointly and severally granted to Rabo a

security interest in all of their rights and interests in accounts, contract rights, documents,

documents of title, payment intangibles, investment property, chattel paper, instruments, deposit

accounts, inventory, equipment, fixtures, farm products, general intangibles, proceeds of any

crop insurance, price support payment or other government program, Hedging Agreements,

accessions, attachments and other additions, substitutes or replacements, proceeds, products,

rents and profits of any of the foregoing, all as more particularly described in the 2016 Security

Agreement (collectively, the "**Personal Property Collateral**").

14.     Rabo perfected its interest in the Personal Property Collateral by filing UCC-1

Financing Statements with the Texas Secretary of State and with the Delaware Secretary of State

(Bugtussle Cattle, LLC is a Delaware limited liability company).

15.     As of the April 9, 2018 Petition Date, the amount owed by the Waggoner Debtors

to Rabo under the Rabo Loan was the sum of $13,104,815.50.

16.     Upon information and belief, prior to the bankruptcies of the Waggoner Debtors, Defendant Lone Star also extended credit to some or all of the Waggoner Debtors, secured by security interests granted by Waggoner Cattle, LLC and other of the Waggoner Debtors.

17.     Rabo and Defendant Loan Star executed and entered into an Intercreditor Agreement, dated November 26, 2014 (the "**Intercreditor Agreement**"), a copy of which is attached hereto as Exhibit A and incorporated herein.

18.     In the Intercreditor Agreement, Defendant Loan Star agreed that any security interest claimed by Lone Star in "Cliff Hanger Collateral" is junior in priority to the security interest of Rabo in Cliff Hanger Collateral.

19.     In the Intercreditor Agreement, Collateral is defined as "any and all personal property of Waggoner [Cattle, LLC] or Cliff Hanger [Cattle, LLC] which is subject to a perfected security interest or lien in favor of any one or more of" Lone Star or Rabo as security for indebtedness owed to Rabo or Lone Star.  Also in the Intercreditor Agreement, Cliff Hanger Collateral is defined as "that portion of the Collateral that is located in the Cliff Hanger Feedyards, is related, or arises from or in connection with Cliff Hanger's operations in the Cliff Hanger Feedyards."

20.     On information and belief, Lone Star claims a first priority lien on real property of Bugtussle Cattle, LLC known as the Calf Ranch.

21.     According to Lone Star, $4,340,610.89 was transferred by Cliff Hanger Cattle, through Waggoner Cattle, to Bugtussle Cattle, LLC, to fund capital improvements at the Calf Ranch (the "**Calf Ranch Transfers**").

22.    Upon information and belief, the Calf Ranch Transfers were loan proceeds advanced by Rabo, or were proceeds of Cliff Hanger Collateral, rightfully belonging to Rabo.

23.    On November 15, 2018, the Waggoner Debtors filed their *Debtors' Combined Disclosure Statement and Plan of Reorganization* (the "**Disclosure Statement**") in their Chapter 11 cases.

24.    On pages 10 and 11 of the Disclosure Statement, the Waggoner Debtors affirmatively allege that December of 2017 or January of 2018, Quint Waggoner hired two business students from Texas Tech University to investigate allegations that Lone Star was making against Rabo.

25.    Those same pages of the Disclosure Statement further allege that those two business students "reviewed and compiled the transactions between the two companies for the past three years.  The date was compiled into binders and present to bank's personnel and its attorneys at a meeting in January.  The data showed that Rabo Bank had in fact over paid LSSB between 3 and 4 Million Dollars for the value of the cattle."

<u>FIRST CAUSE OF ACTION</u>
(Breach of Contract)

26.    Rabo realleges and incorporates all of the foregoing paragraphs herein by reference.

27.    The Calf Ranch Transfers constitute Cliff Hanger Collateral, or proceeds of Cliff Hanger Collateral, under the terms of the Intercreditor Agreement.

