LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
John H. Lovell, SBN 12609300
Barbara A. Bauernfeind, SBN 08190500
Matthew S. Merriott, SBN 24100846
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone:  806/373-1515
Facsimile:  806/379-7176
*Attorneys for Lone Star State Bank of West Texas*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| WAGGONER CATTLE, LLC, ET AL, | § | |
| | § | CASE NO. 18-20126-rlj-11 |
| | § | Joint Administration |
| *Debtors.* | § | |

| | | |
|---|---|---|
| LONE STAR STATE BANK OF | § | |
| WEST TEXAS, | § | |
| | § | ADVERSARY PROCEEDING NO. |
| *Plaintiff,* | § | 18-02007-rlj-11 |
| | § | |
| v. | § | |
| | § | |
| RABO AGRIFINANCE, LLC, | § | |
| f/k/a RABO AGRIFINANCE, INC. | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## **BRIEF IN SUPPORT OF LONE STAR'S MOTION TO DISMISS COUNTERCLAIM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ....................................................................................................1

I.    As Rabo Previously Argued, Fraudulent Transfer Claims
      Are Property of the Debtors' Estates and Rabo's Allegations
      Regarding the "Calf Ranch Transfers" Merely Outline
      Fraudulent Transfers By and Between Debtors. ...............................3

      A.    Rabo's Causes of Action Based Upon the "Calf Ranch
            Transfers" Are Fraudulent Transfer Claims That Are
            Property of Debtor's Estates and Must Be Dismissed
            Because Rabo Lacks Standing and Authority To
            Pursue The Fraudulent Transfers. ......................................3

      B.    Rabo's Allegations Are Predicated Upon Fraudulent
            Transfer Claims Governed By Chapter 5 and Must
            Be Dismissed. .......................................................................7

            1.    Rabo May Not Assert Claims Under Section
                  548 For Itself. ...........................................................8

            2.    Rabo Does Not Have Authority to Pursue Claims
                  Governed By Section 548 on Behalf of the Debtors ...............9

      C.    Relabeling a Fraudulent Transfer Claim To Avoid
            Calling It a Fraudulent Transfer Claim Does Not Permit
            Recovery for Rabo As To The "Calf Ranch Transfers".
            ("A rose by any other name would smell as sweet.") ......................10

      D.    Counterclaim Fails to State Facts of Prima Facie Case
            for Three Causes of Action Against Lone Star as to the
            "Calf Ranch Transfers". ........................................................11

            1.    Failure to State Facts of Prima Facie Case
                  of Breach of Intercreditor Agreement. ..................................11

            2.    Failure to State Facts of Prima Facie Case
                  of Conversion. ...........................................................11

            3.    Failure to State Facts of Prima Facie Case
                  of Unjust Enrichment. ...................................................12

i

II.    **Second Predicate Set of Disputed "Facts" For Rabo Causes of Action Based Upon Statement in Debtors' Disclosure Statement Regarding Tech Students' Assertions Fails To State Cause of Action of Defendant Against Lone Star.** ..............................14

    A.    **Federal Pleading Rules Require More Than A Double Hearsay Statement, that Rabo Admits it Does Not Know To Be True, that Some Tech Students Assert "Rabo Bank" [A Non-Party] Allegedly Over Paid Lone Star for Cattle.** ..........................................14

    B.    **Rabo's Claim Based On The Tech Students' Belief A Non- Party Over Paid Lone Star For Cattle Fails To State A Claim For Relief By Defendant That Is Plausible On Its Face.** ...........................15 15

    C.    **A Mere Possibility That A Party Acted Unlawfully Is Insufficient To State A Plausible Claim For Relief.** ......................16

    D.    **If Any Debtor Over Paid Another Debtor For Cattle That, Again, Is, At Best, Another Fraudulent Transfer Claim Owned By The Debtor, Not Rabo.** ...........................................20

    E.    **Same Analysis Outlined in Section I Applies To Bar Relabeled Fraudulent Transfer Claim Based On Hearsay As To Tech Students' Belief Regarding Payments For Cattle of Debtors.** .........................................................21

    F.    **Rabo Is Also Bound By The Course of Performance And Violated The Intercreditor Agreement When It Seized All Cattle Sales Proceeds.** .........................................................21

**CONCLUSION** ................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ......................................9

*American Nat'l Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica ......... Corp.*) 714 F.2d 1266 (5th Cir. 1983) …………….…………………………………....4,5,10

*Apache Corp. v. Dynegy Midstream Services, Ltd. Partnership*, 214 S.W.3d 554, (Tex. App.–Houston [14th Dist.] 2006, no pet. h.)...........................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………………15,16

*Belfor USA Group, Inc. v. Bray & Gillespie, LLC*, 605CV1624ORL19UAM, 2008 WL 276022, (M.D. Fla. Jan. 31, 2008) .....................................................................................13

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................15,16,19

*City of The Colony v. North Texas Mun. Water Dist.,* 272 S.W.3d 699 (Tex. App. – Fort Worth 2008, pet. dism'd)................................................................................... 11

*Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883, (Fla. 2d DCA 1982).............................................................................................13

*Cullen Ctr. Bank and Trust v. Hensley* (*In re Criswell*), 102 F.3d 1411 (5th Cir. 1997)..............5

*E & M Marine Corp. v. First Union Nat'l Bank*, 783 So.2d 311, 312 (Fla. 3d DCA 2001)...............................................................................................13

*Edionwe v. Bailey*, 860 F.3d 287 (5th Cir. 2017)............................................................... 14,15

*FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2nd Cir. 1992) ...............................6

*Fulcrum Credit Partners LLC v. Strategic Capital Res., Inc.*, 2011 WL 13104241(W.D. Tex. Mar. 15, 2011) ...............................................................................................................13

*Heldenfel Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39 (Tex. 1992) ...........................12

*In re Bradley*, 326 Fed. Appx. 838 (5th Cir.2009).......................................................................5

*In re Cooper*, 405 B.R. 801 (Bankr. N.D. Tex. 2009) ................................................................9

*In re Furrs*, 294 B.R. 753 (Bankr. D.N.M. 2003) .......................................................................8

*In re iPCS, Inc.*, 297 B.R. 283 (Bankr. N.D. Ga. 2003)..............................................................8

