LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
John H. Lovell, SBN 12609300
Barbara A. Bauernfeind, SBN 08190500
Matthew S. Merriott, SBN 24100846
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone:  806/373-1515
Facsimile:  806/379-7176
*Attorneys for Lone Star State Bank of West Texas*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: § § WAGGONER CATTLE, LLC, ET AL, § § § *Debtors.* § | § § § § § § | Chapter 11 CASE NO. 18-20126-rlj-11 Joint Administration |
| LONE STAR STATE BANK OF WEST TEXAS, *Plaintiff,* v. RABO AGRIFINANCE, LLC, f/k/a RABO AGRIFINANCE, INC. *Defendant.* | § § § § § § § § § § § § § § § | ADVERSARY PROCEEDING NO. 18-02007-rlj-11 |

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES now Plaintiff Lone Star State Bank of West Texas ('Lone Star" or "Plaintiff") and files this Answer to the Affirmative Defenses and Counterclaim [Doc. 40, 52] filed by Defendant Rabo AgriFinance LLC, f/k/a Rabo AgriFinance, Inc. ("Rabo" or "Defendant").

1

## FIRST AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's complaint, and all claims set forth therein that have not already been dismissed by the Court, fails to state a claim against Rabo upon which relief may be granted.

**Lone Star Response:**

As this Affirmative Defense fails to reference any facts or claims, Lone Star does not know what is being referenced, either factually or legally. Accordingly, Lone Star is unable to either admit or deny in regard to this asserted affirmative defense.

## SECOND AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Some of Lone Star's claims in this action may be barred, or alternatively the damages that Lone Star may recover on such claims may be reduced, by the applicable statutes of limitation related to such claims, including but not limited to Tex. Civ. Prac. & Rem. Code §§ 16.003(a), 16.004(a)(3), 16.004(4), and/or 16.051, as applicable.

**Lone Star Response:** Denied. And, in further response to Rabo's affirmative defense, Lone Star pleads the discovery rule, fraudulent concealment, and equitable estoppel.

## THIRD AFFIRMATIVE DEFENSE

**Rabo's Claim:**

This Court lacks subject matter jurisdiction over Lone Star's Seventh, Eighth, Ninth, Tenth, Eleventh, and Thirteenth Causes of Action, alleging claims under state law for which there is no related to jurisdiction.

**Lone Star Response:** Denied.

## FOURTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's equitable claims against Rabo are barred by Lone Star's unclean hands.

**Lone Star Response:** Denied.

## FIFTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's claims seeking relief that differs from the terms of the Intercreditor Agreement are barred by the statute of frauds, including without limitation, Tex. Bus. & Comm. Code Sec. 26.01(b)(6).

**Lone Star Response:** Denied. Further, Lone Star pleads partial performance, full performance, and course of performance to prove the parties' agreement on how the Intercreditor Agreement was to be performed.

## SIXTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's claims against Rabo are barred, in whole or in part, by the doctrine of laches, waiver, and/or estoppel.

**Lone Star Response:** Denied.

## SEVENTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's claims are barred, in whole or in part, in that the relief sought in Lone Star's complaint would constitute an unjust enrichment of Lone Star to the detriment of Rabo.

**Lone Star Response:** Denied.

## EIGHTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

All or part of Plaintiff's claims for relief are or may be barred by the doctrine of *in pari delicto* because the Plaintiff was more at fault concerning the allegations of fault or culpability between the parties.

**Lone Star Response:** Denied.

## NINTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Lone Star's tort claims are barred by the economic loss rule and the fact that a written contract governs the rights of Lone Star and Rabo. Therefore, Lone Star's damages, if any, should sound in contract and all tort claims should be dismissed.

**Lone Star Response:** Denied.

## TENTH AFFIRMATIVE DEFENSE

**Rabo's Claim:**

Pursuant to the US and Texas Constitutions and applicable law, Rabo is entitled to a jury trial in this action on Plaintiff's state law claims, and those claims are the only remaining claims in this case. Rabo objects to a bench trial or a jury trial in Bankruptcy Court.

