LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
John H. Lovell, SBN 12609300
Barbara A. Bauernfeind, SBN 08190500
Matthew S. Merriott, SBN 24100846
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone:  806/373-1515
Facsimile:  806/379-7176
**Attorneys for Lone Star State Bank of West Texas**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| WAGGONER CATTLE, LLC, ET AL, | § | |
| | § | CASE NO. 18-20126-rlj-11 |
| | § | Joint Administration |
| *Debtors.* | § | |

| | | |
|---|---|---|
| LONE STAR STATE BANK OF WEST TEXAS, | § § § | ADVERSARY PROCEEDING NO. 18-02007-rlj-11 |
| *Plaintiff,* | § § | |
| v. | § § | |
| RABO AGRIFINANCE, LLC, f/k/a RABO AGRIFINANCE, INC.; | § § § | |
| *Defendant.* | § § | |

## BRIEF IN SUPPORT OF LONE STAR'S RESPONSE TO JURY DEMAND AND MOTION TO STRIKE JURY DEMAND OF RABO

# TABLE OF CONTENTS

*Pages*

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ....................................................................................................... 1

**Introduction** ...................................................................................................... 1

A.    **Jury Waived By Rabo Filing Proofs of Claim in Joint Debtors' Bankruptcies** .......... 4

B.    **Right To Jury Trial Waived By Rabo Filing Adversary Proceeding Against Lone Star Regarding All Waggoner-Related Debtor Estates** ........................ 6

C.    **Other Rabo Acts of Active Participation, And Seeking and Obtaining Relief, In The Waggoner Cattle Bankruptcy Waived Right to Jury Trial** .................. 13

D.    **Rabo Waived Right to Jury Trial By Filing Counterclaim And Affirmative Defenses Against Lone Star** .............................................. 17

E.    **The Claims Made and Relief Sought by Lone Star Involve the Claims Allowance or Disallowance Process, the Hierarchical Ordering of Creditors' Claims, and/or the Disputes at Issue are Integral to the Restructuring of the Debtor-Creditor Relationship** ................................ 20

F.    **No Right to Jury Trial as to Equitable Claims and Analysis of Claims** .................... 21

G.    **Legal Claims Converted to Equitable Claims in Bankruptcy** ...................... 25

H.    **Lone Star's Claims And Causes of Action Against Rabo Directly Involve and/or Affect Debtors' Estates And Call For Determination of And Enforcement of Lien Priorities as to Joint Debtors of Same Two Creditors** ........................ 26

I.    **Joint Debts By Debtors to Both Creditors and Joint Intercreditor Agreement Makes Case Inextricably Intertwined Involving All Waggoner Corporate Debtors' Estates** ........................................... 27

J.    **Matters At Issue in Lone Star Adversary Proceeding Are Fundamental Bankruptcy Matters and the Claims Implicate Public Rights** ................... 28

K.    **Bankruptcy Court Can Conduct A Jury Trial** ........................................... 31

# TABLE OF AUTHORITIES

*Billing v. Ravin, Greenberg & Zackin P.A.,* 22 F.3d 1242 (3d Cir. 1994) ...................................3

*Central Va. Community College v. Katz,* 546 U.S. 356, 126 S. Ct. 990 (2006) .........................29

*Cobb v. Harrington,* 190 S.W.2d 709 (Tex. 1945) .......................................................................22

*Curtis v. Loether,* 415 U.S. 189, 94 S. Ct. 1005, 1009 (1974) .................................................22,25

*Germain v. Connecticut Nat. Bank*, 988 F.2d 1323 (2nd Cir. 1993) .........................................20,30

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S. Ct. 2782, 2799-2800 (1989)
..........................................................................................................................1,3,4,15,20,21,22

*In re Apex Long Term Acute Care-Katy, L.P.,* 465 B.R. 452 (Bankr. S.D. Tex. 2011) ..........29,31

*In re AVN Corp.,* 235 B.R. 417 (Bankr. W.D. Tenn. 1990) ........................................................15

*In re Capital Associates International, Inc. v. Bank One Leasing Corporation,*
2003 WL 26057510 (Bankr. N.D. Tex.2003) .......................................................................2,3,25

*In re Americana Expressways, Inc.,* 161 B.R. 707 (D.C. Utah 1993) .........................................19

*In re American Housing Foundation (O'Cheskey v. Koehler)*, 2013 WL 781616
(Bankr. N.D. Tex. 2013) ..............................................................................................................20

*In re Clay,* 35 F.3d 190 (5th Cir. 1994) .....................................................................................1,3

*In re Jensen,* 946 F.2d 369 (5th Cir. 1991) ...................................................................................3

*In re Kings Falls Power Corp.*, 185 B.R. 431 (Bankr. N.D. N.Y. 1995)…………………………28

*In re Mako,* 116 B.R. 280 (Bankr. E.D. Okla. 1990) ..............................................................14,15

*In re Mobile International, Inc. v. Cellxion, L.L.C.,* 258 B.R. 466 (Bankr. E.D. Okla. 2001) 17,18

*In re Poplar Run Five Ltd., Partnership,* 192 B.R. 848 (Bankr. E.D. Va. 1995) ........................27

*In re Sentry Operating G. of Texas, Inc.* 273 B.R. 515 (Bankr. S.D. Tex. 2002) ..........................1

*Katchen v. Landry,* 382 U.S. 323, 329-30, 86 S. Ct. 467, 15 L.Ed.2d 391 (1966) ...................4,31

*Langenkamp v. Culp,* 498 U.S. 42, 111 S. Ct. 330 (1990) ................................................1,2,3,4,25

*Peachtree Lane Associate, Ltd. v. Granader,* 175 B.R. 232 (N.D. I11. 1994) ............................19

*Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325 (1985) .....29

*Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) ..............................22

*U.S. Bank National Assoc. v. Verizon Communications, Inc.*, 761 F.3d 409 (5th Cir. 2014) ........21

## Constitution and Statutes

U.S. Const. Amend. VII..........................................................................................................21

11 U.S.C. § 501 ....................................................................................................................13

11 U.S.C § 521 .....................................................................................................................13

11 U.S.C § 1111 ...................................................................................................................13

11 U.S.C. § 1111(a) .............................................................................................................13

28 U.S.C. § 157(a) ................................................................................................................7

28 U.S.C. § 157(b) ................................................................................................................7

28 U.S.C. § 157(b)(2)(B) ......................................................................................................9

28 U.S.C. § 157(b)(2)(E) .....................................................................................................21

28 U.S.C. § 157(b)(2)(F) ......................................................................................................21

28 U.S.C. § 157(b)(2)(H) ......................................................................................................21

28 U.S.C. § 157(b)(2)(K) ...................................................................................................7,21

28 U.S. C. § 157(b)(2)(O) ......................................................................................................7

28 U.S.C. § 157(c) .................................................................................................................7

28 U.S.C. § 157(e) ...............................................................................................................32

28 U.S.C. § 1334(b) ...............................................................................................................7

28 U.S.C. § 2201 ...................................................................................................................9

Tex. Bus. & Com. Code § 38.001.........................................................................................25

## Rules

Fed. R. Civ. P. 38....................................................................................................................1

Fed. R. Civ. P. 39 ...........................................................................................................1

Fed. R. Civ. P. 39(a)(2) ................................................................................................22

Fed. R. Bankr. P. 7001 ...............................................................................................7,9

Fed. R. Bankr. P. 9015 .................................................................................................1

Fed. R. Bankr. P. 9015(b) ...........................................................................................30

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Plaintiff, Lone Star State Bank of West Texas ("Lone Star" or "Plaintiff") and files this Brief in Support of Response To Jury Demand and Motion To Strike Jury Demand filed by Rabo AgriFinance, LLC f/k/a Rabo Agrifinance, Inc. (hereinafter "Rabo" or "Defendant") [Doc. 40, Doc. 52 (Doc. 40 refiled as Counterclaim)].  Pursuant to Fed. R. Civ. P. 38 and 39, and Fed. R. Bankr. P. 9015, Lone Star moves the Court to Strike Rabo's jury demand. In support thereof, Lone Star respectfully states as follows:

## ARGUMENT

### Introduction

1.      A party may waive its right to a jury trial.  *In re Clay,* 35 F.3d 190, 196 (5th Cir. 1994).  There are various ways a creditor loses or waives the right to jury trial in a bankruptcy matter.  First, a creditor loses the right by filing a proof a claim in the bankruptcy case, triggering the process of allowance and disallowance of claims.  *Langenkamp v. Culp,* 498, U.S. 42, 44, 111 S. Ct. 330 (1990); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S. Ct. 2782 (1989).  When a creditor files a claim against a debtor's estate and then is a party to an adversary proceeding, the creditor has no Seventh Amendment right to jury trial.  *Langenkamp,* 498 U.S. at 42, 44-45.  By filing a proof of claim, the creditor subjects himself to the bankruptcy court's equitable power.  *Id.* at 44, citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58-59.