28.    Upon information and belief, Lone Star, by virtue of its lien on the Calf Ranch, claims a security interest in the Calf Ranch Transfers, or the proceeds of the Calf Ranch Transfers, and has asserted a right to the Calf Ranch Transfers, or the proceeds of the Calf Ranch Transfers.

29.    Under the Intercreditor Agreement, Lone Star agreed that Lone Star's interest in the Calf Ranch Transfers is junior and inferior to the interests of Rabo in Cliff Hanger Collateral, including the Calf Ranch Transfers.

30.    Defendant Lone Star is in default of its covenants under the Intercreditor Agreement in that defendant Lone Star's claim to the Calf Ranch Transfers violates Rabo's rights and interests under the Intercreditor Agreement.

31.    Rabo has been damaged by Lone Star's breach of the Intercreditor Agreement in the amount of $4,340,610.89, the Calf Ranch Transfers, or such other amount as proved at trial, plus interest thereon as allowed by, until paid.

32.    Furthermore, according to the Waggoner Debtors as set forth in the Disclosure Statement, Rabo "in fact over paid LSSB between 3 and 4 Million Dollars for the value of the cattle."

33.    If these allegations are true, then Rabo also has been damaged by Lone Star's breach of the Intercreditor Agreement in the amount of somewhere between $3,000,000 and $4,000,000.

34.     Thus, Rabo appears to have suffered total damages from Lone Star's breach of

contract of between $7,340,610.89 and $8,340,610.89, which amounts will be subject to further

proof of trial, together with interest and attorneys' fees and costs of suit.

SECOND CLAIM FOR RELIEF<br>(Conversion)

35.     Rabo realleges and incorporates all of the foregoing paragraphs herein by

reference.

36.     Lone Star has intentionally taken dominion and control over Rabo's property by

asserting a claim to the Calf Ranch Transfers, or the proceeds of the Calf Ranch Transfers,

thereby depriving Rabo of its collateral or the proceeds thereof.

37.     As a direct and proximate result of defendant Lone Star's tortious acts, Rabo has

suffered damages in the amount of $4,340,610.89, the Calf Ranch Transfers, or such other

amount as proved at trial, plus interest thereon as allowed by law, until paid.

38.     Furthermore, according to the Waggoner Debtors as set forth in the Disclosure

Statement, Rabo "in fact over paid LSSB between 3 and 4 Million Dollars for the value of the

cattle."

39.     If these allegations are true, then Lone Star has intentionally taken dominion and

control over Rabo's property by taking funds to which it was not entitled, thereby depriving

Rabo of its collateral or the proceeds thereof.

40.     As a direct and proximate result of defendant Lone Star's tortious acts, and to the

extent the allegations of the Disclosure Statement are true, Rabo also has suffered additional

damages of somewhere between $3,000,000 and $4,000,000, or such other amount as proved at trial, plus interest thereon as allowed by law, until paid.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

41.    Plaintiff realleges and incorporates all of the foregoing paragraphs herein by reference.

42.    Lone Star has received the benefit of Calf Ranch Transfers in the amount of $4,340,610.89.

43.    Lone Star is unjustly enriched by its retention of the Calf Ranch Transfers.

44.    Rabo is entitled to a judgment against defendant Lone Star for the sum of $4,340,610.89, the amount of the Calf Ranch Transfers, or such other amount as proved at trial, plus interest thereon as allowed by, until paid.

45.    Furthermore, according to the Waggoner Debtors as set forth in the Disclosure Statement, Rabo "in fact over paid LSSB between 3 and 4 Million Dollars for the value of the cattle."

46.    If these allegations are true, then Lone Star also has been unjustly enriched by the retention of the $3,000,000 to $4,000,000 in cattle payments that it was not entitled to.

47.    Accordingly Lone Star may have been unjustly enriched by as much as $7,340,610.89 and $8,340,610.89 at the cost and expense of Rabo.

48.    Lone was fully aware of and knew of and appreciated all of the benefits it received from its lending relationship with the Waggoner Debtors, and also all of the benefits it received from having Rabo involved with the Waggoner Debtors.