*In re Moore*, 608 F.3d 253 (5th Cir. 2010)............................................................................5, 6

*In re Saunders*, 101 B.R. 303 (Bankr. N.D. Fla. 1989) ............................................................6

*In re Xonics Photochemical, Inc.*, 841 F. 2d 198 (7th Cir. 1988) ...............................................9

*Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994) ..............6

*Lopez v. Lopez,* 271 S.W.3d 780 (Tex. App. – Waco 2008, no pet.) .......................................11

*Louisiana World Exposition v. Fed Ins. Co.*, 858 F.2d. 233 (5th Cir. 1988) ..............................9

*Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust),* 25 F.3d 1281 (5th Cir. 1994) ........................................................................................5

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ...................................................................................................................................... 9

*Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664 (E.D. Tex. 1998) ..............................................................................................................................................13

*U.S. v. Well Point, Inc.,* 904 F.3d 667 (9th Cir. 2018) ...........................................................20

*Villas at Parkside Partners v. City of Farmers Branch,* 245 F.R.D. 551 (N.D. Tex. 2007) .......9

## Statutes

11 U.S.C. § 362 ........................................................................................................................7

11 U.S.C. § 362(a) ..................................................................................................................10

11 U.S.C. § 362(a)(3) ..........................................................................................................4,5,6

11 U.S.C. § 362(a)(5) ................................................................................................................4

11 U.S.C. § 541(a)(1) ..........................................................................................................3,4,6

11 U.S.C. § 541(a)(3) ................................................................................................................3

11 U.S.C. § 544 ..................................................................................................................3,5,6,7

11 U.S.C. § 548 ....................................................................................................3,5,7,8,9,10,21

11 U.S.C. § 548(a)(1) ................................................................................................................8

11 U.S.C. § 550 ........................................................................................................................3

11 U.S.C. § 550(a) ....................................................................................................................8

11 U.S.C. § 1107(a) ........................................................................................................8

Tex. Bus. & Com. Code §1.303(e) ...............................................................................21

Tex. Bus. & Com. Code §1.303(f) ...............................................................................21

Tex. Bus. & Com. Code §24.005 ...................................................................................5

**Rules**

Federal Rules of Civil Procedure 9(b) .........................................................................20

Federal Rules of Civil Procedure 12(b)(1) .................................................................1,9

Federal Rules of Civil Procedure 12(b)(6) ....................................................................1

**Other Authorities**

5 Collier on Bankruptcy, ¶ 548.02[1](16th ed.) ......................................................8,10

William Shakespeare, *Romeo and Juliet*, Act II, Scene II ...........................................10

## ARGUMENT

1.    Plaintiff Lone Star State Bank of West Texas ("Lone Star") respectfully submits this Brief in Support of its *Motion to Dismiss Defendant's Counterclaim*.  As set forth below, Lone Star requests that the Counterclaim, and causes of action stated therein, filed by Defendant Rabo AgriFinance LLC, f/k/a Rabo Agrifinance, Inc. ("Rabo") be dismissed, without prejudice, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

2    Rabo's causes of action against Lone Star merely relabel certain of Debtors' fraudulent transfer claims, which Rabo lacks standing to assert, and should be dismissed because they also fail to state a claim for relief against Lone Star.  Rabo's claims should be dismissed because no private right of action exists for Rabo to pursue these claims.  Rabo does not have authorization to assert these claims on behalf of any Debtor, and Chapter 5 claims in any event may only be pursued for the benefit of the estate and not an individual creditor.

3.    The "Calf Ranch Transfers" as outlined in the Defendant's Counterclaim are merely fraudulent transfers by/or between Debtors Cliff Hanger, Waggoner Cattle, and Bugtussle.  *See* ¶ 21 of Defendant's Counterclaim.  Relabeling the acts by Debtors to try to "create" a cause of action against a creditor, Lone Star, does not change the fact creditor Rabo does not own these claims, and has no authority to pursue them.  Rabo has neither sought, nor obtained, authority from this Court to pursue the so-called "Calf Ranch Transfers" made between the three Debtors.  They *are* fraudulent transfers.  Relabeling the fraudulent transfers between Debtors to try and create a cause of action against a different creditor is a thinly-veiled attempt to collect fraudulent transfers between Debtors using a pseudonym.

4.      Further, it is notable that the Counterclaim *fails to allege creditor Lone Star ever received any of the "Calf Ranch Transfers"*, yet Rabo tries to hold Lone Star liable for those acts committed by three Debtors.  Such facts fail to state a plausible claim for relief against Lone Star.

5.      Even less plausible is the attempt to assert the same three causes of action against Lone Star based on double hearsay statements of unidentified Tech students that "Rabo Bank", a *non-party* to the suit, "over paid LSSB"[1] for the "value of cattle".  The pleading fails to plead or show any facts that Lone Star ever sold any cattle to Rabo Bank, because Lone Star never did.  Waggoner Cattle Co. sold cattle to Cliff Hanger.  There is no evidence, and no claim that, Lone Star owned any cattle to sell.  Even if non-*party* Cliff Hanger had 'over paid' Lone Star for cattle[2], such assertion would not "create" any of the stated causes of action of *Rabo AgriFinance, LLC* against Lone Star.

6.      The pleaded causes of action wholly fail to meet the federal pleading standard requiring the pleading of a plausible cause of action against Lone Star.  The Tech students' assertions present a mere possibility of a cause of action of a non-party (Rabo Bank) against Lone Star.  Rabo does not even confirm the students' assertions are true[3].  Further, again, whether or not anyone "overpaid" for cattle sold by debtor Waggoner Cattle to debtor Cliff Hanger Cattle is a thinly-disguised fraudulent transfer claim of debtor(s) that creditor Rabo has not obtained authority from this Court to pursue.

---

[1] Rabo never paid Lone Star anything.  Rabo loaned money to Cliff Hanger.  Cliff Hanger then fraudulently transferred some of the money to Waggoner Cattle Co., which fraudulently transferred some of that money to Bugtussle.  Bugtussle spent that money on capital improvements.  Rabo knew these transfers were occurring, and consented or acquiesced to them.
[2] Cliff Hanger never bought cattle from Lone Star.  It only bought cattle from Waggoner Cattle Co.
[3] Though this motion is based upon pleadings, not evidence, when the Tech students accounting will be considered as evidence, it will be shown to be meaningless garbage.  It excluded many millions of dollars of transactions.