**Lone Star Response:** Denied. Further, all equitable claims and defenses are to be tried to the bench.

## ELEVENTH AND TWELTH AFFIRMATIVE DEFENSES

**Rabo's Claims:**

Lone Star's claims are barred for the reasons set forth in Rabos's Counterclaim.

**Lone Star Response:** Denied.

## THIRTEENTH AFFIRMATIVE DEFENSE

**Rabo's Claims:**

Lone Star's claims are barred and Rabo is entitled to attorneys fees and costs as well as sanctions if the allegations of the Waggoner entities' Combined Disclosure Statement [Dkt. 191; filed November 15, 2018] are correct. Specifically, that document states that Lone Star attempted to bribe the debtors with $4 million to induce them to file for bankruptcy so that Lone Star could sue Rabo. Further, that document states that Quint Waggoner "hired two business students from Texas Tech and they reviewed and compiled the transactions between the two companies for the past three years. The data was compiled into binders and presented to bank's personnel and its

attorneys at a meeting in January. The data showed that Rabo Bank had in fact overpaid LSSB between 3 and 4 Million Dollars for the value of the cattle."

**Lone Star Response:** Denied.

## FOURTEENTH AFFIRMATIVE DEFENSE

**Rabo's Claims:**

Rabo reserves the right to assert additional defenses, or to delete affirmative defenses already plead, to the extent that such defenses become known as a result of discovery or otherwise.

**Lone Star Response:** Lone Star acknowledges that Rabo is asserting a right to amend its pleadings in the future. No Response is required as to this statement.

## ANSWER TO RABO'S COUNTERCLAIMS

1. Lone Star admits the allegations of Paragraph 1.

2. Lone Star admits the allegations of Paragraph 2.

3. Lone Star admits the allegations of Paragraph 3.

4. Lone Star admits the allegations of Paragraph 4.

5. Lone Star denies, in part, the allegations of Paragraph 5 of Rabo's Counterclaim. As indicated in other allegations of Rabo's Counterclaim, the predicate conduct for Rabo's Counterclaim is alleged conduct by the Debtors in the use and transfer of Debtors' funds, which pertain to core fraudulent transfer claims in the Chapter 11 cases of Quint Waggoner and the Waggoner Corporate Debtors. Further, many of the claims asserted by Rabo in its Counterclaim are core fraudulent transfer claims belonging to certain of the Debtors. In the alternative, the allegations as to the non-core claims are related to the subject underlying core claims, and to the Chapter 11 cases pending before the

Bankruptcy Court. Further, the allegations relate to "claims adjustment", over which the Bankruptcy Court has jurisdiction. Rabo lacks standing to assert the Calf Ranch Transfers, as these are alleged fraudulent transfer claims belonging to Debtors.

6. Lone Star admits the allegations of Paragraph 6.

7. Lone Star admits the allegations of Paragraph 7.

8. Lone Star denies in part the allegations of Paragraph 8. The members of Bugtussle Cattle LLC are Michael Quint Waggoner and The Waggoner Trust. The trustee of The Waggoner Trust is Dwayne Jay Smith. The beneficiary of The Waggoner Trust is Michael Quint Waggoner. Lone Star admits that Michael Quint Waggoner is the sole owner of Debtors, Waggoner Cattle, Cliff Hanger, and Circle W, and Lone Star further admits that Quint Waggoner is the Manager/President of all the Waggoner Debtors.

9. Lone Star admits the allegations of Paragraph 9.

10. Lone Star admits the allegations of Paragraph 10.

11-13. As to Paragraphs 11-13 of Rabo's Counterclaim, Lone Star asserts that the written loan and security documents entered into between the Waggoner Entities and Rabo describe and define the loans made and security for the loans made. Lone Star denies any assertion or characterization of those documents by Rabo that is not consistent with the written documents. To the extent the referenced paragraphs 11-13 include allegations of law, no answer is required, but the allegations are denied.