2.      The loss of the right to jury trial is not just as to claims stated in the proof of claim, but also with respect to *claims asserted against that creditor that affect the allowance or priority of a claim, including a breach of contract claim.  In re Sentry Operating G. of Texas, Inc.* 273 B.R. 515, 523 (Bankr. S.D. Tex. 2002).  If the claims allowance process is implicated by the allegations, the bankruptcy court has jurisdiction and the right to jury trial is waived.

3.     Second, a creditor can waive the right to jury trial by filing an adversary proceeding, or a counterclaim in an adversary proceeding, which outcome will affect the claims allowance process or priority of a claim in a bankruptcy. *Langenkamp v. Culp*, 498 U.S. 42, 111 S. Ct. 330 (1990).   Any action by the creditor that affects the claims allowance process, affects the hierarchical ordering of creditor claims, or if the dispute is integral to restructuring the debtor-creditor relationship, the action invokes bankruptcy court equitable jurisdiction, thereby waiving the right to jury trial. *In re Capital Associates International, Inc.,* 2003 WL 26057510 at *6 (Bankr. N.D. Tex. 2003).   An action by a creditor whereby it seeks to affect another creditor's participation in the "res" of the bankruptcy estate, invokes bankruptcy court jurisdiction and waives the right to jury trial . *Langenkamp,* 498 U.S. at 44-45.

4.     Third, a creditor cannot actively participate and file documents and seek and obtain relief as a "party in interest" in a bankruptcy case and participate in hearings therein, and then claim it has not sought and benefitted from bankruptcy court jurisdiction and decisions.   A creditor, like Rabo, which has repeatedly claimed an interest in Waggoner Cattle's estate, which has acknowledged it is shown as an allowed secured creditor in that estate on that debtor's schedules, which is shown as an allowed secured creditor in that debtor's plan of reorganization, and which has acted in the bankruptcy proceeding as an allowed creditor in that bankruptcy estate to dispute and avoid liens and claims of other creditors (*and actively participated in the bankruptcy proceedings to dodge fraudulent transfers to it to the detriment of other creditors like Lone Star*), cannot *then* try to claim the matters *involving that same bankruptcy estate and the same creditor Lone Star* are not under the bankruptcy court's equitable jurisdiction, and that it has not waived the right to jury trial.

5.      As this Court stated in *In re Capital Associates International, Inc. v. Bank One Leasing Corporation,* 2003 WL 26057510 (Bankr. N.D. Tex.2003):

> A party may either implicitly or explicitly waive its Seventh Amendment right to a jury trial. *See In re Clay,* 35 F.3d 190, 196 (5th Cir. 1994).  Additionally, a party may have a legal claim, to which the right to a jury attaches, converted into an equitable claim by participating in the bankruptcy process, thereby losing the right to a jury. *See Langenkamp v. Culp,* 498 U.S. 42, 44-45, 111 S. Ct. 330, 331 (1990). Parties frequently waive or convert their jury rights by submitting themselves to the equity jurisdiction of bankruptcy.  *See id.*

*Id. a*t *6.

6.      Further, this Court stated:

> A debtor or creditor with an otherwise valid right to a jury may lose such right through conversion of his legal claim into an equitable claim if the proceeding invokes the: (1) claims allowance or disallowance process; (2) the hierarchical ordering of creditors' claims; or (3) if the dispute is integral to the restructuring of the debtor-creditor relationship.  *See Granfinanciera,* 492 U.S. at 58, 109 S. at 2799; *Billing v. Ravin, Greenberg & Zackin P.A.,* 22 F.3d 1242, 1251 n. 14 (3d Cir. 1994); *In re Jensen,* 946 F.2d at 374. *Id.*

*Id.*

7.      And, as this Court further stated in *In re Capital Associates:*

> "Accordingly, in deciding whether a party to an adversary is entitled to a trial by jury, the court must find that: (1) such party has a Seventh Amendment right to trial by jury, i.e. at least one claim that it asserts, and at least one remedy, are 'legal' in nature as opposed to equitable; (2) such claims do not implicate public rights; (3) such party has not waived its right to a jury by participating in bankruptcy through, e.g. filing a proof of claim or asserting a counterclaim; (4) the nature of the proceeding has not converted legal claims into equitable claims, i.e. the party is not a prepetition creditor, the proceeding does not implicate the claims allowance or disallowance process, the proceeding does not affect the hierarchical ordering of creditors, and the proceeding does not seek to adjust the debtor-creditor relationship.

*Id.* at 7.

8.      As to this Adversary Proceeding, Rabo's right to a jury trial has been both explicitly and implicitly waived by numerous actions of Rabo as outlined below.  And, because many of Lone Star's causes of action are equitable, the right to trial by jury is not available to Rabo.

**A.  Jury Waived By Rabo Filing Proofs of Claim in Joint Debtors' Bankruptcies**

9.      One way to trigger the claims allowance or disallowance process is to file a proof of claim in a bankruptcy. *Langenkamp,* 498 U.S. at 44, 111 S. Ct. at 331.  Doing so subjects the creditor to the bankruptcy court's equitable power. *Id.*

10.     Rabo has explicitly waived its Seventh Amendment right to jury trial insofar as Lone Star's claims involve, effect, and/or relate to the bankruptcy estates of Cliff Hanger Cattle, LLC, Bugtussle Cattle, LLC, and Circle W of Dimmitt, Inc., because Rabo filed a proof of claim in each of their bankruptcies thereby invoking bankruptcy court jurisdiction. [Case No. 18-20129, Claim 2; Case No. 18-20128, Claim 5; and Case No. 18-20127, Claim 10]. By filing a proof of claim in the Cliff Hanger, Circle W, and Bugtussle bankruptcies, Rabo triggered the process of "allowance and disallowance of claims" and subjected itself to this Bankruptcy Court's equitable power. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58-59, 109 S. Ct. 2782, 2799-2800 (1989); *Katchen v. Landy,* 382 U.S. 323, 336, 86 S. Ct. 467, 476 (1966); *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S. Ct. 330, 331 (1990).  A creditor has no Seventh Amendment right to jury trial after it files a proof of claim and triggers bankruptcy court jurisdiction. *Id.* The rationale is that the subsequent adversary proceeding is, like the proof of claim, "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Langenkamp,* 498 U.S. at 44.

11.     Although Rabo, apparently purposefully, failed to file a proof of claim in the Waggoner Cattle bankruptcy (to try to avoid admitting bankruptcy court jurisdiction), it filed Proofs of Claim in the Cliff Hanger and Bugtussle bankruptcies.  As to any legal or equitable interests of Debtors Cliff Hanger or Bugtussle, Rabo has expressly submitted to the jurisdiction of this Court as to the claims in its Counterclaim. Those counterclaims assert rights to relief against

4

Lone Star arising out of fraudulent transfers from Cliff Hanger to Waggoner Cattle, LLC, and on to Bugtussle. By so doing, Rabo waived any right to jury trial arising out of those matters.

12.     The subject Adversary Proceeding by Lone Star is a proceeding relating to the estates of Waggoner Cattle, LLC, Cliff Hanger Cattle, LLC, Bugtussle Cattle, LLC, and Circle W of Dimmitt, Inc. as to *jointly executed documents* (identical transactions).[1] Accordingly, Rabo has no right to jury trial insofar as Lone Star's adversary proceeding pertains to and is related to three of those bankruptcies and joint transactions by each and/or all of them with Waggoner Cattle, LLC, Lone Star and Rabo.