49.    Rabo is entitled to a money judgment against Lone Star in the amount of all benefits unjustly received by Lone Star, which could be between $7,340,610.89 and $8,340,610.89 as noted above, or such other amount as may be proven at trial.

50.    Rabo also is entitled to interest and its attorneys' fees and costs of suit, to the extent otherwise allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment in its favor, and against defendant Lone Star State Bank, in the amount of (a) $4,340,610.89, the amount of the Calf Ranch Transfers, or such other amount as proved at trial, plus (b) the $3,000,000 to $4,000,000 in cattle proceeds that Lone Star apparently was not entitled to receive and for which it was overpaid according to the Disclosure Statement, plus (c) interest thereon as allowed by, until paid, together with (d) attorneys' fees and costs of suit to the extent allowed by law and such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and corresponding provisions of the Texas Constitution, applicable federal laws and statutes and Federal Rule of Civil Procedure 38, Rabo hereby demands a trial by jury of all facts, issues and claims triable by right in this action to a jury.

DATED:  February 25, 2019.

RINEY & MAYFIELD
Thomas C. Riney, SBN: 16935100
W. Heath Henricks, SBN: 240556451
320 South Polk Street, Suite 600
Amarillo, Texas 79101
Telephone:  (806) 468-3200
Facsimile:  (806) 376-4509
Email: triney@rineymayfield.com
Email: hhendricks@rineymayfield.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, the foregoing document was filed with the

Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all

electronic filing users in this case, including the following:

- **John H. Lovell**    john@lovell-law.net, paula@lovell-law.net;melissa@lovell-law.net;kaye@lovell-law.net;barbara@lovell-law.net;dana@lovell-law.net
- **Matthew S Merriott**    matthew@lovell-law.net
- **Thomas C. Riney**    triney@rineymayfield.com, hhendricks@rineymayfield.com; skarels@rineymayfield.com;rduke@rineymayfield.com;jschulte@rineymayfield.com;col guin@rineymayfield.com;dcraddock@rineymayfield.com
- **Max Ralph Tarbox**    jessica@tarboxlaw.com, tami@tarboxlaw.com; bkecf_tarbox@bkexpress.info;rmr76455@notify.bestcase.com

I further certify that on February 25, 2019, the foregoing document was served by first

class mail, postage prepaid, on the following parties:

**Barbara Bauernfeind**
Lovell, Lovell, Isern & Farabough, LLP
112 SW 8th Ave Ste 1000
Amarillo TX 79101


_/s/ Michael R. Johnson_
Michael R. Johnson


1480450

# Exhibit A

## INTERCREDITOR AGREEMENT

This Intercreditor Agreement (this "*Agreement*") is entered and effective as of November 26, 2014, between **LONE STAR STATE BANK OF WEST TEXAS** ("*Lone Star*") and **RABO AGRIFINANCE, INC.** ("*RAF*") (Lone Star and RAF may each be referred to as a "*Creditor*" and collectively as the "*Creditors*").

### Recitals

A.      **Waggoner Cattle, LLC, a Texas limited liability company** ("*Waggoner*"), and Lone Star have entered into a certain loan documents, promissory notes or other financial agreements dated March 7, 2014 (the "*Lone Star Loan Documents*"), under which certain credit facilities and other accommodations have been extended to Waggoner Cattle, LLC; Cliff Hanger Cattle, LLC; Bugtussle Cattle, LLC; Circle W of Dimmitt, Inc.; and Waggoner Trust (collectively and including any and all amendments, modifications, restatements, renewals or extensions of such credit facilities, the "*Waggoner Indebtedness*") , which will be used by Waggoner to finance the Waggoner's cattle operations located on certain premises specifically owned and operated by Waggoner (said premises, the "Waggoner Calf Ranch").