**I.        As Rabo Previously Argued, Fraudulent Transfer Claims Are Property of the Debtors' Estates and Rabo's Allegations Regarding the "Calf Ranch Transfers" Merely Outline Fraudulent Transfers By and Between Debtors.**

7.        Rabo's First, Second, and Third Causes of Action regarding the "Calf Ranch Transfers" allege Breach of Contract, Conversion, and Unjust Enrichment based upon pleaded facts of fraudulent transfers under 11 U.S.C §§ 544 and 548 by and between Debtors.  As to Lone Star, these claims fail to even assert that Lone Star was a subsequent or immediate transferee of the fraudulent transfers made by any of the three Debtors.  Instead, the Counterclaim pleads that the last transferee was Debtor Bugtussle. [*See* Counterclaim at ¶ 21.]

8.        Causes of action against Creditor Lone Star for the fraudulent transfers by and between Debtors are property of their respective Estates.  Moreover, claims under Section 548 of the Bankruptcy Code may be asserted only by the Debtor-in-Possession or by the Trustee.  Rabo does not have any authority to assert these claims, and has not sought to obtain the necessary authority.  Finally, Rabo cannot assert Chapter 5 claims because it seeks recovery for itself and not for the respective bankruptcy estates.

**A.        Rabo's Causes of Action Based Upon the "Calf Ranch Transfers" Are Fraudulent Transfer Claims That Are Property of the Debtors' Estates and Must Be Dismissed Because Rabo Lacks Standing and Authority To Pursue The Fraudulent Transfers.**

9.        Rabo's causes of action based upon the "Calf Ranch Transfers" *between* Debtors seek to control property of, enforce claims against, or to enforce a lien on property that belongs to the Debtors, and should be dismissed.

10.        Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" (*see* 11 U.S.C. § 541(a)(1)) and also "[a]ny interest the trustee recovers under Section. . .550 . . .of this title."  *See* 11 U.S.C. § 541(a)(3).  The phrase "all legal or equitable interests of the debtor in property" has been construed broadly, and includes

"rights of action" such as claims based on state or federal law.  *See Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983). "Texas fraudulent-conveyance actions are property of the estate . . ." *In re Moore*, 608 F.3d 253, 259 (5th Cir. 2010).

11.    The automatic stay of Section 362(a) of the Bankruptcy Code operates as a "stay, *applicable to all entities*" against "(3) any *act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate*" and "(5) any act to … enforce against the property of the debtor *any lien* to the extent that such lien secures a claim that arose before the commencement of the case under this Title."    11 U.S.C. § 362(a)(3) and (5), emphasis added.

12.    Rabo's causes of action based upon fraudulent transfers between three Debtors are an attempt to exercise control over property of the estate or to enforce a *lien* as to Debtor's property. Further, the Counterclaim fails to state a cause of action against Lone Star based upon such fraudulent transfers when Lone Star is not even alleged to have received any of the "Calf Ranch Transfers".  Rabo's attempt to "enforce" their lien on a debtor's property by this Counterclaim should be dismissed.  Such allegations violate both Section 362(a)(3) and (5).

13.    In *American Nat'l Bank of Austin v. MorgageAmerica Corp. (in re MortgageAmerica Corp.)* 714 F.2d 1266 (5th Cir. 1983), the Fifth Circuit held that "property of the estate" under Section 541(a)(1) includes the legal and equitable interest of the debtor in property that has purportedly been fraudulently transferred but which the Trustee has not yet recovered. *Id.* at 1275.  As explained by the Fifth Circuit,

> An action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put

> it out of the reach of creditors. The transferee may have colorable title to the property, but the equitable interest-at-least as far as the creditors (but not the debtor) are concerned-is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal" or equitable interest[s]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.

*Id.* at 1275 (internal citations omitted); *see also In re Moore, supra,* 608 F.3d at 261 (because fraudulent-conveyance claims under Texas law "sought to recover estate property, the automatic-stay provisions of § 362(a)(3) barred [the creditor] from pursuing the fraudulent-transfer claims individually once the petition was filed."); *Cullen Ctr. Bank and Trust v. Hensley (In re Criswell);* 102 F.3d 1411, 1417 (5th Cir. 1997) ("what we recognized in *MortgageAmerica* is that when a soon-to-be-bankrupt debtor (like Criswell) fraudulently transfers property to shield it from his creditors,[4] that debtor/transferor should be considered to have retained an *equitable* interest in the property so that it will continue to be considered "property of the estate."); *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust),* 25 F.3d 1281, 1285-86 & n.5 (5th Cir. 1994) (deciding that fraudulent-transfer conspiracy claims were property of the estate); *In re Bradley,* 326 Fed. Appx. 838, 839(5th Cir.2009) (per curiam) ("[A] claim that would ordinarily be brought by creditors nonetheless belongs to the debtor's estate if it pursues property in which the debtor retains an equitable interest.")

14.    The reasoning of the Fifth Circuit in *MortgageAmerica* "does the most to further the fundamental bankruptcy policy of equitable distribution among creditors' and is consistent with Section 544 of the Bankruptcy Code. *Id.* at 1275.  As the Court noted:

> The "strong arm" provision of the current Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under

---

[4] The Court should note that transfers for less than reasonably equivalent value . . . even if there is no intent to hinder, delay or defraud a creditor. . . are also fraudulent transfers.  *See* Tex. Bus. & Com. Code § 24.005 and 11 U.S.C. § 548.

state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment. A trustee acting under section 544 "acts as a representative of creditors", and any property recovered is returned to "the estate for the eventual benefit of *all* creditors." The Supreme Court has, in fact, expressly noted that section "541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code," which would include property made available through section 544. Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3). Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.

*Id.* at 1275-76 (internal citations omitted); *see also In re Moore,* 608 F.3d at 260.

15.     Rabo's causes of action based upon the "Calf Ranch Transfers" between Debtors are fraudulent transfer claims and are indisputably property of the respective bankruptcy estates even if the transfers had gone to Lone Star, which is not even alleged in the Counterclaim. These causes of action seek to recover for, or enforce a lien, as to property of Debtor Cliff Hanger Cattle, LLC that Rabo claims was first fraudulently transferred to Debtor Waggoner Cattle, LLC and then subsequently transferred to Debtor Bugtussle Cattle, LLC. Cliff Hanger has a legal or equitable interest in the property that was fraudulently transferred, first to Waggoner Cattle and then to Bugtussle, and only Cliff Hanger, or its Trustee, may recover this property "for the benefit of the estate".