14. As to Paragraph 14, Lone Star admits such allegations.

15. Lone Star has insufficient information to either admit or deny the amount of Debtors' indebtedness to Rabo as of the April 9, 2018 Petition Date. Lone Star admits that on April 9, 2018, a debt was owed to Rabo by the Waggoner Debtors.

16. Lone Star admits the allegations of Paragraph 16.

17. Lone Star admits the allegations of Paragraph 17.

18-19. As to Paragraphs 18-19, Lone Star asserts that the Intercreditor Agreement describes the parties' agreement, and the parties' course of performance establishes how the parties agreed that its terms would be performed. Lone Star denies any allegation or characterization by Rabo that is not consistent with the written document and the parties' course of performance in regard to the Intercreditor Agreement. Lone Star denies that Paragraphs 18 and 19 describe all the material and relevant terms of the Intercreditor Agreement, or the course of performance.

20. Lone Star admits the allegations of Paragraph 20.

21. Lone Star admits that in its review of the QuickBooks accounting records of Cliff Hanger, Waggoner Cattle and Bugtussle, Lone Star has identified entries which recorded that among other transfers, Cliff Hanger transferred $4,340,610.89 to Waggoner Cattle Co.'s account at Lone Star, which transactions were booked into the Cliff Hanger/ Waggoner Cattle Co.'s "due to/ due from" account and from the Waggoner Cattle Co. account, from there was then transferred $4,340,610.89 to the Bugtussle account at Lone Star, and booked as an advance by Waggoner Cattle Co. to Bugtussle, which $4,340,610.89 in funds were then apparently expended by Bugtussle on payments which appear to be capital improvements. Lone Star does not currently know that its accounting for these transactions is complete, or completely accurate. Lone Star currently has insufficient information to either admit or deny the remaining allegations of Paragraph 21 of Rabo's counterclaim. Rabo lacks standing to assert the

Calf Ranch Transfers, as those are core alleged fraudulent transfer claims and are core claims belonging to Debtors.

22. Lone Star admits that because of the daily sweep of Cliff Hanger's account by Rabo, the fraudulent transfers which Rabo describes as the "Calf Ranch Transfers" began as loan advances by Rabo to Cliff Hanger, but once such funds were deposited into Cliff Hanger's account with Rabo Bank NA, were paid to Waggoner Cattle Co. as payment for the then unpaid balance owed to Waggoner Cattle Co. for Waggoner Cattle Co.'s cattle, though those transfers were booked in the QuickBooks general ledgers of Cliff Hanger and Waggoner Cattle Co. as "loans" to Waggoner Cattle Co.  Lone Star denies all other allegations of Paragraph 22 of Rabo's Counterclaim.  Rabo lacks standing to assert the Calf Ranch Transfers, as those are alleged fraudulent transfer claims, and are core claims belonging to Debtors.

23. Lone Star admits the allegations of Paragraph 23.

24. Lone Star denies the allegations of Paragraph 24.  Plaintiff admits that Quint Waggoner stated that he hired a couple of Tech students to compile the pricing that Cliff Hanger paid Waggoner Cattle.

25. Lone Star admits that the Disclosure Statement states what it states, but in truth, the accounting information "submitted" or "compiled" by the "Tech students" is so erroneous and incomplete as to be meaningless.  It is pure garbage.

26. Lone Star reasserts and realleges its previous responses to Counterclaim Paragraphs 1-25.

9

27. Lone Star denies the allegations of Paragraph 27. The Calf Ranch Transfers are alleged fraudulent transfers, core claims, which Rabo lacks standing to assert.

28. Lone Star denies the allegations of Paragraph 28. The Calf Ranch Transfers are alleged fraudulent transfers, core claims, which claims belong to Debtors. Rabo lacks standing to assert such claims.