13.     Also, by taking cattle proceeds from Cliff Hanger to which it had no lien or only a subordinate lien (to Lone Star) as to these four debtors' *joint debt* to Lone Star, Rabo took actions *affecting or relating to* the estates of all four debtors. But for Rabo taking all the cattle proceeds, Cliff Hanger could have paid in full its debt to Waggoner Cattle, and not been left owing money to Waggoner Cattle when the four entities filed their respective bankruptcies. But for Waggoner Cattle not receiving the cattle payments from Cliff Hanger, Waggoner Cattle could have paid debts it owed to Debtors Circle W and Bugussle, and the debt of all four Waggoner corporate entities to Lone Star could have been paid off.

14.     The fraudulent transfers of cattle proceeds to Rabo (*from Debtor Cliff Hanger, in whose bankruptcy Rabo filed a proof of claim)* are at the heart of Lone Star's claims for conversion, money had and received, declaratory judgment, Breach of Intercreditor Agreement, fraudulent inducement, civil conspiracy, accounting, and wrongful offset against Rabo. These fraudulent transfers are the transactions from which all Lone Star's claims and Rabo's counterclaim, arise. By filing a proof of claim in Cliff Hanger's bankruptcy and in Circle W and Bugtussle's

---

[1] For example, the Intercreditor Agreement between Rabo and Lone Star was also executed by Waggoner Cattle, LLC and Cliff Hanger. (*See* 18-02007-rlj Doc. 1, p 69)

bankruptcies, Rabo invoked the equitable jurisdiction of this Court and its authority to adjudicate the claims allowance process and lien priorities as to all Waggoner-related Debtors who had joint credit obligations to Lone Star and to Rabo.  Further, *because Debtor Cliff Hanger and Debtor Waggoner Cattle agreed*, along with Lone Star and Rabo, to the Intercreditor Agreement, Rabo has agreed to (or waived the right to object) to the Court's adjudication of that contract and Rabo's agreed subordination of its lien under that Intercreditor Agreement.

### B.    Right To Jury Trial Waived By Rabo Filing Adversary Proceeding Against Lone Star Regarding All Waggoner-Related Debtor Estates

15.    On December 7, 2018, Rabo *filed* Adversary Proceeding No. 18-02016 against Lone Star State Bank of West Texas in the Waggoner jointly administered bankruptcy, Case No. 18-20126-rlj-11. [Doc. 198]  In *Rabo's* adversary proceeding against Lone Star, Rabo alleges this Bankruptcy Court has jurisdiction of its suit for the following reasons (among the various reasons alleged):

a.    "Waggoner Debtors" is defined as all four corporate debtors, *including Waggoner Cattle, LLC.  Id.* ¶ ¶ 1,5, emphasis added.

b.    "RAF" is defined as Rabo AgriFinance, LLC, f/k/a Rabo Agrifinance, Inc.  *Id.*, p. 2.

c.    "RAF is a substantial creditor *of each of the* Waggoner Debtors" *Id.*  ¶ 6, emphasis added.

d.    "RAF asserts that it was owed the total sum of $13,104,815.50 *by each of the Waggoner Debtors, jointly and severally." Id.* ¶ 7, emphasis added.

e.    Further, Rabo asserted that because its "claims are substantially under secured" . . . "it will have *general unsecured claims against each of the Waggoner Debtors* in the many million of dollars. *Id.* ¶ 8, emphasis added.

    f.   Rabo alleges Lone Star "also is a substantial creditor of each of the Waggoner Debtors." *Id. ¶ 10.*

    g.   "This Court has jurisdiction over the *subject matter of the action and over each of the parties* to this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b), (c) and Fed. R. Bankr. P. 7001." *Id.* ¶ 11, emphasis added.

    h.   Rabo alleges: "This is a *core proceeding* within the meaning of 28 U.S.C. § 157(b) (2)(K) and (O) because this is a proceeding *to determine the validity, extent or priority of liens asserted by LSB, and because this proceeding will affect the liquidation of assets of the Waggoner Debtors' estates." Id.* ¶ 12, emphasis added.

16.    In addition to the bankruptcy court *jurisdictional* allegations, Rabo made the following pertinent additional allegations in its Adversary Proceeding filed with this Court:

    a.   Rabo alleges: "RAF is a substantial creditor of each of the Waggoner Debtors and, as such, is entitled to receive both the value of its collateral *from the bankruptcy estates of the Waggoner Debtors* on account of its secured claims along with its pro rata share of any distributions made to unsecured creditors on account of its unsecured claims." *Id. ¶ 14.*

    b.   Rabo alleges: "For example, in the Chapter 11 case filed by Waggoner Cattle, LLC, LSB filed Proof of Claim 7-1 on August 29, 2018, asserting a claim against Waggoner Cattle, LLC in the amount of $11,815,300.69. Upon information and belief, LSB filed similar claims (collectively, the "**LSB Claim**") in the same amount in the Chapter 11 cases filed by the remaining Waggoner Debtors as well." *Id. ¶ 16.*

c.   Rabo alleges: "*As part of the LSB Claim*, LSB asserts that it has a properly perfected lien on and security interest in various items of personal property owned *by each of the Waggoner Debtors, including all general intangibles*." *Id.* ¶ 17.

d.   Rabo alleges: "Furthermore, in the Waggoner Debtors' Chapter 11 cases and in related proceedings, LSB has contended that its lien on general intangibles means that it has a perfected lien on (a) any claims that *any* of the Waggoner Debtors had or could assert against RAF as of the April 9, 2018 Petition Date, and (b) *any additional claims* that *any* of the Waggoner Debtors *have or could assert against RAF by virtue of their bankruptcy filings*, including avoidance claims under Chapter 5 of the Bankruptcy Code." *Id.* ¶ 18.

e.   Rabo alleges: "Furthermore, in the adversary complaint that LSB has filed in the Waggoner Debtors' Chapter 11 cases (jointly administered under Bankruptcy Case No. 18-20126, *the Waggoner Cattle, LLC case, as the lead case*) against RAF in Adversary No. 18-02007-rlj, LSB asserts that it is entitled to receive, as a secured creditor, the first proceeds of any Chapter 5 avoidance claims that *the Waggoner Debtors might have against RAF*, with unsecured creditors sharing in the proceeds only *after* LSB has been paid in full." *Id.* ¶ 20, emphasis added.

f.   While Rabo admitted the Court determined Lone Star lacks standing to assert the avoidance claims, it *then said:* "RAF has filed this Complaint because it disputes LSB's assertion that its pre-petition lien on and security interest in the general intangibles *of the Waggoner Debtors* entitles it to recover and collect, as a secured creditor, the proceeds of claims that the Waggoner Debtors or some other estate fiduciary *might assert against RAF, whether or not such claims existed as of the*

8

*April 9, 2018 Petition Date or only arose thereafter by virtue of the Waggoner*

*Debtors' Chapter 11 filing.*" *Id. ¶* 23, emphasis added.

g. In *seeking a declaratory judgment against Lone Star* in its Adversary Proceeding,

Rabo alleges:

"29. 28 U.S.C. § 157(b)(2)(B) provides that the Bankruptcy Court may hear

and determine all "core proceedings arising under title 11, or arising in a

case under title 11," and the statute further defines core proceedings to

include "determinations of the validity, extent, or priority of liens," and

"other proceedings affecting the liquidation of the assets of the estate or the

adjustment of the debtor-creditor . . . relationship."

30. Federal Rule of Bankruptcy Procedure 7001 defines an adversary

proceeding to include (a) "a proceeding to determine the validity, priority,

or extent of a lien or other interest in property," and (b)" a proceeding to

obtain a declaratory judgment" regarding the validity, priority or extent of

any lien or other interest in property.

31. The Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 et seq.,

specifically authorizes a federal court to 'declare the rights and other legal

relations of any interested party" regarding an actual controversy within its

jurisdiction.

32. There is an actual controversy before the Court *regarding the validity,*

*priority or extent of LSB's pre-petition liens and security interests in the*

*general intangibles of the Waggoner Debtors*, and whether those pre-

petition liens and security interests encumber commercial tort claims

*belonging to the Waggoner Debtors* or the proceeds thereof."