B.      **Cliff Hanger Cattle, LLC, a Texas limited liability company** ("Cliff Hanger") together with other named Borrowers and RAF have entered into a Credit Agreement dated of even date herewith (the "*Cliff Hanger Credit Agreement*"), under which certain credit facilities and other accommodations have been extended to Cliff Hanger (collectively and including any and all amendments, modifications, restatements, renewals or extensions of such credit facilities, the "*Cliff Hanger Indebtedness*"), which will be used by Cliff Hanger to finance Cliff Hanger's cattle operations including the feeding and caring of the its cattle in certain feedyards, specifically but not limited to operations located on the following third party feedyards (1) Bar G Feedyard, (2) Dean Cluck Feedyard (3) Barrett & Crofoot Feedyard, and (4) other feed yards acceptable to RAF (said feedyards, "Cliff Hanger Feedyards").

C.      The Waggoner Indebtedness is secured by certain security interests granted by Waggoner to Lone Star from time to time covering the Collateral located on the Waggoner Calf Ranch.

D.      The Cliff Hanger Indebtedness is secured by certain security interests granted by Cliff Hanger to RAF from time to time covering the Collateral located on the Cliff Hanger Feedyards.

E.      The Creditors desire to enter this Agreement in order to set forth the relative priorities of the liens and security interests securing the Indebtedness (as defined in this Agreement).

### Agreement

In consideration of these premises, the mutual covenants contained in this Agreement, and for other good and valuable consideration, the Creditors agree as follows:

1.      <u>Defined Terms</u>. As used in this Agreement, the terms defined in the introductory paragraph and in the recitals to this Agreement shall have the meanings assigned therein, and the following terms shall have the following meanings:

"*Waggoner Collateral*" means that portion of the Collateral that is located on the Waggoner Calf Ranch, is related to, or arises from or in connection with Waggoner's operations on the Waggoner Calf Ranch.

"*Collateral*" means any and all personal property of Waggoner or Cliff Hanger which is subject to a perfected security interest or lien in favor of any one or more of the Creditors to secure all or any portion of the Indebtedness.

"*Debtor Relief Laws*" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, compromise, or similar debtor relief or corporate Laws of the United States, or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

"*Indebtedness*" shall collectively refer to the Waggoner Indebtedness and the Cliff Hanger Indebtedness.

"*Cliff Hanger Collateral*" means that portion of the Collateral that is located in the Cliff Hanger Feedyards, is related to, or arises from or in connection with Cliff Hanger's operations in the Cliff Hanger Feedyards.

2.      Priority of Security Interests in the Collateral.  Notwithstanding anything to the contrary contained in any document now or hereafter governing, evidencing, securing, guaranteeing, or otherwise relating to or executed in connection with all or any portion of the Indebtedness, or the order of filing of any financing statement filed to perfect a security interest or lien granted to secure the Indebtedness, as between the Creditors:

(a)  Any Lone Star security interest in, or lien or encumbrance on, or claim to Cliff Hanger Collateral including proceeds thereof or rights relating thereto shall be junior in priority to the security interest in, lien, encumbrance on, claims or rights of RAF to the Cliff Hanger Collateral. Upon delivery of the Collateral to the Cliff Hanger Feedyards and receipt of payment in full by Waggoner, thereafter all Collateral located in the Cliff Hanger Feedyards shall be owned by and in possession of Cliff Hanger and shall be Cliff Hanger Collateral.

(b)      Any RAF security interest in, or lien or encumbrance on, or claim to Waggoner Collateral including proceeds thereof or rights relating thereto shall be junior in priority to the security interest in, lien, encumbrance on, claims or rights of Lone Star to the Waggoner Collateral;

3.      Obligations Separate.  Each Creditor may, in its sole discretion, without notice to the other Creditor, (i) agree to modify any of the terms of the Indebtedness owing to it or any agreement governing such Indebtedness to which it is a party; (ii) waive any of such terms or give or withhold consents or approvals to any action or failure to act by the Borrower or any other person thereunder; or (iii) exercise or refrain from exercising any powers or rights it may have (subject to the other terms and conditions of this Agreement), or permit substitutions or releases of security without reduction of the Indebtedness.