16.     Asserting a cause of action against Lone Star (*which did not even receive the Calf Ranch Transfers*) based upon the Calf Ranch Transfers by and between Debtors, under the Bankruptcy Code, is an action against the transferee Debtors, namely Waggoner Cattle and Bugtussle. That is because such causes of action depend on the existence of claims that Cliff Hanger has against Waggoner Cattle and Bugtussle. *See, e.g., FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 131-32 (2nd Cir. 1992); *Keene Corp. v. Coleman (In re Keene Corp.),* 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994); *In re Saunders,* 101 B.R. 303, 304-06 (Bankr. N.D.

Fla. 1989).  (Such an action is an action "to recover a claim against the debtor.")  Absent a claim against the transferee Debtors, there is no independent basis for the action against the next transferee.  In other words, had Cliff Hanger not fraudulently transferred property to Waggoner Cattle and then Waggoner Cattle not fraudulent transferred property to Bugtussle, no claim would exist.  These inter-Debtor fraudulent transfers are the basis of Rabo's "Calf Ranch Transfer" claims.

17.     Cliff Hanger Cattle, Waggoner Cattle, and Bugtussle, of course, are Chapter 11 debtors before this Court, and Section 362 of the Bankruptcy Code clearly prohibits any attempt to recover a claim against any of them or enforce a lien against property of any of them outside the claims allowance and payment process unless the Court specifically terminates the automatic stay.  There has been no order terminating the stay in favor of Rabo in this case.  Neither has derivative standing been sought by or granted to Rabo.

18.     Because Rabo's causes of action in the Counterclaim depend on the existence of underlying inter-Debtor fraudulent transfer claims against Waggoner Cattle and Bugtussle, Chapter 11 debtors before this Court, those claims constitute an action against Waggoner Cattle and Bugtussle, and should be dismissed.

### B.     Rabo's Allegations Are Predicated Upon Fraudulent Transfer Claims Governed by Chapter 5 and Must Be Dismissed.

19.     Rabo's First, Second, and Third Causes of Action seek recovery from Lone Star and/or enforce a lien against Debtors' property --- also Lone Star's collateral --- predicated on fraudulent transfers between Debtors which are governed under 11 U.S.C §§ 544 and 548.  These claims, if they exist, belong to Cliff Hanger and/or Waggoner Cattle and no private right of action or grant of derivative standing exists for Rabo, a mere creditor, to pursue these claims for itself.

In addition, Rabo lacks standing and may not pursue these claims on behalf of the Debtors because Rabo has not been given authority by the Court to do so, and because Chapter 5 claims may only be pursued for the benefit of the estate not any individual creditor.

### 1.   Rabo May Not Assert Claims Under Section 548 For Itself.

20.   Claims under Section 548 belong to the Debtors and their bankruptcy estates. Section 548 states that "[t]he trustee may avoid any transfer" based on the requirements of that section.   11 U.S.C. § 548(a)(1).   Nothing in Section 548 gives Rabo the right to assert claims governed by Section 548 in its own name and for its own benefit.   This section "vests the power to avoid fraudulent transfers in the bankruptcy trustee."   5 Collier on Bankruptcy, ¶ 548.02[1] (16th ed.).[5]

21.   Rabo lacks the right to assert claims under Section 548 for itself.   And that is particularly true here where Rabo seeks to keep any recovery it might receive on these claims for itself.   Section 550(a) of the Bankruptcy Code makes clear that to the extent a fraudulent transfer is avoided, "the trustee may recover, *for the benefit of the estate,* the property transferred or, if the court so orders, the value of such property. . ." 11 U.S.C. § 550(a) (emphasis added).   In short, "[t]he language of § 550(a) sets out the criteria for meeting the requirements of that section: it must be the trustee who retains the right to prosecute the recovery action, and the estate must benefit from the recovery."   *In re Furrs,* 294 B.R. 753, 768 (Bankr. D.N.M. 2003).   Because Rabo is seeking to assert claims (which belong to Cliff Hanger or Waggoner Cattle) against Lone Star and

---

[5] As the Court is aware, because Cliff Hanger and Waggoner Cattle are Chapter 11 debtors-in-possession, they are the ones with authority in this case to bring estate claims, including Chapter 5 claims.   *See, e.g., In re iPCS, Inc.,* 297 B.R. 283,287 (Bankr. N.D. Ga. 2003) ("In recognition of the fact that, in a reorganization, the appointment of a trustee is generally the exception, rather than the rule, the Bankruptcy Code vests a debtor-in-possession with the powers of a trustee in the event no trustee is appointed.   *See* 11 U.S.C. § 1107(a).   Accordingly, a debtor-in-possession has the power to bring causes of action on behalf of the estate, such as avoidance actions.").

obtain money on those claims for its own benefit (instead of for the Cliff Hanger estate or the

Waggoner Cattle estate), pursuant to Chapter 5, such claims must be dismissed.

> **2.    Rabo Does Not Have Authority to Pursue Claims Governed By Section 548 on Behalf of the Debtors.**

22.    Rabo also lacks standing to assert claims governed by Section 548 on behalf of

Cliff Hanger or Waggoner Cattle.  Federal courts are courts of limited jurisdiction.  Moreover, of

all the case-or-controversy doctrines limiting federal court jurisdiction- including standing,

ripeness, political question, etc.- the requirement that a litigant have standing to invoke the power

of a federal court is perhaps the most important. *See, e.g., Allen v. Wright,* 468 U.S. 737, 750, 104

S.Ct. 3315, 82 L.Ed.2d 556 (1984).  Because the question of standing implicates the court's

subject-matter jurisdiction, the court applies the standards for a motion to dismiss pursuant to Rule

12(b)(1).  *Villas at Parkside Partners v. City of Farmers Branch,* 245 F.R.D. 551, 556 (N.D. Tex.

2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523, U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d

210(1998); *Allen,* 468 U.S. at 751.