29. Lone Star denies the allegations of Paragraph 29. The Calf Ranch Transfers are alleged fraudulent transfers, core claims, which claims belong to Debtors. Rabo lacks standing to assert such claims.

30. Lone Star denies the allegations of Paragraph 30. The Calf Ranch Transfers are alleged fraudulent transfers, core claims, which claims belong to Debtors. Rabo lacks standing to assert such claims.

31. Lone Star denies the allegations of Paragraph 31. The Calf Ranch Transfers are alleged fraudulent transfers, core claims, which claims belong to Debtors. Rabo lacks standing to assert such claims.

32. Lone Star denies the allegations of Paragraph 32, though it admits that the referenced document states what it states.

33. Lone Star denies the allegations of Paragraph 33.

34. Lone Star denies the allegations of Paragraph 34.

35. Lone Star incorporates by reference and realleges its responses to Paragraphs 1-34 of Rabo's Counterclaim.

36-40. Lone Star denies the allegations of Paragraphs 36-40. In regard to the allegations in Paragraphs 36, 37, and 39 of Rabo's Counterclaim regarding the Calf Ranch Transfers, such claims are alleged fraudulent transfers, and are core claims which claims belong to Debtors. Rabo lacks standing to assert them.

41. Lone Star incorporates by reference and realleges its responses to Paragraphs 1-40 of Rabo's Counterclaim.

42-50. Lone Star denies the allegations of Paragraphs 42-50 of Rabo's Counterclaim. Further, in regard to Paragraphs 42-44 of Rabo's Counterclaim, the referenced Calf Ranch Transfers are alleged fraudulent transfers, are core claims, and such claims belong to Debtors. Rabo lacks standing to assert such alleged fraudulent transfer claims.

51. Lone Star denies the allegations and claims of Rabo's prayer in its Counterclaim.

52. Lone Star denies each and every allegation of the Counterclaim not expressly admitted herein.

## AFFIRMATIVE DEFENSES OF LONE STAR

53. In further Answer to Rabo's Counterclaim, Lone Star alleges the following Affirmative Defenses:

## FIRST AFFIRMATIVE DEFENSE

54. Rabo lacks standing to assert its claimed causes of action based upon alleged fraudulent transfers by the Debtors (the "Calf Ranch Transfers"), as such claims are core claims currently belonging to the Debtors.

**SECOND AFFIRMATIVE DEFENSE**

55. Rabo's Counterclaim fails to state a claim against Rabo upon which relief may be granted.

**THIRD AFFIRMATIVE DEFENSE**

56. Rabo's claims are barred, or alternatively the damages recoverable are barred, by the statute of limitations, including, but not limited to, Tex. Civ. Prac. & Rem. Code §§ 16.003(a), 16.004(a)(3), 16.004(a)(4), 16.051, as applicable.

**FOURTH AFFIRMATIVE DEFENSE**

57. Rabo's equitable claims against Rabo are barred by Rabo's unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

58. Rabo's claims against Lone Star are barred, in whole or in part, by the doctrines of laches, waiver, equitable estoppel, promissory estoppel, fraud and fraudulent inducement.

**SIXTH AFFIRMATIVE DEFENSE**

59. Rabo's claims are barred, in whole or in part, because the relief sought in Rabo's Counterclaim would constitute unjust enrichment of Rabo to the detriment of Lone Star.

**SEVENTH AFFIRMATIVE DEFENSE**

60. Rabo's claims as to the Calf Ranch Transfers, as pleaded by it, are core claims, and only assert alleged fraudulent transfers between Debtors, which Rabo has no standing

to assert, and the stay has not been lifted for Rabo to assert. This claim by Rabo wholly fails to show that Lone Star received any of the alleged Calf Ranch Transfer payments.