*Id. at ¶ ¶* 29-32, emphasis added.

h. Further, Rabo *asked* this Bankruptcy Court for *relief as to the estates of all the Waggoner Debtors*: "Accordingly, the Court should find and declare as follows:

a. LSB's liens on and security interests in the general intangibles *of the Waggoner Debtors*, along with all other LSB liens on and security interests *in the personal property of the Waggoner Debtors*, to the extent otherwise valid and unavoidable, do not extend to any commercial tort claims that *any of the Waggoner Debtors* had, against RAF or any other parties, as of the April 9, 2018 Petition Date, or to the proceeds of such claims; and

b. If and to the extent *the Waggoner Debtors, or any of them*, receive any proceeds of any commercial tort claims in their Chapter 11 cases, the proceeds will be unencumbered assets of the applicable bankruptcy estate and available to pay the claims of all creditors of such bankruptcy estate, including unsecured creditors." *Id.* ¶ 40, emphasis added.

i. And Rabo asked the Court:

"Accordingly, the Court should find and declare as follows:

a. *LSB's liens on and security interests in the personal property of the Waggoner Debtors*, to the extent otherwise valid and unavoidable, do not extend to any Chapter 5 avoidance claims *held or owned by the Waggoner Debtors' estates*, including the Chapter 5 avoidance claims that LSB attempted to assert against RAF in Adversary No. 18-02007-rlj; and

b.  If and to the extent the bankruptcy estates *of the Waggoner Debtors* receive any proceeds of any Chapter 5 avoidance claims in their Chapter 11 cases, the proceeds will be unencumbered assets of the applicable bankruptcy estate and available to pay *the claims of all creditors* of such bankruptcy estate, including unsecured creditors." *Id.* ¶ 52, emphasis added.

j.  The prayer by Rabo included *a request* for Declaratory Judgment as to all the above-outlined *relief for Rabo regarding the estates of all the Waggoner Debtors and Lone Star's claims against Rabo regarding all of them*. *Id.* at pp. 13-14.

17.     Under Section 541 the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of bankruptcy".  The legal or equitable interest of multiple "Waggoner-related" Debtors are at issue in the causes of action alleged by Rabo in its Counterclaim against Lone Star. [Doc. 41]   By filing Rabo's *Complaint to Determine the Nature, Extent and/or Validity of Asserted Liens on Claims and Causes of Action* against Lone Star in Adversary No. 18-02016-rlj, in the *Waggoner Cattle* bankruptcy, Case No. 18-20126-rlj-11, Rabo has brought itself within the equitable jurisdiction of the bankruptcy court, and waived the right to jury trial.

18.     Rabo is not permitted to invoke bankruptcy court jurisdiction when it wants to pursue a claim or complaint, and then, in a separate adversary *within the same bankruptcy case,* claim it has not consented to the equitable jurisdiction of the bankruptcy court and/or waived the right to jury trial.

19.     In *Rabo v. Lone Star*, Rabo claimed the Waggoner Debtors (including the same 5 debtors at issue in this case) *jointly* owe it the same $13 plus million dollars, and Rabo *pleaded bankruptcy court jurisdiction* over its complaint against the same other creditor, Lone Star, under

28 U.S.C. §§ 157(a),(b), (c) and 1334(b).  *See* ¶ 11 of the *Rabo v. Lone Star* Complaint.  28 U.S.C. 157(a) and (b) include jurisdiction of core *and non-core matters*.  28 U.S.C. 157(c) provides for the bankruptcy court to hear cases *related to* a Title 11 case and the bankruptcy court to submit findings of fact and conclusions of law, i.e. no jury determination of the facts.

20.     Further, Rabo admitted in the *Rabo v. Lone Star* complaint that it would "affect the liquidation of the assets of the Waggoner Debtors' estates".  *See ¶* 12 of the *Rabo v. Lone Star Complaint.*  And *Rabo specifically requested that this bankruptcy court grant it declaratory relief as to Lone Star's claims* in the *Waggoner Debtors' estates* (which *includes* Waggoner Cattle, LLC).

21.     It is noteworthy that by its Adversary Proceeding, Rabo specifically asks this Court to have *Lone Star's lien as to Waggoner Cattle, LLC's* general intangibles, as well as Lone Star's lien as to the other Waggoner-related debtors, *determined to be invalid.*  Doc. 198, p. 6, 7-10, and 13.  Further, Rabo is attempting by its Adversary Proceeding to get the Court *to determine that Lone Star has no lien or security interest in the state law, and fraudulent transfer claims* (to be brought under Sections 544 or 548 of the Bankruptcy Code), which would include fraudulent transfer claims *against Rabo for taking all the cattle sale proceeds even though Waggoner Cattle was not paid in full by Cliff Hanger for the Waggoner Cattle, LLC cattle. Id.* at  p.7, 10-14.  Rabo is attempting to do this *in the Waggoner Cattle, LLC bankruptcy* without even having a proof of claim on file.  Determining the validity and priority of liens on debtor's property is a core proceeding, which Rabo admitted. *Id*. at p. 3.   Now, Rabo would have the Court believe it did not waive the right to jury trial as to matters involving creditor Lone Star and Lone Star's lien as to the property of Waggoner Cattle in the Waggoner Cattle bankruptcy.

22.     In simple language, Rabo is attempting to speak out of both sides of its mouth. When it wants to invoke the bankruptcy court's equitable jurisdiction it says the court has jurisdiction, but when it wants to avoid bankruptcy court jurisdiction it claims the court should grant a right to jury trial and punt its disputes with creditor Lone Star relating to the estate of Waggoner Cattle, LLC to the District Court and let a jury decide the matter.  The answer is also simple.  Rabo waived the right to jury trial as to matters involving the estate of Waggoner Cattle, LLC by filing its adversary proceeding against the same creditor, Lone Star, *which allegations against Lone Star include allegations as to property or rights of Waggoner Cattle, LLC*, and by alleging this Court has core jurisdiction of it, thereby submitting itself to this Court's jurisdiction as to all claims and lien disputes between Rabo and Lone Star as to the estates of *all* the Waggoner-related entities, *including Waggoner Cattle, LLC.*

23.     By filing the Rabo Adversary Proceeding in December 2018, claiming this Court has jurisdiction of it, and including a claim for relief against creditor Lone Star as to all the Waggoner Debtors' estates, Rabo waived the right to jury trial as to matters involving the Estate of Waggoner Cattle, LLC. against creditor Lone Star.

### C. Other Rabo Acts of Active Participation, And Seeking and Obtaining Relief, in The Waggoner Cattle Bankruptcy Waived Right to Jury Trial

24.     A secured creditor in a Chapter 11 bankruptcy who is *not* required to file a proof of claim like Rabo in the Waggoner Cattle bankruptcy[2]  (because its secured claim was listed as undisputed in the debtor's schedules) can still waive the right to a jury trial *by participating and*

---

[2] A proof of claim is deemed filed under 11 U.S.C. § 501 for any secured claim that appears in the Debtor's schedules filed under 11 U.S.C. § 521, except a secured claim that is scheduled as disputed, contingent, or unliquidated.  11 U.S.C. § 1111(a).  Debtor Waggoner Cattle listed Rabo as a secured creditor and did not schedule Rabo's claim as disputed, contingent, or liquidated. [Waggoner Cattle LLC bankruptcy, Case No. 18-20126-11-rlj, Doc. 33, p. 6,7 wherein Rabo is listed as a secured creditor with an amount of claim of $10,264,493.41 against Waggoner Cattle, LLC and the claim is not listed as disputed, contingent, or unliquidated].  Thus, Rabo is deemed to have filed a proof of claim in the Waggoner Cattle, LLC bankruptcy case.

benefiting from bankruptcy court action that affects its claim in a debtor's estate. *In re Mako*, 116 B.R. 280, 283 (Bankr. E.D. Okla. 1990). As the bankruptcy court in *Mako* noted: "the pecuniary and proprietary benefit which a particular creditor actually or potentially derives from an estate and the level of participation of that creditor in the bankruptcy process" can waive that creditor's right to a jury trial. *Id.* In *Mako,* the bank, a secured creditor listed on the debtor's filed schedules, participated in the debtor's bankruptcy by consenting in writing to the sale of property on which it had a lien *as long as* it received proceeds which were property of the debtor's estate. By doing so, the court found it waived its right to a jury trial.