4.      Waiver of Marshalling; No Challenge to Liens.  Each Creditor waives any rights which it might otherwise have as against the other Creditor to require a marshalling of the assets of Borrower. Each Creditor hereby agrees not to contest the validity, enforceability, perfection, or priority of the lien and security interest of the other Creditor.

5.      Further Assurances.  Each Creditor shall, upon the reasonable request of the other Creditor, from time to time execute and deliver, or cause to be executed and delivered, such further instruments and do, and cause to be done, such further acts as may be necessary or proper to carry out

more effectively the provisions of this Agreement. Lone Star shall provide written notice to RAF of any material defaults or events of default (including defaults resulting from financial covenant noncompliance) under the Lone Star Documents.

6. **Amendments, Etc.** No amendment or waiver of any provision of this Agreement, nor consent to any departure by a Creditor from any provision of this Agreement, shall be effective unless the same shall be in writing and signed by the Creditors, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

7. **Notices, Etc.** All notices and other communications provided for under this Agreement shall, unless otherwise stated herein, be in writing or by facsimile, and mailed, sent or delivered, as to each party hereto, at its address set forth below or at such other address as shall be designated by such party in a written notice to the other parties hereto in accordance with the requirements of this Section. All such notices and communications shall be effective, in the case of written notice, when sent addressed as follows:

| | |
|---|---|
| If to Lone Star: | Lone Star State Bank of West Texas<br>6220 Milwaukee Avenue<br>Lubbock, Texas 79424<br>Attn: Bart Schilling<br>Tel: 806-771-7717<br>Fax: 806-771-7716 |
| If to RAF: | Rabo AgriFinance, Inc.<br>12443 Olive Blvd., Suite 50<br>St. Louis, MO 63141<br>Attn: Servicing Dept.<br>Tel: (314) 317-8000<br>Fax: (877) 655-9514 |
| If to Cliff Hanger: | Cliff Hanger Cattle, LLC<br>2936 US Highway 385/PO Box 162<br>Dimmitt, TX 79027<br>Attn: Michael Quint Waggoner<br>Tel: (806) 647-6626 |
| If to Waggoner: | Waggoner Cattle, LLC<br>2936 US Highway 385/PO Box 162<br>Dimmitt, TX 79027<br>Attn: Michael Quint Waggoner<br>Tel: (806) 647-6626 |

F. **Binding Effect; Assignments.** This Agreement shall become effective when it shall have been executed by the Creditors and thereafter shall be binding upon and inure to the benefit of the Creditors and their respective successors and assigns. Neither Creditor may assign its rights under this Agreement without the consent of the other Creditor, which consent shall not be unreasonably withheld.

G.      Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of Texas.

H.      Execution in Counterparts.  This Agreement may be executed in any number of counterparts (including by electronic transmission) and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement. Electronic delivery of an executed counterpart of a signature page to this Agreement shall be effective as delivery of an original executed counterpart of this Agreement.

I.      Duration. This Agreement shall continue in full force and effect, and shall be binding upon the Creditors for so long as any of the Indebtedness remains outstanding.

J.      Enforceability.  This Agreement is enforceable in a case commenced under or in connection with any Debtor Relief Law to the same extent that it is enforceable under other applicable law.

IN WITNESS WHEREOF, the Creditors have executed this Agreement as of the date first written above.

RABO AGRIFINANCE, INC.

By: _Allyson Foley_

Name: _Allyson Foley_

Title: _AVP, Operations Manager_

LONE STAR STATE BANK OF WEST TEXAS

By: _____

Name: _Bart Schilling_____

Title: _Senior Vice President_____

The undersigned hereby consents to, and to the extent necessary, agrees to be bound by the foregoing Intercreditor Agreement.

Cliff Hanger:

**CLIFF HANGER CATTLE, LLC**, a Texas limited liability company

By: _____
MICHAEL QUINT WAGGONER
President/Member/Manager

Waggoner:

**WAGGONER CATTLE, LLC**, a Texas limited liability company

By: _____
MICHAEL QUINT WAGGONER
Manager