23.    Until a debtor corporation is reorganized, "a trustee or the debtor-in-possession is

authorized to manage the property of the estate." *Louisiana World Exposition v. Fed Ins. Co.,* 858

F.2d, 233, 246-47 (5th Cir. 1988).  That authorization includes the right to bring actions on behalf

of, and belonging to, the bankruptcy estate.  *See, e.g., In re Xonics Photochemical, Inc.,* 841 F.2d

198, 202 (7th Cir. 1988).

24.    Rabo has not sought, and has not been granted authority to assert Chapter 5 claims

on behalf of any of the Debtors.[6]  Because the right to assert these claims belongs to the Debtors,

---

[6] As is made clear by *In re Cooper*, 405 B.R. 801(Bankr. N.D. Tex. 2009), not only does Rabo lack standing to
pursue Chapter 5 claims, it also lacks standing to assert any other claims that any of the Debtors may have.  *Id.,*  at
808 ("Likewise, it would seem that a creditor or non-trustee lacks independent standing to pursue *other* causes of
action owned by the estate (i.e., non-chapter 5 causes of action) . . ."

"[a]ny attempt by [a] creditor to pursue the action is barred by the automatic stay of section 362(a), either under the theory that the action is property of the estate, or constitutes a power and benefit vested initially and primarily in the estate representative."    5 Collier on Bankruptcy, ¶ 548.02[5](16th ed.) citing, among others, *American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)* 714 F.2d 1266 (5th Cir. 1983)).

25.    Because Rabo has not been granted any authority to assert claims belonging to the Debtors, Rabo's causes of action based upon claims governed by Section 548 must be dismissed because Rabo does not have the standing, right, or authority to assert these claims.

**C.    Relabeling a Fraudulent Transfer Claim To Avoid Calling It A Fraudulent Transfer Claim Does Not Permit Recovery for Rabo As to the Calf Ranch Transfers ("A rose by any other name would smell as sweet.")[7]**

26.    As this Court stated its order entered on November 9, 2018, in the main bankruptcy cases that are jointly administered under Case No. 18-20126 [Case 18-20126-rlj, Doc. 189], as to Lone Star's motion for derivative standing to pursue fraudulent transfer-related claims against Rabo, "The respective debtors-in-possession have the first and primary right to decide whether they hold viable causes of action that constitute estate assets and, if so, how to deal with such claims."    Relabeling a fraudulent transfer claim as to the "Calf Ranch Transfers" (which sums, as evident in the Counterclaim, were never even *transferred* to Lone Star) as a breach of contract, as a conversion claim, or as a basis for a claim of unjust enrichment, against Lone Star is merely a dodge to try to collect from Lone Star sums fraudulently transferred between three Debtors in Case No. 18-20126.

---

[7] William Shakespeare. *Romeo and Juliet,* Act II, Scene II.

**D. Counterclaim Fails To State Facts of Prima Facie Case for Three Causes of Action Alleged Against Lone Star As To The "Calf Ranch Transfers"**

27.     Further, when Lone Star is not even alleged to be a transferee of the fraudulently transferred sums, the claim fails to state a prima facie case of a breach of the Intercreditor Agreement by Lone Star, the claim fails to state a prima facie case of any conversion of personal property by Lone Star, and the claim fails to state a prima facie cause of unjust enrichment against Lone Star.  Lone Star is not vicariously liable for the Debtors' fraudulent transfers.

**i.      Failure To State Facts of Prima Facie Case Of Breach of Intercreditor Agreement.**

28.     An element of a breach of contract claim is that defendant breached the identified contract.  *City of The Colony v. North Texas Mun. Water Dist.,* 272 S.W.3d 699, 739 (Tex. App. – Fort Worth 2008, pet. dism'd).  Even if the Court assumes Cliff Hanger and Waggoner Cattle and Bugtussle made the "Calf Ranch Transfers" alleged in the Counterclaim, that states no prima facie case that *Lone Star* breached the Intercreditor Agreement.  Rabo does not even allege Lone Star was a *transferee* of these fraudulent transfers.

**ii.     Failure to State Facts of Prima Facie Case of Conversion.**

29.     The elements of conversion are:

1. The plaintiff owned, possessed, or had the right to immediate possession of property;
2. The property is personal property;
3. The defendant wrongfully exercised dominion or control over the property; and
4. The plaintiff suffered injury.

*Lopez v. Lopez,* 271 S.W.3d 780, 784 (Tex. App. – Waco 2008, no pet.).

30.     Even if the Court assumes the three debtors made the "Calf Ranch Transfers" between themselves as alleged in the Counterclaim, that states no prima facie case as to elements

(1) or (3) of a conversion cause of action against Lone Star, who is not even alleged to have received the "Calf Ranch Transfers". Further, given the Bankruptcy Code and its definition of property of the Estate, the Counterclaim fails to plead facts to show Rabo "owned, possessed, or had the right to immediate possession" of the "Calf Ranch Transfers".

### iii.    Failure to State Facts of Prima Facie Case of Unjust Enrichment

31.     "A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992). The "Calf Ranch Transfers", as pleaded in the Counterclaim, did not involve Lone Star performing any of the transfers (all were done by and between the three Debtors).

32.     Although Lone Star, as a secured creditor of Bugtussle, may have been an incidental beneficiary in some unliquidated amount of Debtors' improvements to the Bugtussle calf ranch, that does not create a cause of action against Lone Star for the Debtors' fraudulent transfers to get that Cliff Hanger money into Bugtussle's bank account.[8] Rabo and Lone Star's respective rights are governed by their Intercreditor Agreement. When a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment. *Apache Corp. v. Dynegy Midstream Services, Ltd. Partnership*, 214 S.W.3d 554, 565 (Tex. App.–Houston [14th Dist.] 2006, no pet. h.).