### EIGHTH AFFIRMATIVE DEFENSE

61. Rabo's claims against Lone Star are barred, in whole or in part, by Rabo's fraud in assisting and insisting that Cliff Hanger not pay full value for cattle bought from Waggoner Cattle and/or assisting and/or insisting that Waggoner Cattle create and present fraudulent borrowing base reports to Lone Star, both of which frauds were the producing and/or proximate cause of damages to Lone Star.

### NINTH AFFIRMATIVE DEFENSE

62. Rabo's claims against Lone Star regarding the Calf Ranch Transfers are barred, in whole or in part, by the doctrine of release.

### TENTH AFFIRMATIVE DEFENSE

63. Rabo's claims against Lone Star regarding the Calf Ranch Transfers, in addition to being core claims, are, in essence, a claim of conspiracy with Debtors to breach the Debtor's loan agreements with Rabo without Lone Star ever even receiving the subject alleged proceeds. Conspiracy to breach a contract is not a cause of action under Texas law. *San Saba Energy, L.P. v. McCord,* 167 S.W.3d 67, 73 (Tex. App.- Waco 2005, pet. denied)

### ELEVENTH AFFIRMATIVE DEFENSE

64. Rabo's claims against Lone Star are barred, in whole or in part, by the doctrine of ratification. The evidence will show Rabo knew about the alleged Calf Ranch

13

Transfers at the time, or shortly after, the alleged Calf Ranch Transfers occurred, kept the proceeds and benefits of most of such transfers, and ratified such acts by the Debtors.

## TWELFTH AFFIRMATIVE DEFENSE

65. Rabo's claims against Lone Star are barred, in whole or in part, by Rabo's failure to mitigate damages. The evidence will show Rabo knew about the alleged Calf Ranch Transfers at the time, or shortly after, the Calf Ranch Transfers occurred and failed, in whole or in part, to mitigate its damages, if any.

WHEREFORE, Premises considered, Lone Star prays for judgment in its favor and against Rabo, as follows:

A. That Rabo's Affirmative Defenses be denied.

B. That Rabo take nothing on its Counterclaims, and that Rabo's Counterclaims be dismissed with prejudice.

C. That the Court award Lone Star its reasonable attorneys' fees and costs incurred in this action, to the extent they are allowed by contract or by law.

D. That the Court award Lone Star such other and further relief including equitable relief, as the Court deems just and proper.

Dated this 19th day of March, 2019.

14

Respectfully submitted,

**LOVELL LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
john@lovell-law.net
Joe L. Lovell, SBN 12609100
joe@lovell-law.net
Barbara A. Bauernfeind, SBN 08190500
barbara@lovell-law.net
Matthew S. Merriott, SBN 24100846
matthew@lovell-law.net
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

*Attorneys For Plaintiff Lone Star State Bank of West Texas*


By: */s/ John H. Lovell*
      John H. Lovell

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 19, 2019, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case, including the following:

Michael Johnson
RAY QUINNEY & NEBEKER, P.C.
36 South State, Suite 1400
Salt Lake City, UT 84111
mjohnson@rqn.com

Thomas C. Riney
W. Heath Hendricks
RINEY & MAYFIELD, LLP
320 S. Polk Street, Suite 600
Amarillo, TX 79101
triney@rineymayfield.com
hhendricks@rineymayfield.com
    *Attorneys for Rabo Agrifinance, LLC*

Matt R. Tarbox
TARBOX LAW, P.C.
2301 Broadway
Lubbock, TX 79401
max@tarboxlaw.com
    *Attorney for Waggoner Cattle, LLC, Cliff Hanger Cattle, LLC,*
    *Circle W of Dimmitt, Inc., and Bugtussle Cattle, LLC*

R. Byrn Bass, Jr.
Compass Bank Building
4716 4th Street, Suite 100
Lubbock, TX 79416-4953
bbass@bbasslaw.com
    *Attorney for Michael Quint Waggoner*

Brad W. Odell
MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408
bodell@mhba.com
    *Attorneys for Lone Star State Bank of West Texas*

                                     */s/ John H. Lovell*
                                     John H. Lovell