25. In the Waggoner-related bankruptcies, Rabo has benefitted from: (1) filing its written opposition, and arguing to this Bankruptcy Court, *against* Lone Star being authorized to *pursue claims against Rabo*, including claims *against Rabo as a fraudulent transferee* [ Doc. 132, 166]; (2) has benefitted from filing objections to debtors' disclosure statement to advocate for higher collateral values for property on which it claims a lien, and to benefit by claiming that the bankruptcy court should treat these commonly owned and jointly administered Debtors as a "single consolidated enterprise" [Doc. 208, p. 7] to Rabo's benefit under the plan. Further, Rabo participated in the Waggoner Cattle bankruptcy case by *opposing* Lone Star's Motion To Lift Stay [Doc. 230]. By all these actions, Rabo has used the 'equitable jurisdiction" of this Bankruptcy Court *to benefit its claims and its liens, to the detriment of Lone Star, another secured creditor of the same debtors*, and to enhance its claims and liens against the estates of, not only Cliff Hanger, Circle W, and Bugtussle, but also against the estate of Waggoner Cattle, LLC. And, by so participating, has, so far, shielded itself from fraudulent transfer claims for receiving many millions of dollars of cattle proceeds on which its lien position is disputed.

26.     As the *Mako* court noted, for the *Granfinanciera* ruling "to have any rational meaning in the bankruptcy process, it *must include the circumstances of benefit from and participation in the bankruptcy process by the particular creditor*."  *Mako*, 116 B.R. at 283, emphasis added.  *See also In re AVN Corp.,* 235 B.R. 417 (Bankr. W.D. Tenn. 1990) where the defendant, a shareholder in the corporate debtor, filed motions and objections, and argued objections to another creditor's claims against the debtor, and then tried to claim a right to jury trial when that other creditor (later replaced by the trustee) filed an adversary proceeding against him for fraudulently transferred funds from the debtor.  The bankruptcy court denied the jury demand, as should this Court.

27.     A creditor cannot participate and file documents as a "party in interest" in a bankruptcy case, participate in numerous motions and hearings therein, seeking to obtain benefit to itself, and then claim it has not sought and benefitted from bankruptcy court jurisdiction and decisions, and assert that it has not subjected itself to the bankruptcy court's equitable jurisdiction.

28.     In addition to actively participating in the Waggoner Cattle bankruptcy proceeding by filing its own Adversary Proceeding against Lone Star therein, Rabo has also filed in the Waggoner Cattle bankruptcy the following documents:

7/23/18         *Memorandum in Opposition To Lone Star State Bank's Motion For Order Granting Leave, Standing, And Authority to Commerce, Prosecute, And Settle Causes of Action On Behalf Of The Debtors' Estates Against Rabo AgriFinance, LLC f/k/a Rabo Agrifinance, Inc. and Among The Debtors* [Doc. 132] (wherein it *opposed Lone Star's Motion for Leave and requested entry of a scheduling order and the opportunity to conduct discovery.  See* Doc. 132, p. 26, 27.

9/6/18      Rabo's *Witness and Exhibit List* for Sept. 10, 2018 Hearing on Lone Star's Motion For Order Granting Leave.  Doc. 166.

12/28/18      *Objection of Rabo AgriFinance, LLC To The Debtors' Combined Disclosure Statement and Plan of Reorganization, and Reservation of Rights* [Doc. 208]:

     a.   Wherein *Rabo claimed a lien on 8465 head of cattle of Waggoner Cattle, LLC.  See* Doc. 208, p. 4.

     b.   Wherein Rabo noted the Debtors' Disclosure Statement shows "*Rabo's* total claim against the Debtors is $13,104,815.50 for *four* of the Debtors (*See*, … Disclosure Statement at p. 23 [*Rabo's Class 3 Claim for $13,104,815.50 in the Waggoner Cattle, LLC case*]" *Id.,* p. 5, emphasis added.

     c.   Wherein Rabo argued that the Disclosure Statement "should disclose that *the Debtors functioned prepetition as a single business enterprise and as alter egos of Quint Waggoner and each other, and the bankruptcy treatment of the Debtors post-petition will also treat the Debtors as a single consolidated enterprise.*" *Id.*, p. 7, emphasis added.

     d.   Wherein Rabo urged the Court not to approve the joint debtors' Disclosure Statement. *Id.*, p. 9.

2/21/19      *Rabo's Limited Objection To Lone Star Bank of West Texas's [sic] Motion To Lift The Automatic Stay*. Doc. 230.

29.     In summary, Rabo actively and repeatedly  sought Bankruptcy Court jurisdiction, authority, and action in the Waggoner Cattle, LLC bankruptcy (along with the other related bankruptcies), including: 1) the right to object to Lone Star obtaining leave to sue it on behalf of the Waggoner Cattle estate, 2) the right to  seek discovery, 3) the right to obtain a scheduling order, 4) the right to call witnesses and introduce witnesses at the hearing on Lone Star's Motion for Leave, 5) the right to object to the Debtors' Disclosure Statement and Plan which included Waggoner Cattle, 6) further, Rabo claimed it had a lien on Waggoner Cattle, LLC cattle, 7) Rabo acknowledged it was listed as having a Class 3 secured creditor with a claim in excess of $13 million against Waggoner Cattle, LLC, and 8) Rabo requested that  the Debtors' disclosure statement *state the Debtors functioned as a single business enterprise and the bankruptcy treatment of the Debtors be as a single consolidated enterprise.*  Rabo has repeatedly waived the right to jury trial by its active participation in the Waggoner Cattle bankruptcy and by seeking and obtaining relief in its favor, against Lone Star.

### D. Rabo Waived Right to Jury Trial By Filing Counterclaim And Affirmative Defenses Against Lone Star

30.     By filing a Counterclaim in an adversary proceeding and asserting that its interest in personal property of a debtor is superior to the interest of another creditor in that personal property,[3] a creditor invokes the equitable jurisdiction of the bankruptcy court and waives the right to trial by jury.  *In re Mobile International, Inc. v. Cellxion, L.L.C.,* 258 B.R. 466, 467 (Bankr. E.D. Okla. 2001).

31.     In this case, *all three of Rabo's causes of action in its Counterclaim against Lone Star in this Adversary Proceeding [Doc. 40, refiled as Doc. 52] involve fraudulent transfers by and/or between debtors,* including Debtors Cliff Hanger and Bugtussle in whose bankruptcies

---

[3] Rabo also asserted this lien interest in the February 25th and 26th hearing on Lone Star's Motion to Lift Stay.

Rabo filed proofs of claim, as well as with Debtor Waggoner Cattle, in whose bankruptcy Rabo is deemed to be an undisputed secured creditor.

32.     Rabo alleges: "$4,340,610.89 was *transferred by Cliff Hanger Cattle,* **through Waggoner Cattle***, to Bugtussle Cattle, LLC, to fund capital improvements at the Calf Ranch* (the "Calf Ranch Transfers"). *Id., ¶* 21, emphasis added.. As is explained in Lone Star's Motion To Dismiss Rabo's Counterclaim and Brief filed on March 18, 2019 [Doc. 50,51], what Rabo alleges are fraudulent transfers *between three debtors,* **including Waggoner Cattle, LLC**.

33.     Further, Rabo alleges in its Counterclaim at ¶¶ 24, 25, 32, 38, additional fraudulent transfers by "Rabo" allegedly over paying "Lone Star"[4] for *Waggoner Cattle's cattle.* In reality, as noted in Lone Star's *Brief in Support of Motion To Dismiss Counterclaim,* this allegation, again, is an allegation of *fraudulent transfers from debtor Waggoner Cattle, LLC* to debtor Cliff Hanger. The entirety of Rabo's Counterclaim is based upon *alleged fraudulent transfers by, through, and/or to Waggoner Cattle, LLC.*

34.     As is explained in *Lone Star's Motion To Dismiss Rabo's Counterclaim* and Brief in Support filed on March 18, 2019 [Doc. 50,51], what Rabo alleges are fraudulent transfers *between three debtors, including Waggoner Cattle, LLC.* By filing a counterclaim in an adversary proceeding *against the debtor or involving the debtor's estate,* the defendant also triggers the claims allowance process and waives the right to jury trial. *In re Mobile International Co., Inc.,* 258 B.R. 466, 467 (Bankr. E.D. Okla. 2001). Rabo will claim its Counterclaim did not seek relief from Debtors' estates, but its Counterclaim *asserted fraudulent transfers between three debtors* and asserted a *lien on debtors' property* superior to the lien of another creditor, Lone Star.

---

[4] Obviously, *Rabo* did not pay *Lone Star* for cattle. Cliff Hanger only partially paid Waggoner Cattle for cattle.