33.     Further, at the time the improvements to Bugtussle's property were allegedly made, Lone Star was not in possession of the property and did not have a present right to possess the

---

[8] After the $4.6 million in fraudulent transfers to Bugtussle had been made, the value of the improved calf ranch has been alleged by Debtor to be worth $950,000, by Debtor's appraiser at $2.9 million, and by Lone Star's appraiser at $4.3 million.

property.    Improvements to a property in which a defendant has a security interest are not

considered direct benefits unless the defendant has a present right to possess the property. *E & M*

*Marine Corp. v. First Union Nat'l Bank*, 783 So.2d 311, 312-13 (Fla. 3d DCA 2001) (defendant

lender did not knowingly and voluntarily accept the benefit of plaintiff's repairs because it did not

come into possession of the property until after the repairs were made); *Coffee Pot Plaza P'ship v.*

*Arrow Air Conditioning & Refrigeration, Inc*., 412 So.2d 883, 883-84 (Fla. 2d DCA 1982)

(defendant lessor did not knowingly and voluntarily accept the benefit of improvements to tenant's

property because defendant did not come into possession of the property until the improvements

were complete and it forcibly terminated tenant's lease). *See also Belfor USA Group, Inc. v. Bray*

*& Gillespie, LLC*, 605CV1624ORL19UAM, 2008 WL 276022, at *7 (M.D. Fla. Jan. 31, 2008).

34.    Receipt of a benefit is central to unjust enrichment. *Fulcrum Credit Partners LLC*

*v. Strategic Capital Res., Inc*., 2011 WL 13104241, at *5 (W.D. Tex. Mar. 15, 2011); *Tex.*

*Carpenters Health Ben. Fund v. Philip Morris, Inc*., 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998)

(dismissing claim of unjust enrichment where alleged benefit was too indirect, remote and

speculative).

35.    In this case, there is no pleading of facts that Lone Star was in possession of the

Bugtussle calf ranch when improvements were made, no pleading of facts of any fraud, duress, or

taking of undue advantage by Lone Star as to the "Calf Ranch Transfers", and no pleading of direct

benefit to Lone Star from the debtors' improvements to debtor's property.[9]  The Counterclaim fails

to plead facts of prima facie case of unjust enrichment against Lone Star.

---

[9] And, upon trial, the evidence will show that Rabo was aware of these transfers, and consented or acquiesced in
them being made.

II.    **Second Predicate Set of Disputed "Facts" For Rabo Causes of Action Based Upon Statement in Debtors' Disclosure Statement Regarding Tech Students' Assertions Fails To State Cause of Action of Defendant Against Lone Star.**

36.    The second predicate set of disputed "facts" in Rabo's Counterclaim are as follows:

"24.    On pages 10 and 11 of the Disclosure Statement, the Waggoner Debtors affirmatively allege that December of 2017 or January of 2018, Quint Waggoner hired two business students from Texas Tech University to investigate allegations that Lone Star was making against Rabo.

25.    Those same pages of the Disclosure Statement further allege that those two business students "reviewed and compiled the transactions between the two companies for the past three years.  The date as compiled into binders and present to bank's personnel and its attorneys at a meeting in January.  The data showed that Rabo Bank had in fact over paid LSSB between 3 and 4 Million Dollars for the value of the cattle."

Rabo Counterclaim ¶¶ 24, 25. (Errors in the original text of Counterclaim.)   Then Rabo alleges in Paragraphs 33, 39, and 46, "If these allegations are true", Rabo alleges Breach of the Intercreditor Agreement, Conversion, and Unjust Enrichment against Lone Star.

A.    **Federal Pleading Rules Require More Than Double Hearsay, that Rabo Does Not Know To Be True, That Some Tech Students Assert "Rabo Bank" [A Non-Party] Allegedly Over Paid Lone Star For Cattle And, Therefore, Rabo AgriFinance, LLC Has Three Causes of Action Against Lone Star.**

37.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey,* 860 F.3d

287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  The same rule

applies to a counterclaim.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 555-57 (2007).  The allegations in a complaint are generally taken as true for

purposes of a motion to dismiss, with the court viewing them in the light most favorable to the

plaintiff subject to the claim being plausible.  *Edionwe,* 860 F.3d at 291.

### B. Rabo's Claim Based On The Tech Students' Belief A Non-Party Over Paid Lone Star For Cattle Fails To State A Claim For Relief By Defendant That is Plausible On Its Face.

38.     As this Court knows from the pleadings on file in the main bankruptcy case and its

own prior opinion in this case [Doc. 30, p.2] "Debtors run a cattle operation" and Lone Star and

Rabo are creditors of the three Debtors.  The Counterclaim does not even allege that Lone Star

ever owned or sold cattle.  Lone Star, like Rabo, only provided loans to the debtors.

39.     "Rabo Bank" is not a party to the main bankruptcy case or this adversary

proceeding.[10]  Even if non-party "Rabo Bank" ever paid or "over paid" Lone Star for cattle, which

hearsay statement Lone Star denies and respectfully says Rabo has pleaded no facts to support,

such statement does not create any of the claimed causes of action of Rabo AgriFinance, LLC f/k/a

Rabo Agrifinance, Inc.  against Lone Star.

---

[10] The party to this proceeding is the lender, Rabo AgriFinance.  Rabo Bank N.A. is a separate legal entity.

40. Lone Star did not, and has not sued, Rabo Bank N.A. in this Adversary Proceeding. Some unsubstantiated double hearsay statement that non-party Rabo Bank "over paid" Lone Star for cattle is no basis for a *Counterclaim* of Rabo AgriFinance, LLC f/k/a Rabo Agrifinance, Inc. against Lone Star.

41. A conclusory statement or a legal conclusion that a non-party "over paid" Lone Star for cattle in a ballpark guestimate amount of 3 to 4 million dollars on date(s) unstated, when there is no evidence in this entire bankruptcy case that Lone Star ever sold any cattle to non-party Rabo Bank[11], fails the plausibility requirements of *Iqbal* and *Twombly,* and is irrelevant to *Rabo AgriFinance* stating a prima facie case of the three claimed causes of action against Lone Star.

## C. A Mere Possibility That A Party Acted Unlawfully Is Insufficient To State A Plausible Claim For Relief.

42. The allegations of causes of action based solely on the hearsay, threadbare, and conclusory statements of two unidentified Tech business students as to undated transactions allegedly between non-party Rabo Bank and Lone Star, when there is no evidence Lone Star even sells or sold any cattle, is facially implausible. At best, the allegations present a "sheer possibility" of misconduct by Lone Star to a non-party to this Adversary Proceeding, which "misconduct" Lone Star denies.

43. Although Lone Star is *not* required to do so in this Brief in Support of Motion To Dismiss Counterclaim, Lone Star will explain what occurred.

---

[11] Neither did Lone Star Bank ever sell any cattle to Rabo AgriFinance.