35.    The Rabo Counterclaim, *under the case law Rabo cited to this Court to oppose Lone Star obtaining leave to pursue fraudulent transfers to Rabo*, and then Lone Star cited to this Court to contest Rabo's Counterclaim in Lone Star's Rule 12(b) motion, merely presents a *fraudulent transfer claim against two Debtors* (*Waggoner Cattle* and Bugtussle, or Cliff Hanger and Waggoner Cattle)[5], that neither the debtors-in-possession, nor a trustee, have yet recovered. The Debtors' respective estates own a legal or equitable interest in the transfers.  *See* Doc. 51, pp. 4-6 and the cases cited therein.  Therefore, when Rabo filed its Counterclaim, it made a claim against the Debtors' estates, and waived the right to trial by jury as to claims regarding the estate of Waggoner Cattle, LLC.  *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330 (1990).  A *claim against a bankruptcy estate* triggers the process of "allowance and disallowance of claims".  *Id.,* which in turn waives the claimants' right to a jury trial.

36.    Further, the right to trial by jury was also waived by Rabo including as its Eleventh and Twelfth Affirmative Defenses that "Lone Star's claims are barred for the reasons set forth in Rabo's Counterclaim." Doc. 41, p. 16.  "By presenting a ["defense" which, in reality, presents a counterclaim against the estate], Defendant has submitted to the bankruptcy court's equity jurisdiction and is not entitled to a jury trial. *Peachtree Lane Associates, Ltd. v. Granader,* 175 B.R. 232, 236 (N.D. I11. 1994), citing from *In re Americana Expressways, Inc.,* 161 B.R. 707, 717 (D.C. Utah 1993).  See also pp. 4-6 of Lone Star's *Brief in Support of Motion to Dismiss Counterclaim*. Doc. 51, pp. 4-6.

---

[5] *See* p. 4-6 of Lone Star's Brief in Support of Motion to Dismiss Counterclaim [Doc. 51, pp. 4-6.]

**E. The Claims Made and Relief Sought by Lone Star Involve the Claims Allowance or Disallowance Process, the Hierarchical Ordering of Creditors' Claims, and/or the Disputes at Issue are Integral to the Restructuring of the Debtor-Creditor Relationship**

37.     A creditor may lose or waive the right to trial by jury if the subject proceeding pertains to: (1) the claims allowance or disallowance process, (2) the hierarchical ordering of creditors' claims, or (3) if the dispute is integral to the restructuring of the debtor-creditor relationship. *Granfinanciera,* 492 U.S. at 58, 109 S. Ct. at 2799.

38.     As the Second Circuit Court of Appeals noted in *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329-30 (2nd Cir. 1993), and this Court noted in *In re American Housing Foundation (O'Cheskey v. Koehler)*, 2013 WL 781616 at *3 (Bankr. N.D. Tex. 2013), "when a creditor submits to the equitable jurisdiction of the bankruptcy court, it waives any jury trial right in the resolution of disputes "vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in creditor hierarchy."  In this case, if Lone Star does not prevail, Rabo will get to keep the millions of dollars of cattle sales proceeds it swept out of Debtor Cliff Hanger's bank account[6].  Lone Star's claims are premised on the Debtors and Rabo breaching the Intercreditor Agreement, Waggoner Cattle not being paid in full for cattle transferred to Cliff Hanger, and Rabo wrongfully taking and keeping all the finished cattle sale proceeds, to the detriment of Waggoner Cattle and Lone Star.  Both creditors' proofs of claim against the joint debtors would change if Lone Star recovers from Rabo on Lone Star's conversion claim, money had and received claim, and/or breach of Intercreditor Agreement claim.

39.     Further, insofar as this Adversary Proceeding pertains to Debtor Waggoner Cattle, LLC, Rabo has implicitly waived its Seventh Amendment right to jury trial.  Rabo has actively

---

[6] If the debtors-in-possession Cliff Hanger or Waggoner Cattle, or a trustee for either of them, does not pursue the fraudulent transfers to them, or if this Court does not allow Lone Star to do so.

participated *and requested relief* from this Bankruptcy Court, *which relief involves the claims allowance or disallowance* process, has actively participated and requested relief from the Bankruptcy Court *which involves the hierarchical ordering of claims (between it and Lone Star, and other creditors)*, and has actively participated and requested *relief from this Bankruptcy Court that is integral to the restructuring of the debtor-creditor relationships of both creditors to Debtor Waggoner Cattle, LLC.*

40.     When a creditor's suit or counterclaim involves fraudulent transfers by debtors, or is a suit to determine the validity, priority, and extent of liens as to Debtor's property, the bankruptcy court has jurisdiction *whether or not* that creditor has filed a proof of claim.  28 U.S.C. §157(b)(2)(E), (F), (H), and (K).  A creditor does not have a right to jury trial where resolution of the estate's fraudulent transfer claim was integral to allowance of a creditor's proof of claim.  *U.S. Bank National Assoc. v. Verizon Communications, Inc.*, 761 F.3d 409, 424-25 (5th Cir. 2014). Competing claims and lien priorities of creditors Lone Star and Rabo in the same four corporate debtors' property are integral to all four bankruptcy cases, as well as in *both* adversary proceedings between Lone Star and Rabo.  But for Rabo's claim that three debtors (Cliff Hanger, Waggoner Cattle, and Bugtussle) made the "Calf Ranch Transfers", and that Cliff Hanger and Waggoner Cattle were involved in "over payment" for cattle, *all alleged fraudulent transfers between debtors*, Rabo states no alleged basis for a breach of contract, conversion, or unjust enrichment claim in its Counterclaim against Lone Star.

### F.   No Right to Jury Trial as to Equitable Claims and Analysis of Claims

41.     The Seventh Amendment guarantees the right to a trial by jury as to "Suits at common law", U.S. Const. Amend. VII.  Where the suit is as to equitable rights and remedies, there is no such right. *Granfinanciera v. Nordberg,* 492 U.S. 33, 41; 109 S. Ct. 2782, 2790 (1989).

When the cause of action is in equity, there is no right to a jury trial. *Curtis v. Loether,* 415 U.S. 189, 192-93 (1974); *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987); *see also* Fed. R. Civ. P. 39(a)(2). Also, if the cause of action is a "legal in nature" but asserts a public right, there is no right to trial by jury. *Granfinanciera,* 492 U.S at 42, n. 4, at 279 n. 4. Many of Lone Star's causes of action seek equitable relief to which there is no right to trial by jury.

42. A traditional analysis of whether there is a right to jury trial involves an analysis of the causes of action at issue. Lone Star states the following as to the remaining causes of action in its adversary proceeding:

### A. Seventh Cause of Action: Declaratory Judgment

43. Lone Star's declaratory judgment action is neither equitable nor legal, it is "sui generis". *Cobb v. Harrington,* 190 S.W.2d 709, 713 (Tex. 1945). Lone Star seeks declaratory judgment to interpret the Intercreditor Agreement between Lone Star and Rabo as to cattle transferred from Debtor Waggoner Cattle to Debtor Cliff Hanger, and to declare lien priorities between those creditors as to the transferred cattle and their proceeds, i.e. all equitable relief. Doc. 1, ¶ ¶ 115-123. Further, Lone Star seeks declaratory judgment as to sums Debtor Cliff Hanger transferred to Debtor Waggoner Cattle that were posted in "due to/due from accounts" as loans when they were, in reality, payments for Waggoner Cattle cattle. *Id., ¶* 124. And Lone Star seeks declaratory judgment to determine whether there was a Cliff Hanger receivable from Waggoner Cattle to offset, and the status of actual accounts between the two debtors after the attempted offset. *Id.,* ¶ 125. All the requested relief is equitable, is directly related to the *bankruptcy estates of two debtors* (Waggoner Cattle and Cliff Hanger) and is directly related to core functions of this Court

to determine lien priorities between creditors of these Debtors.   Therefore, the Seventh Cause of

Action, should be considered an equitable claim, with no right to jury trial.

### B.      Eighth Cause of Action: Breach of Intercreditor Agreement

44.      Breach of contract claims seeking actual damages are traditionally legal claims.

But, the Intercreditor Agreement in this case is a pre-petition subordination agreement between

two creditors of the same debtors.   Interpretation and enforcement of creditor agreements *agreed*

*to by two debtors*,[7] and determining lien priorities, are core functions of this Court.   The cause of

action seeks both equitable and legal relief, but this Court has jurisdiction of the subject matter.