44.    The inaccurate statement from Debtors' disclosure statement conflates, and misstates, what the Debtors were actually doing and the results of their actions after Rabo AgriFinance began loaning money to "cattle finisher" Cliff Hanger.

45.    Because Rabo AgriFinance was only initially loaning Cliff Hanger up to 75% of the cost to buy calves from Waggoner Cattle, the two debtors developed a two-step process of achieving payment in full to Waggoner Cattle Co. for its calves.  First, when a group of calves was sold to Cliff Hanger, Cliff Hanger used the 75% financing it received from Rabo AgriFinance to pay approximately 75% of the payment due to Waggoner Cattle (the "First Payment") for the calves transferred to Cliff Hanger.

46.    Second, when Cliff Hanger "finished" some of its cattle and sold them to the packer, Cliff Hanger paid additional sums from Cliff Hanger as some of its "equity", or "distributions", to Waggoner Cattle Co. to pay toward the remaining 25% Cliff Hanger still owed to Waggoner Cattle.  At trial the evidence will show Rabo AgriFinance knew that is what Cliff Hanger was doing and consented to it and monitored these payments.  That course of performance continued for approximately 14 months, until approximately February of 2016.

47.    Under the express terms of the Intercreditor Agreement, Lone Star's lien on the calves *continues until the full payment is made* to Waggoner Cattle.

48.    It is important to note in the Intercreditor Agreement that counterclaimant Rabo attached to its Counterclaim, that Agreement does *not* state when or how full payment was to be made, nor does it prohibit the debtors from doing the two-step payment process for Cliff Hanger to fully pay Waggoner Cattle Co. for the calves Cliff Hanger bought from Waggoner Cattle.

49.    A problem that the Debtors' internal accountants created was they "booked" $9,700,000 of Cliff Hanger's payments to fully pay for Waggoner Cattle Co. cattle in the "Due to/Due From" accounts of Cliff Hanger and Waggoner Cattle Company.  But, they also "booked" the Second Payment amounts as "loans" by Cliff Hanger to Waggoner Cattle.[12]  They were not loans, as Quint Waggoner testified in his § 341 and § 2004 testimonies. He clearly testified the additional amounts paid were for the calves bought from Waggoner Cattle.  The "Due to/Due From" accounts also resulted in the Debtors presenting inaccurate borrowing base reports to the lenders.

50.    Then, in the spring of 2016, Rabo AgriFinance realized it was never going to get fully repaid the sums it had loaned to Cliff Hanger, so it stopped most of the Second Payments from occurring and eventually stopped the Debtors from being able to pay Waggoner Cattle any value for the calves transferred to Cliff Hanger.  Rabo AgriFinance accomplished this by controlling Cliff Hanger's bank account at *Rabo Bank*.  Rabo AgriFinance required Cliff Hanger to deposit all sums it received from the packers in the Cliff Hanger bank account at *Rabo Bank*. Then, Rabo AgriFinance was *doing a daily sweep of that bank account and applying funds in that account to pay the loans Cliff Hanger had with it*.  The predictable result was that Cliff Hanger did not have the money to pay Waggoner Cattle for the calves, so after early 2016, Waggoner Cattle Co. calves were transferred to Cliff Hanger with no or only partial payments.  The other result was that Lone Star's lien on the cattle and the cattle proceeds continued because Waggoner Cattle was not paid full value for the calves.

---

[12] This caused Cliff Hanger's financial statements to grossly overstate its receivables.

51.     When faced with the choice of bankruptcy or foreclosure in late 2017, Quint
Waggoner, in an effort to try to avoid having Lone Star delve further into his accountings and
borrowing base reports, hired two Tech business students to compile *some* of his sales records.  A
review of the Tech students' "reconciliation" shows that the students only compiled portions of
the sales records, and omitted many millions of dollars of sales.  Based upon the incomplete
information, the students, who are not alleged to have any expertise, reported to Mr. Waggoner
that Lone Star was "overpaid", which was inaccurate.  Their "reconciliation" is so erroneous and
so incomplete as to prove nothing.  It is accounting garbage.  Quint Waggoner then had this
"analysis" conflated into *Rabo Bank* overpaying Lone Star for cattle.

52.     The only entity that ever paid Lone Star interest payments and any loan payments
was Waggoner Cattle, *not Rabo Bank*.  The entity that "sold" calves was Waggoner Cattle.  And
the entity that bought the calves was Cliff Hanger, even though they did so with partial payments,
and eventually, no payments, to Waggoner Cattle for the calves.

53.     It is important to note on the matter of payment between debtors for the calves,
there is no evidence of a *written contract* between Waggoner Cattle and Cliff Hanger for calves to
be sold by Waggoner Cattle to Cliff Hanger.  The two-step payment arrangement between
Waggoner Cattle and Cliff Hanger, as outlined above, was the method the two debtors created for
the course of performance of the debtors' *oral* arrangement for sale and payment for the calves.

54.     The allegations of Rabo's Counterclaim based upon the Tech students' assertions
fail to raise a right of relief in favor of Rabo AgriFinance, LLC against Lone Star above the
speculative level.  *Twombly,* 550 U.S. 544, 555 (2007).

55.     Further, because a cause of action for unjust enrichment may include a fraud as a sub element, the Counterclaim fails to state with particularity the circumstances constituting fraud by Lone Star against Rabo AgriFinance, LLC.  Fed. R. Civ. P. 9(b).  It is insufficient to have the Court assume the circumstances by which Lone Star is allegedly liable to Rabo AgriFinance, LLC for unjust enrichment when the vaguely-identified "fraud" by Lone Star is not even pleaded to be against Rabo AgriFinance, LLC, and is vaguely pleaded to be against a non-party, and is as to cattle sales,  when there is no evidence Lone Star is even a seller of cattle.  "To satisfy Rule 9(b), a fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme."  *U.S. v. Well Point, Inc.,* 904 F.3d 667, 677 (9th Cir. 2018).  As pleaded, the causes of action of Rabo AgriFinance, LLC based upon the threadbare "Tech students" assertions fail to rise above the speculative level, which is insufficient, and, therefore, should be dismissed.

### D.  If Any Debtor Over Paid Another Debtor For Cattle That, Again, Is, At Best, Another Fraudulent Transfer Claim Owned By The Debtor, Not Rabo.