### C.      Ninth Cause of Action: Conversion

45.      Lone Star seeks in this cause of action damages for Rabo's conversion of cattle

proceeds it received from Debtor Cliff Hanger, *a debtor in whose bankruptcy Rabo filed on proof*

*of claim.*   Because Lone Star's lien was prior and primary, and was never released or subordinated,

Rabo had no lien, or only a subordinated lien, and no right to take and keep the cattle proceeds.   In

a conversion suit, legal and/or equitable remedies may be sought (for example, the return of

personal property, court determination of lien priority, and/or damages for property taken).   In the

stated claim, Lone Star seeks both equitable relief and damages from Rabo.   But, again, lien

priorities as to creditors of the same two debtors and enforcement of their pre-Petition Intercreditor

Agreement, a subordination agreement, are at the heart of the cause of action for damages.   But

for the court's determination of the lien priorities, damages may, or may not, be awarded.

---

[7] Cliff Hanger and Waggoner Cattle were both parties to the Lone Star-Rabo Intercreditor Agreement.

### D.     Tenth Cause of Action: Fraudulent Inducement of the Intercreditor Agreement

46.     Pre-petition representations of creditor Rabo to creditor Lone Star *as to lien priority and/or subordination of liens* as to cattle transferred from Debtor Waggoner Cattle to Debtor Cliff Hanger, and lien priorities as to the cattle proceeds, are at issue.  The cause of action seeks both equitable and legal relief.

### E.     Eleventh Cause of Action: Money Had and Received by Rabo and Constructive Trust

47.     Lone Star seeks a constructive trust, an equitable remedy, and recovery of money which constitutes the proceeds of Lone Star's collateral that Rabo unjustly received and kept.  Both legal and equitable relief are requested, and all is dependent on the Court's equitable determination and enforcement of lien priorities and interpretation of the Intercreditor Agreement.

### F.     Thirteenth Cause of Action: Civil Conspiracy

48.     In the civil conspiracy claim, Lone Star alleges that Rabo *and three debtors*, Waggoner Cattle, Cliff Hanger, and Circle W, were involved in a *conspiracy to defraud Lone Star* by concealing the actual financial condition of Debtors to facilitate the fraudulent transfers of cattle from Waggoner Cattle to Cliff Hanger and to conceal the fraudulent transfer of cattle proceeds to Rabo.  The claim involves not just Debtors Waggoner Cattle, *but also debtors Quint Waggoner, Cliff Hanger, and Circle W (in whose bankruptcy cases Rabo filed proofs of claim).*  Whether fraudulent transfers were made *between debtors,* as orchestrated and facilitated by Rabo and its manipulation of Cliff Hanger borrowing base reports given to Lone Star, are at issue.  Damages are sought from Rabo.

### G.    Fourteenth Cause of Action: Accounting

49.    A request for an accounting seeks an equitable remedy.

### H.    Fifteenth Cause of Action: Wrongful Offset

50.    A request for wrongful offset seeks an equitable remedy.

### I.    Sixteenth Cause of Action: Attorney Fees and Costs

51.    A request for attorney's fees in federal court is subject to the discretion of the court

and its equitable powers, especially when declaratory relief is sought.  Insofar as attorney's fees

are sought for breach of the Intercreditor Agreement, the relief under Tex. Bus. & Com. Code

§ 38.001, et seq. is also subject to the court's discretion.

### G.  Legal Claims Converted to Equitable Claims in Bankruptcy

52.    A party may have a legal claim converted to an equitable claim by filing it the

bankruptcy court.  *Langenkamp v. Culp,* 498 U.S. 42, 44-45, 111 S. Ct. 330, 331 (1990).  Further,

as this Court noted in *In re Capital Associates:* "The Bankruptcy Code functions in equity, and the

bankruptcy court, when considering issues at the heart of bankruptcy, is functioning as a court of

equity.  *See Curtis v. Loether,* 415 U.S. 189, 195, 94 S. Ct. 1005, 1009 (1974)." *Id.* at 8.  In its

Adversary Proceeding, Lone Star explicitly asks this court to consider issues at the heart of the

bankruptcy of Debtors Waggoner Cattle and Cliff Hanger.  No effective and equitable restructuring

of the debtor-creditor relationships of either Debtor Waggoner Cattle or Debtor Cliff Hanger can

be done without determination of the issues at the heart of Lone Star's Adversary Proceeding.

53.    Both the adversary proceeding by Lone Star against Rabo (Adv. Proc. No. 18-

02007) and the adversary proceeding by Rabo against Lone Star (Adv. Proc. No. 18-02016)

involve the claims allowance or disallowance process, the hierarchical ordering of creditor's claims, and the disputes are integral to the restructuring of the debtor-creditor relationship. Both proceedings involve the estates of the same Debtors. Lone Star and Rabo are the largest creditors in the estates of the same debtors. The Intercreditor Agreement, a subordination agreement, between them pertains to the estates of the same Debtors. Each creditor claims it is entitled to a higher ordering of its claim over the other creditor's claim. And, as shown above, Rabo's claims in its adversary proceeding, and its claims as a defendant in Lone Star's adversary proceeding, are based upon *joint and several debts incurred by the same subject debtors* (i.e. Rabo does not claim only Bugtussle owes it money; Rabo admits *all the debtors owe it the same unpaid sum*). Rabo gamesmanship in not filing a proof of claim in 1 of the 5 subject bankruptcies (Waggoner Cattle) does not change any of the above facts. Waggoner Cattle incurred the same pre-petition debt to Rabo as the other four debtors by the same jointly-signed credit agreements. Similarly, the 5 debtors incurred joint and several pre-petition debt to Lone Star by jointly-signed credit agreements.

### H. Lone Star's Claims And Causes of Action Against Rabo Directly Involve and/or Affect Debtors' Estates And Call For Determination of And Enforcement of Lien Priorities as to Joint Debtors of Same Two Creditors

54.     Determination of lien priorities and whether a lien of one creditor is, or is not, subordinate to another creditor's lien as to a Debtor's property, or to proceeds of it, and the enforcement of lien priorities, are core functions of a Bankruptcy Court when the debtors and their estates are equitably administered by a Bankruptcy Court. The estates of Debtors Waggoner Cattle and Cliff Hanger, and liens as to property of those estates, are directly related to Lone Star's causes of action.

55.    If the court finds Rabo has not already waived its right to jury trial, the court should

determine there is no right to jury trial because all the claims and lien issues in the Lone Star

adversary involve *joint debts by debtors to both Waggoner Cattle and Cliff Hanger and*

*enforcement of an Intercreditor Agreement agreed to by both subject debtors and both subject*

*creditors.*

56.    Merely because a claim's "resolution may be affected by State law" does not make

it a non-core matter in a title 11 case. *In re Poplar Run Five Ltd. Partnership,* 192 B.R. 848, 856-

57 (Bankr. E.D. Va. 1995).  The key issue is *the centrality of it to the bankruptcy proceedings*.  In

this case, both adversary proceedings, *Lone Star v. Rabo* and *Rabo v. Lone Star,* affect the

Waggoner Debtors' bankruptcies.  Relief or sums either obtains from the other reduces or changes

their respective claims in the Debtors' bankruptcies, because both subject debtors *jointly and*

*severally* owed the same respective sums to the two subject creditors.  Either creditor's rights or

obligations are significantly affected by the outcome of the subject adversary cases.  Both cases

could conceivably affect both estates (Waggoner Cattle and Cliff Hanger) being administered in

bankruptcy.

**I.    Joint Debts By Debtors to Both Creditors and Joint Intercreditor Agreement
Makes Case Inextricably Intertwined Involving All Waggoner Corporate
Debtors' Estates**

57.    Rabo has filed in the Cliff Hanger, Circle W, and Bugtussle bankruptcies,

documents showing that *debtor Waggoner Cattle is a co-obligor on the same claimed debts to*

*Rabo, and Rabo has presented this Court with the jointly-signed loan and security documents as*

*the basis of its claims in the bankruptcies.*

58.    Because *both* Lone Star and Rabo entered into contracts with the same subject

debtors providing for *joint* liability on the debts (not just Waggoner Cattle liable to Lone Star,

etc.), and Rabo signed an Intercreditor Agreement with Lone Star involving *both* Debtors Waggoner Cattle and Cliff Hanger as parties to that contract, the respective creditors' claims and lien priorities *arising from* the joint debtors' contracts are inextricably intertwined.  Whatever the Court determines in this Adversary Proceeding affects not just the Waggoner Cattle estate, it affects them all.