56.     The second set of predicate facts (based upon the Tech students' assertions) only serves to reveal alleged additional fraudulent transfers between two Chapter 11 debtors, Waggoner Cattle and Cliff Hanger.  If Cliff Hanger over paid Waggoner Cattle for any calves, which Lone Star denies, such claim is property of the estate of Debtor Cliff Hanger.  It is not a claim Rabo AgriFinance owns or is authorized by this Court to pursue.

**E.  Same Analysis Outlined in Section I Applies To Bar Relabeled Fraudulent Transfer Claim Based on Hearsay As To Tech Students' Belief Regarding Payments For Cattle of Debtors.**

57.     The same basic legal analysis of who has the legal right to pursue the cause of action for fraudulent transfers by either debtor Cliff Hanger or debtor Waggoner Cattle that applied to the "Calf Ranch Transfers", applies to the Tech students' assertions as to "over payment" for cattle.

58.     Lone Star incorporates herein, by reference, Section I., subsections A-C.  Rabo is not authorized to pursue fraudulent transfer claims on behalf of any debtor's estate.  Rabo may not assert Chapter 5 claims (or Section 548 claims) on behalf of any debtor,  and may not do so to merely benefit itself.  Relabeling what is a fraudulent transfer claim as some other state law claim, does not permit recovery for Rabo in this case.

59.     Rabo's lack of authority to do so is further prevented by the fact it does not even allege that it is the entity that made any "over payments" to Lone Star.  It merely alleges that non-party Rabo Bank made an over payment [on dates unidentified] to Lone Star for cattle, when Lone Star never sold any cattle to Rabo or Rabo AgriFinance.

**F.  Rabo Is Also Bound By The Course of Performance And Violated The Intercreditor Agreement When It Seized All Cattle Sales Proceeds.**

60.     The "express terms of an agreement and any applicable course of performance, course of dealing, or usage of trade must be construed whenever reasonable as consistent with each other."  Tex. Bus. & Com. Code § 1.303(e).  Further, "course of performance" may be relevant to show waiver or modification of any term inconsistent with the course of performance. Tex. Bus. & Com. Code § 1.303(f).

61.    In this case, the "course of performance", by and between Debtors Waggoner Cattle and Cliff Hanger, was the two-step calf payment process, outlined above.  And that two-step calf payment process was known to Rabo because Rabo's sister company, Rabo Bank, had the Cliff Hanger bank account, and Rabo was approving Cliff Hanger's disbursements out of that bank account (which account was receiving all the finished cattle sales proceeds).  For over a year Rabo acquiesced to the debtors' two-step calf payment process.  And doing so actually would comply with the subordination of Rabo's lien under the Intercreditor Agreement requiring that Waggoner Cattle be paid in full by Cliff Hanger for the calves *before* Rabo obtained any lien on the cattle or the cattle proceeds.

62.    Because the Intercreditor Agreement *was silent* as to how Waggoner Cattle would be paid in full for the calves by Cliff Hanger, the inter-Debtor two-step payment process became the mode of payment, to which Rabo acquiesced and is bound.  Pursuant to the Intercreditor Agreement, until Waggoner Cattle was paid in full by Cliff Hanger, Rabo had no lien on the cattle, or was subordinated to Lone Star's lien on the cattle. But, beginning in early 2016, when Rabo realized its loan would never be fully repaid by Cliff Hanger, Rabo wrongfully decided to take all the cattle proceeds and disregarded Lone Star's continuing first lien on the same cattle, and breached the Intercreditor Agreement with prior and first lienholder Lone Star.

## CONCLUSION

Lone Star moves the Court to dismiss Rabo's Counterclaim, and its three causes of action, against Lone Star.  The claims are thinly-disguised fraudulent transfer claims between debtors which Rabo has no standing or authority to pursue.  Rabo does not even allege Lone Star received the "Calf Ranch Transfers", which fails to establish a prima facie case of Breach of Contract, Conversion, or Unjust Enrichment against Lone Star.  And the same causes of action predicated

on the double hearsay speculation of unidentified Tech business students, which assertions Rabo admits it does not know to be true, wholly fail the plausibility standard, wholly fail to state a prima facie case of the asserted three causes of action against Lone Star, and, at their heart, are, again, only more alleged fraudulent transfers between debtors which Rabo lacks standing and authorization by this Court to pursue.

WHEREFORE, PREMISES CONSIDERED, Lone Star moves that Rabo's Counterclaim, and its three causes of action therein, be dismissed, without prejudice.

Dated this 18th day of March, 2019.

Respectfully submitted,

**LOVELL LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
john@lovell-law.net
Joe L. Lovell, SBN 12609100
joe@lovell-law.net
Barbara A. Bauernfeind, SBN 08190500
barbara@lovell-law.net
Matthew S. Merriott, SBN 24100846
matthew@lovell-law.net
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

*Attorneys For Plaintiff Lone Star State Bank
of West Texas*

By:___*/s/ John H. Lovell*_____
        John H. Lovell

## CERTIFICATE OF SERVICE

I hereby certify that on March 18th, 2019, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case, including the following:

Michael Johnson
RAY QUINNEY & NEBEKER, P.C.
36 South State, Suite 1400
Salt Lake City, UT 84111
mjohnson@rqn.com

and

Thomas C. Riney
W. Heath Hendricks
RINEY & MAYFIELD, LLP
320 S. Polk Street, Suite 600
Amarillo, TX 79101
triney@rineymayfield.com
hhendricks@rineymayfield.com
    *Attorneys for Rabo Agrifinance, LLC*

Matt R. Tarbox
TARBOX LAW, P.C.
2301 Broadway
Lubbock, TX  79401
max@tarboxlaw.com
    *Attorney for Waggoner Cattle, LLC, Cliff Hanger Cattle, LLC,
    Circle W of Dimmitt, Inc., and Bugtussle Cattle, LLC*

R. Byrn Bass, Jr.
Compass Bank Building
4716 4th Street, Suite 100
Lubbock, TX  79416-4953
bbass@bbasslaw.com
    *Attorney for Michael Quint Waggoner*

Brad W. Odell
MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408
bodell@mhba.com
    *Attorneys for Lone Star State Bank of West Texas*

                                        */s/ John H. Lovell*
                                        John H. Lovell

24