59.     All four Waggoner-related corporate entities *jointly* signed loans and credit agreements with Lone Star *and* with Rabo that are at issue in this case.  Further, *both* debtor Cliff Hanger *and debtor Waggoner Cattle* accepted, agreed to, and signed the Intercreditor Agreement which is at the heart of the dispute between Lone Star and Rabo.  *See* Doc. 1, p. 69.  As noted above, Rabo filed a proof of claim in the Cliff Hanger bankruptcy.  Neither the four debtor jointly-signed loans, nor the two debtor jointly-signed Intercreditor Agreement with the two subject lenders can be "unwoven" after the fact by Rabo in an attempt to "recreate" a right to jury trial for Rabo merely because it did not file a proof of claim in the Waggoner Cattle bankruptcy[8].

**J.     Matters At Issue in Lone Star Adversary Proceeding Are Fundamental Bankruptcy Matters and the Claims Implicate Public Rights**

60.     Another reason to deny Rabo's demand for jury right is that the matters raised in Lone Star's Adversary Proceeding are fundamental bankruptcy matters.  "Resolving subordination disputes is part of the process of ordering the estate for purposes of distribution and is integral to the restructuring of debtor-creditor *and creditor-creditor relations*.  Accordingly, a cause of action based on Code § 510 concerns *essential bankruptcy laws functions*, namely, the administration and

---

[8] Among many reasons, Rabo probably did not file proof of claim in Waggoner Cattle bankruptcy because Rabo was already listed in the debtor's filed schedules as an undisputed secured creditor, Rabo knew its lien was in second position to Lone Star as to Waggoner Cattle, and Rabo knew its unloading of Cliff Hanger's bank account left Waggoner Cattle unpaid and with few assets.

distribution of the bankruptcy estate." *In re Kings Falls Power Corp.*, 185 B.R. 431, 439 (Bankr. N.D. N.Y. 1995), emphasis added. The subject Intercreditor Agreement is a subordination agreement and is a fundamental bankruptcy matter to be determined by this Court.

61.    *In re Apex Long Term Acute Care-Katy, L.P.,* 465 B.R. 452 (Bankr. S.D. Tex. 2011) outlined the background and importance of the bankruptcy court adjudication of matters involving fundamental bankruptcy matters. The bankruptcy court in *Apex* noted all the following that is pertinent to this case:

a.   Citing from *Central Va. Community College v. Katz,* 546 U.S. 356, 126 S. Ct. 990 (2006) and its guidance as to which matters are fundamental bankruptcy matters: "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debts." 546 U.S. at 363-64, 126 S.Ct. 990." *Apex*, 465 B.R. at 458. No "equitable distribution" of Cliff Hanger or Waggoner Cattle's property can occur until this Court determines the matters directly at issue in Lone Star's Adversary Proceeding.

b.   Citing from *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 593-94, 105 S.Ct. 3325 (1985): "In *Thomas*, the Supreme Court held that "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." 473 U.S. at 593-94, 105 S.Ct. 3325. *Id.*

c. "Because *Thomas* links the public rights doctrine to Congress' Article I powers, the doctrine has particular force in the bankruptcy context. While most public regulatory schemes are passed pursuant to Congress' powers under the Commerce Clause, the Bankruptcy Code is passed pursuant to Congress' specialized powers under the Bankruptcy Clause. The bankruptcy power is unique. *Id.*

d. "Because bankruptcy is a federal public concern, it was specifically mentioned in the Constitution. *See Katz,* 546 U.S. at 363, 126 S.Ct. 990 *Id. at 458-59." Id.* at 458-59.

e. "Accordingly, this Court concludes that at the time the Bankruptcy Clause was incorporated into Article I, bankruptcy was a distinctly political matter: the stability of debtor-creditor relationships was closely linked to the viability of the republic. The Bankruptcy Clause gives Congress the power to regulate debtor-creditor relations at least in part for the purpose of protecting the entire constitutional scheme. The bankruptcy power thus involves uniquely public concerns." *Id.* at 460.

f. "The bankruptcy scheme is therefore a unique public rights scheme, and the public rights doctrine applies at least to fundamental bankruptcy matters." *Id.*

g. "When the substantive outcome of a non-bankruptcy law claim is affected by bankruptcy law, the claim may be "transformed" into a bankruptcy matter. *Id.; cf. Germain v. Conn. Nat'l Bank,* 988 F.2d 1323, 1330 (2d Cir. 1993) (holding that, with respect to jury rights, a creditor's consent to a bankruptcy court's *in rem* jurisdiction transforms the character of the claim from legal to equitable, but that

30

this transformation does not affect "disputes that are only incidentally related to the bankruptcy process")." *Id.* at 460.

h. "To determine whether a matter 'would necessarily be resolved in the claims allowance process," the Court considers whether the matter can be resolved through the exercise of *in rem* jurisdiction over the bankruptcy estate or whether the proceeding is necessary to effectuate such *in rem* jurisdiction. *Cf. Katz,* 546 U.S. at 378, 126 S.Ct. 990." *Id.*

i. And finally, the Court noted that pursuant to the *Katchen* decision " legal claims can be transformed into bankruptcy proceedings when they are part of the claims allowance process." *Id. at 468.*

62.    Lone Star's causes of action in its Adversary Proceeding present unique public concerns in the context of the Waggoner corporate debtors' bankruptcies and wholly invoke bankruptcy court jurisdiction to resolve.  The close relationship and integration of the debtors *and their debts*, their joint debts to both subject creditors (Lone Star and Rabo), the Intercreditor Agreement by the two debtors involving lien priority determinations as to two common creditors of those two debtors, the dramatic impact the bankruptcy court's lien determinations will make on the two debtors' estates, and the resulting impact on two creditors by the court's determination as to lien priorities and enforcement of those priorities on proceeds of cattle in which both subject debtors have or may have a legal or equitable interest, all point to the importance of this Court adjudicating these claims under its equitable jurisdiction without a jury.

### K.    Bankruptcy Court Can Conduct A Jury Trial

63.    If the Court determines that the right to a jury has not been already waived by Rabo, or if the Court determines some of the causes of action seek legal relief, this Court is authorized to

conduct a jury trial.  If the parties consent, the bankruptcy court may conduct the jury trial of non-core matters.  *28 U.S.C. § 157(e); Fed R. Bankr. P. 9015(b).*

WHEREFORE, PREMISES CONSIDERED, Lone Star objects to Rabo's demand for jury trial and moves the Court to strike Rabo's jury demand.  Lone Star seeks such other and further relief to which it may be entitled, at law, or in equity.

Dated this 25th day of March, 2019.

Respectfully submitted,

**LOVELL LOVELL ISERN & FARABOUGH, LLP**

John H. Lovell, SBN 12609300
john@lovell-law.net
Joe L. Lovell, SBN 12609100
joe@lovell-law.net
Barbara A. Bauernfeind, SBN 08190500
barbara@lovell-law.net
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

*Attorneys For Plaintiff Lone Star State Bank
of West Texas*

By:____*/s/ John H. Lovell*_____
        John H. Lovell

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case, including the following:

Michael Johnson
RAY QUINNEY & NEBEKER, P.C.
36 South State, Suite 1400
Salt Lake City, UT 84111
mjohnson@rqn.com
and
Thomas C. Riney
W. Heath Hendricks
RINEY & MAYFIELD, LLP
320 S. Polk Street, Suite 600
Amarillo, TX 79101
triney@rineymayfield.com
hhendricks@rineymayfield.com
  *Attorneys for Rabo Agrifinance, LLC*

Matt R. Tarbox
TARBOX LAW, P.C.
2301 Broadway
Lubbock, TX  79401
max@tarboxlaw.com
  *Attorney for Waggoner Cattle, LLC, Cliff Hanger Cattle, LLC,*
  *Circle W of Dimmitt, Inc., and Bugtussle Cattle, LLC*

R. Byrn Bass, Jr.
Compass Bank Building
4716 4th Street, Suite 100
Lubbock, TX  79416-4953
bbass@bbasslaw.com
  *Attorney for Michael Quint Waggoner*

Brad W. Odell
MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408
bodell@mhba.com
  *Attorneys for Lone Star State Bank of West Texas*

/s/ John H. Lovell
John H. Lovell