RINEY & MAYFIELD
Thomas C. Riney, SBN: 16935100
W. Heath Henricks, SBN: 240556451
320 South Polk Street, Suite 600
Amarillo, Texas 79101
Telephone: (806) 468-3200
Facsimile: (806) 376-4509
Email: triney@rineymayfield.com
Email: hhendricks@rineymayfield.com

        -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com

*Attorneys for Defendant Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>WAGGONER CATTLE, LLC, ET AL<br><br>    Debtors. | Chapter 11<br><br>CASE NO. 18-20126-11-rlj<br>Jointly Administered |
| LONE STAR BANK OF WEST TEXAS,<br><br>    *Plaintiff,*<br><br>v.<br><br><br>RABO AGRIFINANCE LLC, f/k/a RABO<br>AGRIFINANCE, INC.; WAGGONER CATTLE,<br>LLC; CLIFF HANGER CATTLE, LLC; and<br>CIRCLE W OF DIMMITT, INC.,<br><br>    *Defendants.* | **ADV. PROC. NO. 18-02007-rlj** |

## ANSWER TO THOSE PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT THAT ARE NOT THE SUBJECT OF RABO'S MOTION TO DISMISS

Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby answers and otherwise responds as follows to those portions of *Plaintiff's First Amended Complaint* (the "**FAC**"), filed on July 10, 2019 [Dkt. 105] by Plaintiff Lone Star State Bank of West Texas ("**Lone Star Bank**"), that are not the subject of Rabo's contemporaneously filed motion to dismiss. With respect to those portions of the FAC addressed in this answer, Rabo admits, denies and avers as follows:

## ANSWER

Answering the specifically numbered paragraphs of the Complaint, Rabo admits, denies and avers as follows:

1.      Rabo admits the allegations of paragraph 1.

2.      Answering paragraph 2, Rabo admits that 28 U.S.C. §§ 157(a) and (b) and 1334 address jurisdiction over adversary proceedings and provide the definition of core proceedings. Rabo also admits that this Court has "related to" jurisdiction over this adversary proceeding pursuant to prior rulings of the Court so finding. Rabo expressly denies that any of the claims that remain in this action are "core" claims and, instead, affirmatively states that at best any remaining claims are non-core, related to claims pursuant to which Rabo is entitled to a jury trial. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 2 and, therefore, denies the same.

3.      The Court's February 5, 2019 Memorandum Opinion [Doc. 35] speaks for itself.
That said, Rabo admits that the Court determined it had related to jurisdiction, and that the Court
also denied Rabo's request to abstain.

4.      Rabo admits the allegations of paragraph 4.

5.      Rabo admits the allegations of paragraph 5.

6.      Answering paragraph 6, Rabo denies that its principal place of business is in St.
Louis and, instead, affirmatively states that its principal place of business is in Chesterfield,
Missouri.  Rabo admits the remaining allegations of paragraph 6.

7.      Rabo denies that it conducted business directly with Lone Star Bank in Lubbock
and Potter Counties.  Rabo admits the remaining allegations of paragraph 7.

8–9.    Answering paragraphs 8 and 9, Rabo admits that the Complaint seeks the relief
described in these paragraphs, denies that Lone Star Bank is entitled to the relief requested, and
denies any remaining allegations of paragraphs 8 and 9.

10–13. Answering paragraphs 10 through 13, Rabo admits upon information and belief
that Lone Star Bank entered into various loan agreements with some or all of the debtors
identified in these paragraphs, denies any assertion or characterization of these written loan
documents that is not consistent with their written terms, asserts that Rabo is not a party to the
described loan documents, and denies all remaining allegations in these paragraphs.

14.     Answering paragraph 14, Rabo admits that the Waggoner Entities hired Moseley
& Riddle and denies any assertion or characterization of the written loan documents between
Lone Star Bank and the Waggoner Entities that is not consistent with their written terms.  Rabo
lacks information or knowledge sufficient to form a belief about the truth or falsity of the
remaining allegations of paragraph 14 and, therefore, denies the same.

15.    Answering paragraph 15, Rabo asserts that the written loan documents entered

into between the Waggoner Entities and Lone Star, and the Waggoner Entities and Rabo describe

and define the arrangements to loan money, and denies any assertion or characterization of the

written loan documents by Lone Star that is not consistent with these written loan documents.

Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the

remaining allegations of paragraph 15 and, therefore, denies the same.

16–22. Answering paragraphs 16 through 22, Rabo admits that Rabo and Lone Star

discussed an intercreditor agreement, admits that Rabo and Lone Star entered into an

Intercreditor Agreement, asserts that the Intercreditor Agreement, which speaks for itself,

describes the parties' agreement, and denies any allegation or characterization by Lone Star that

is not consistent with those written documents.  Rabo also admits that a true and correct copy of

the Intercreditor Agreement is attached as Exhibit "A" to the FAC.  Rabo also admits that it

entered into a loan agreement and an amended and restated loan agreement with Cliff Hanger

and other Waggoner entities, asserts that the amended and restated loan agreement and related

written loan documents describe the terms of financing provided by Rabo, and denies any

allegation or characterization by Lone Star that is not consistent with those written documents.

Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star

reasonably relied upon borrowing base reports that the Waggoner Entities would have supplied

to either Rabo or Lone Star Bank.  Moreover, Rabo lacks information or knowledge sufficient to

form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 16

through 22 and, therefore, denies the same.

23.    Rabo admits the allegations of paragraph 23.

4

24–29. Answering paragraphs 24 through 29, Rabo asserts that the documents and correspondences cited in these paragraphs speak for themselves. Rabo admits that there was a split financing arraignment between Lone Star Bank and Rabo that was governed by the Intercreditor Agreement, which describes the parties' agreement and which speaks for itself. Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement. Rabo admits the allegation in paragraph 24 that all parties, including Lone Star Bank, knew, understood and acknowledged that the transfer price of cattle sold by Waggoner Cattle to Cliff Hanger Cattle would be 75% of the Overland Auction Price for 300 pound steers, and Rabo affirmatively alleges that Cliff Hanger Cattle in fact over paid Waggoner Cattle by millions of dollars under the agreed-upon pricing. Rabo expressly denies that any loan or transfer of money from Cliff Hanger to Waggoner Cattle was to cause Waggoner Cattle to be paid in full for its calves under the Intercreditor Agreement. Rabo also expressly denies any agreement or requirement, on its part, to allow Cliff Hanger Cattle to make equity distributions to Waggoner Cattle, particularly without Rabo's knowledge, understanding and consent. Rabo further expressly denies that any loan or transfer of money from Cliff Hanger to Waggoner Cattle established a course of performance by and among Rabo, Cliff Hanger, Waggoner Cattle and Lone Star for how Waggoner Cattle was to be paid in full for the calves it transferred to Cliff Hanger. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports that the Waggoner Entities would have supplied to Rabo or Lone Star Bank. Moreover, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 24 through 29 and, therefore, denies the same.

30–31. Answering paragraphs 30 through 31, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the allegations set forth therein and, therefore, denies the same. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star reasonably relied upon borrowing base reports that the Waggoner Entities would have supplied to Rabo. Lone Star is a commercial bank that was using its own borrowing base certificates, and Rabo was never an agent or representative of Lone Star. Further, no document or agreement was ever entered into pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff Hanger Cattle and provided to Rabo.

32.      Answering paragraph 32, Rabo admits that Paul Strouhal periodically transmitted borrowing base reports, which Rabo received from the Waggoner Entities, to Bart Schilling as a courtesy. Lone Star is a commercial bank that was using its own borrowing base certificates, and Rabo was never an agent or representative of Lone Star. Further, no document or agreement was ever entered into pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff Hanger Cattle and provided to Rabo. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 32 and, therefore, denies the same. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports that the Waggoner Entities would have supplied to Rabo.

33–34. Answering paragraphs 33 through 34, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the allegations set forth therein and, therefore, denies the same. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports. Lone

Star is a commercial bank that was using its own borrowing base certificates, and Rabo was never an agent or representative of Lone Star. Further, no document or agreement was ever entered into pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff Hanger Cattle and provided to Rabo.

35.    Answering paragraph 35, Rabo denies that Paul Strouhal emailed Bart Schilling Cliff Hanger's July 2015 borrowing base on September 15, 2016.

36.    Answering paragraph 36, Rabo denies that Rabo loan officers were defrauding Bart Schilling and Lone Star with fraudulent cost of gain and out weight assumptions. Indeed, Rabo denies that it even made representations to Lone Star Bank about costs of gain and out weight assumptions. Rather, to the extent information was provided to Lone Star regarding those issues, it was provided by the Waggoner Entities. The borrowing base reports, for example, were reports that were prepared and signed by the Waggoner Entities not Rabo. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 36 and, therefore, denies the same. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports. Lone Star is a commercial bank that was using its own borrowing base certificates, and Rabo was never an agent or representative of Lone Star. Further, no document or agreement was ever entered into pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff Hanger Cattle and provided to Rabo.

37.    Answering paragraph 37, Rabo denies that Paul Strouhal deliberately omitted certain pages from the Cliff Hanger borrowing bases in order to fraudulently and deliberately overstate the value of the Cliff Hanger cattle by many millions of dollars. Rabo lacks

information or knowledge sufficient to form a belief about the truth or falsity of the remaining

allegations of paragraph 37 and, therefore, denies the same.  Rabo also affirmatively denies the

allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied

upon borrowing base reports.  As an initial matter, the borrowing base certificates were

statements of the Waggoner Entities, not Rabo.  Further, Lone Star is a commercial bank that

was using its own borrowing base certificates, and Rabo was never an agent or representative of

Lone Star.  Also, no document or agreement was ever entered into pursuant to which Rabo

agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff

Hanger Cattle and provided to Rabo.

38.     Answering paragraph 38, Rabo asserts that this paragraph contains allegations of

law rather than fact, to which no answer is required.  To the extent that an answer is required to

these allegations of law, Rabo denies the same.  To the extent these paragraphs contain any

factual allegations, Rabo denies the same.  Rabo lacks information or knowledge sufficient to

form a belief about the truth or falsity of the remaining allegations of paragraph 38 and,

therefore, denies the same.

39.     Rabo denies the allegations of paragraph 39.  As an initial matter, the borrowing

base certificates were statements of the Waggoner Entities, not Rabo.  Further, Lone Star is a

commercial bank that was using its own borrowing base certificates, and Rabo was never an

agent or representative of Lone Star.  Also, no document or agreement was ever entered into

pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were

generated by Cliff Hanger Cattle and provided to Rabo.

40.     Answering paragraph 40, Rabo admits that it inspected Quint Waggoner's cattle

operations before funding a loan and asserts that the pre-funding credit memorandum speaks for

itself. Rabo asserts that the other documents referenced in paragraph 40 speak for themselves. Rabo expressly denies that by using the word "advance," Paul Strouhal disclosed his understanding that the transfer price to be paid to Waggoner Cattle at delivery was only a partial payment and denies any other allegation, to the extent they are being made, that Waggoner Cattle was not paid in full.

41.     Answering paragraph 41, Rabo asserts that the documents referenced in paragraph 41 speak for themselves. Rabo expressly denies that Rabo, Quint Waggoner, and the Waggoner Entities agreed and anticipated that the 25% difference between the Waggoner calves' transfer price and their market value would be paid to Waggoner Cattle from the proceeds of Cliff Hanger sales of its finished cattle. Rabo expressly denies that any loan or transfer of money from Cliff Hanger to Waggoner Cattle was to cause Waggoner Cattle to be paid in full for its calves under the Intercreditor Agreement. Rabo expressly denies that any loan or transfer of money from Cliff Hanger to Waggoner Cattle established a course of performance by and among Rabo, Cliff Hanger, Waggoner Cattle and Lone Star for how Waggoner Cattle was to be paid in full for the calves it transferred to Cliff Hanger. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 41 and, therefore, denies the same.

42.     Answering paragraph 42, Rabo asserts that the pre-funding collateral inspection report speaks for itself. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 42 and, therefore, denies the same.

43.     Answering paragraph 43, Rabo asserts that the cited documents, all of which speak for themselves, do not support this alleged fact, and on that basis denies the same. Moreover, such is irrelevant and immaterial.

44.     Rabo denies the allegations of paragraph 44.

45.     Rabo admits the allegations of paragraph 45.

46.     Rabo denies the allegations of paragraph 46.

47.     Answering paragraph 47, Rabo asserts that the January 12, 2015 credit report speaks for itself.  All allegations inconsistent therewith are denied.

48.     Answering paragraph 48, Rabo asserts that the February 9, 2015 credit report speaks for itself.  All allegations inconsistent therewith are denied.

49.     Answering paragraph 49, Rabo asserts that the documents cited in this paragraph speak for themselves.  All allegations inconsistent therewith are denied.

50.     Answering paragraph 50, Rabo asserts that the cited documents, all of which speak for themselves, do not support this alleged fact, and on that basis denies the same. Moreover, such is irrelevant and immaterial.

51.     Answering paragraph 51, Rabo asserts that the April 21, 2015 credit report and DeNise Merritt's spreadsheet speak for themselves.  Rabo expressly denies that any loans or transfers of money from Cliff Hanger to Waggoner Cattle were payments of cattle or were to cause Waggoner Cattle to be paid in full for its calves under the Intercreditor Agreement.  Rabo does admit that it approved a waiver.

52–54. Answering paragraphs 52 through 54, Rabo admits that it had been working on a new loan structure with Quint Waggoner to eliminate the split financing arrangement.  Rabo asserts that the April 21, 2015 credit report speaks for itself.  Also, these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same, to the extent inconsistent with the documents cited.  Rabo denies any allegation or characterization by Lone Star, including

allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs. Moreover, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 52 through 54 and, therefore, denies the same.

55–56. Answering paragraphs 55 through 56, Rabo admits that Michelle Stockett conducted an inspection of Cliff Hanger on or around September 28, 2015 and that the August 2015 borrowing base was late and only submitted to Michelle Stockett on the morning of the inspection. Rabo asserts that any borrowing bases given to Rabo or its employees by the Waggoner Entities speak for themselves. Rabo also asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that are not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 55 through 56 and, therefore, denies the same.

57.    Answering paragraph 57, Rabo asserts that the October 20, 2015 credit report speaks for itself. All allegations inconsistent therewith are denied.

58.    Answering paragraph 58, Rabo asserts that the cited email speaks for itself, but expressly denies that this email makes any mention of syndication. Rabo denies the remaining allegations of paragraph 58 that are inconsistent with the email in question.

59.     Answering paragraph 59, Rabo asserts that the emails cited in this paragraph speak for themselves.  Rabo denies the remaining allegations of paragraph 59 and all allegations that are inconsistent with the cited emails.

60–73. Answering paragraphs 60 through 73, Rabo asserts that the November 12, 2015 credit report and all others document cited in these paragraphs, including but not limited to all email correspondence and the December 7–9, 2015 inspection report, speak for themselves. These paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same to the extent they are inconsistent with the referenced documents.  Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.  Moreover, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 60 through 73 and, therefore, denies the same.

74.     Answering paragraph 74, Rabo asserts that the cited email correspondence speaks for itself, and all allegations inconsistent therewith are denied.  The last part of paragraph 74 contains neither an assertion of law or fact and does not require a response.

75.     Answering paragraph 75, Rabo asserts that the cited email correspondence speaks for itself and also asserts that the cited email does not support these alleged facts, and on that basis denies the same.  Moreover, these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any remaining factual allegation contained in these paragraphs.

76.     Answering paragraph 76, Rabo asserts that the cited September 19, 2016 correspondence speaks for itself, and all allegations inconsistent therewith are denied.

77.     Answering paragraph 77, Rabo asserts that the October 24–27, 2016 Collateral Review Report speaks for itself, and all allegations inconsistent therewith are denied.  Rabo expressly denies that the two emails cited in footnote 9 support the allegation that Rabo loan officers wished to have Waggoner Cattle continue to transfer calves to Cliff Hanger for no payment, or for less than their fair market value, in order for Rabo to assert a lien on Lone Star's collateral, and Rabo expressly denies such allegation.  Moreover, this paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.  Moreover, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraph 77 and, therefore, denies the same.

78.     Answering paragraph 78, Rabo denies that DeNise Merrit sent Paul Strouhal a consolidated borrowing base report on November 7, 2016.  Rather, she sent it on November 8, 2016 in an email where she admitted that the borrowing base was only a draft and that "there may be issues that need to be corrected."  This paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any remaining factual allegation contained in these paragraphs.  Moreover, Rabo lacks information or knowledge sufficient to form a belief about

the truth or falsity of the remaining allegations set forth in paragraph 78 and, therefore, denies the same.

79.     Answering paragraph 79, this paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any remaining factual allegation contained in these paragraphs.

80.     Answering paragraph 80, Rabo asserts that the cited correspondence speaks for itself, and all allegations inconsistent therewith are denied.  Rabo expressly denies the allegation that it had long known that the Waggoner Entities were out of compliance with loan covenants.

81.     Answering paragraph 81, Rabo asserts that the cited email speaks for itself, and all allegations inconsistent therewith are denied.

82.     Answering paragraph 82, Rabo asserts that this paragraph contains allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any remaining factual allegation contained in these paragraphs.

83–85. Answering paragraphs 83 through 85, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required.  To the extent that an answer is required to these allegations of law, Rabo denies the same.  Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs.  Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports.  Moreover, Rabo lacks information or knowledge sufficient to form a belief about the truth or

falsity of the remaining allegations set forth in paragraphs 83 through 85 and, therefore, denies the same.

86–87. Answering paragraphs 86 through 87, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. Rabo denies any allegation or characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in these paragraphs. Rabo also affirmatively denies the allegation, to the extent it is being made, that Lone Star and/or Bart Schilling reasonably relied upon borrowing base reports. As an initial matter, the borrowing base certificates were statements of the Waggoner Entities, not Rabo. Further, Lone Star is a commercial bank that was using its own borrowing base certificates, and Rabo was never an agent or representative of Lone Star. Also, no document or agreement was ever entered into pursuant to which Rabo agreed that Lone Star would rely upon borrowing base reports that were generated by Cliff Hanger Cattle and provided to Rabo. Finally, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraphs 86 through 87 and, therefore, denies the same.

88.    Answering paragraph 88, Rabo denies any assertion or characterization of any Forbearance Agreement between Waggoner Cattle and Lone Star that is not consistent with the written terms of any such agreement, and asserts that Rabo is not a party to the described agreement. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations set forth in paragraph 88 and, therefore, denies the same.

89–90. Answering paragraphs 89 and 90, Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the allegations set forth therein and, therefore, denies the same.

91–95. Answering paragraphs 91 through 95, Rabo asserts that the Intercreditor Agreement and the Credit Agreement describe Rabo's agreement and denies any allegation or characterization by Lone Star that is not consistent with the written loan documents. Rabo further asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. Rabo denies any remaining allegations of paragraphs 91 through 95.

96–101.      Answering paragraphs 96 through 101, Rabo denies that it instructed the Debtors to transfer cattle without paying full value or price, asserts that the Intercreditor Agreement describes the parties' agreement, and denies any allegation or characterization by Lone Star that is not consistent with the Intercreditor Agreement. These paragraphs also contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. Rabo lacks information or knowledge sufficient to form a belief about the truth or falsity of the remaining allegations of paragraphs 96 through 101 and, therefore, denies the same.

102.     Answering paragraph 102, Rabo asserts that this paragraph contains allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent this paragraph contains any factual allegation, Rabo denies the same.

## FIRST CAUSE OF ACTION

103–119.    Rabo has moved to dismiss this cause of action, seeking declaratory

judgment, and, as such, no response is required at this time.

## SECOND CAUSE OF ACTION

120.    Answering paragraph 120, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

121.    Answering paragraph 121, Rabo admits that Rabo and Lone Star entered into the

Intercreditor Agreement, asserts that the Intercreditor Agreement speaks for itself and describes

the parties' agreement, and denies any allegation or characterization by Lone Star that is not

consistent with the Intercreditor Agreement.

122–124.    Answering paragraphs 122 through 124, Rabo asserts that the Intercreditor

Agreement speaks for itself and describes the parties' agreement, and denies any allegation or

characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not

consistent with the Intercreditor Agreement, and denies any remaining factual allegation

contained in these paragraphs.

125.    Rabo denies the allegations of paragraph 125, and affirmatively states that all

parties, including Lone Star Bank, knew, understood and acknowledged that the transfer price of

cattle sold by Waggoner Cattle to Cliff Hanger Cattle would be 75% of the Overland Auction

Price for 300 pound steers, and Cliff Hanger Cattle in fact over paid Waggoner Cattle by

millions of dollars under the agreed-upon pricing.

126.    Answering paragraph 126, Rabo asserts that the Intercreditor Agreement

describes the parties' agreement and speaks for itself, and denies any allegation or

characterization by Lone Star, including allegations regarding Rabo's knowledge, that is not

consistent with the Intercreditor Agreement, and denies any remaining factual allegation contained in this paragraph. Rabo expressly denies that there was any balance owed by Cliff Hanger to Waggoner Cattle for calves delivered after January 31, 2016, and affirmatively alleges that the "balance owed to Waggoner Cattle by Cliff Hanger" as set forth in the FAC is a balance based upon calculations created by Lone Star's expert and not a balance that was maintained on the Waggoner Entities' books and records. For a number of reasons, Rabo disagrees with the conclusions of Lone Star's expert.

127.    Rabo denies the allegations of paragraph 127 for, among other reasons, the reasons outlined in Rabo's Counterclaim.

128.    Rabo denies the allegations of paragraph 128.

129–130.      Answering paragraphs 129 through 130, Rabo asserts that these paragraphs contain allegations of law rather than fact, to which no answer is required. To the extent that an answer is required to these allegations of law, Rabo denies the same. To the extent these paragraphs contain any factual allegations, Rabo denies the same.

131.    Answering paragraph 131, Rabo admits that the Complaint seeks the relief described in this paragraph, denies that Lone Star Bank is entitled to the relief requested, and denies any remaining allegations of paragraph 131.

## THIRD CAUSE OF ACTION

132–141.      Rabo has moved to dismiss this cause of action, alleging conversion, and, as such, no response is required at this time.

## FOURTH CAUSE OF ACTION

142–156.      Rabo has moved to dismiss this cause of action, alleging fraud, and, as such, no response is required at this time.

## FIFTH CAUSE OF ACTION

157–161.     Rabo has moved to dismiss this cause of action, alleging money had and

received, and, as such, no response is required at this time.

## SIXTH CAUSE OF ACTION

162–165.     Rabo has moved to dismiss this cause of action, alleging civil

conspiracy/conspiracy to defraud, and, as such, no response is required at this time.

## SEVENTH CAUSE OF ACTION

166–170.     Rabo has moved to dismiss this cause of action, alleging wrongful offset,

and, as such, no response is required at this time.

## EIGHTH CAUSE OF ACTION

171–174.     Rabo has moved to dismiss this cause of action, alleging equitable

subordination, and, as such, no response is required at this time.  Further, Rabo asserts that this

claim is barred by res judicata as a result of confirmation of the Waggoner Entities' Chapter 11

bankruptcy plan.

## NINTH CAUSE OF ACTION

175–177.     Rabo has moved to dismiss this cause of action, requesting attorneys' fees

and costs, and, as such, no response is required at this time.

178–179.     Answering paragraphs 178 through 179, Rabo asserts that these

paragraphs contain allegations of law rather than fact, to which no answer is required.  To the

extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent

these paragraphs contain any factual allegations, Rabo lacks information or knowledge sufficient

to form a belief about the truth or falsity of these allegations and, therefore, denies the same.

Finally, Rabo affirmatively states that Lone Star's alleged "damages" are clearly in error because

they do not account for the $1,000,000 that Lone Star received in settlement of its claims against

Mosely & Riddle, and the $2,800,000 that Lone Star will receive by August 30, 2019 under the

Waggoner Entities' confirmed Chapter 11 plan.  Rabo is entitled to a set off or credit against any

recovery by Lone Star from any other person, including but not limited to the sum of all

settlements received by Lone Star, pursuant to Section 33.012 of the Texas Civil Practice &

Remedies Code.

180.    Answering paragraph 180, Rabo incorporates and reasserts its answers, denials

and averments to the preceding paragraphs of the Complaint, as if fully set forth.

181–183.      Answering paragraphs 181 through 183, Rabo asserts that these

paragraphs contain allegations of law rather than fact, to which no answer is required.  To the

extent that an answer is required to these allegations of law, Rabo denies the same.  To the extent

these paragraphs contain any factual allegations, Rabo denies the same.

184–185.      Rabo denies the allegations of paragraphs 184 through 185.

186.    Answering paragraph 186, Rabo asserts that this paragraph contains allegations of

law rather than fact, to which no answer is required.  To the extent that an answer is required to

these allegations of law, Rabo denies the same.  To the extent this paragraph contains any factual

allegations, Rabo denies the same.

187.    Rabo denies each and every allegation of the Complaint not expressly admitted

herein.

## RESPONSE TO REQUEST FOR RELIEF

Rabo denies that Lone Star Bank is entitled to any of the relief requested in its request for

relief, or to any other relief, in any form, whatsoever.

## FIRST AFFIRMATIVE DEFENSE

The FAC, and all claims set forth therein that have not already been dismissed by the Court, fails to state a claim against Rabo upon which relief may be granted. Additionally, all claims that are the subject of Rabo's separately filed motion to dismiss fail to state a claim for the reasons set forth in Rabo's motion to dismiss.

## SECOND AFFIRMATIVE DEFENSE

Some of Lone Star Bank's claims in this action may be barred, or alternatively the damages that Lone Star may recover on such claims may be reduced, by the applicable statutes of limitation related to such claims, including but not limited to Tex. Civ. Prac. & Rem. Code §§ 16.003(a), 16.004(a)(3), 16.004(4), and/or 16.051, as applicable.

## THIRD AFFIRMATIVE DEFENSE

Lone Star Bank's equitable claims against Rabo are barred by Plaintiff's unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims seeking relief that differs from the terms of the Intercreditor Agreement are barred by the statute of frauds, including without limitation, Tex. Bus. & Comm. Code Sec. 26.01(b)(6).

## FIFTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims against Rabo are barred, in whole or in part, by the doctrine of laches, waiver, and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred, in whole or in part, in that the relief sought in Lone Star Bank's Complaint would constitute an unjust enrichment of Plaintiff to the detriment of Rabo.

## SEVENTH AFFIRMATIVE DEFENSE

All or part of Lone Star Bank's claims for relief are or may be barred by the doctrine of *in pari delicto* because of Plaintiff's own material breaches and because Lone Star Bank was more at fault concerning the allegations of fault or culpability between the parties.

## EIGHTH AFFIRMATIVE DEFENSE

Lone Star Bank's tort claims are barred by the economic loss rule and the fact that a written contract governs the rights of Lone Star Bank and Rabo. Therefore, Lone Star Bank's damages, if any, should sound in contract and all tort claims should be dismissed.

## NINTH AFFIRMATIVE DEFENSE

Pursuant to the US and Texas Constitutions and applicable law, Rabo is entitled to a jury trial in this action on Lone Star Bank's state law claims, and with the exception of Plaintiff's moot claim for equitable subordination, which the Bankruptcy Court has already dismissed and should once again dismiss for the reasons set forth in Rabo's Motion to Dismiss, Plaintiff's state law claims are the only remaining claims in this case. Rabo objects to a bench trial or to a jury trial in Bankruptcy Court.

## TENTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred , in whole or in part, by reason of Plaintiff's own conduct, including but not limited to, waiver, modification, selective enforcement of its agreements, unclean hands, laches, release, accord, satisfaction, Plaintiff's failure to mitigate its alleged damages, ratification, consent, and acquiescence.

## ELEVENTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred for the reasons set forth in Rabo's Counterclaim, as well as in Rabo's Motion to Dismiss and Memorandum in Support.

## TWELFTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred and Rabo is entitled to attorneys' fees and costs as well as sanctions if the allegations of the Waggoner entities' Combined Disclosure Statement [Dkt. 191, filed Nov. 15, 2018] are correct. Specifically, that document states that Lone Star attempted to bribe the Debtors with $4 million to induce them to file for bankruptcy so that Lone Star could sue Rabo. Further, that document states that Quint Waggoner "hired two business students from Texas Tech and they reviewed and compiled the transactions between the two companies for the past three years. The data was compiled into binders and presented to bank's personnel and its attorneys at a meeting in January. The data showed that Rabo Bank had in fact over paid LSSB between 3 and 4 Million Dollars for the value of the cattle." Rabo's expert opines that Lone Star Bank actually owes Rabo much more than that—$9,685,792.07 to be exact.

## THIRTEENTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred as a result of payment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Lone Star Bank's claims are barred as a result of a failure of a condition precedent, condition concurrent, or condition subsequent.

## FIFTEENTH AFFIRMATIVE DEFENSE

Some or all of Lone Star Bank's claims, and in particular its equitable subordination claim, is barred by res judicata given that the Waggoner Entities' Chapter 11 plan, which did not provide for subordination, has been confirmed.

## SIXTEENTH AFFIRMATIVE DEFENSE

Even if Lone Star Bank's legal theories in this case are correct, which is expressly denied, its damage claims are substantially overstated. Among other things, Lone Star Bank's damages claims do not account for the $1,000,000 settlement that Lone Star Bank received from Mosely & Riddle in settlement of its claims against that firm, and they also do not account for the $2.8 million that Lone Star Bank will receive by August 30, 2019 under the terms of the Waggoner Entities' confirmed Chapter 11 plan.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims against Rabo are barred by the doctrines of waiver and release. As part of their Chapter 11 Plan of Reorganization, the Waggoner Entities released certain claims against Rabo which Lone Star seeks to pursue.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The alleged damages claimed by Lone Star, if any, were proximately caused or solely caused by a person or persons over whom Rabo had no control or any duty to control at any relevant time, including but not limited to Lone Star, the Waggoner Entities, and Moseley & Riddle and/or any employee or agent of the above, as well as any responsible third party identified by any party. In addition, the alleged damages claimed by Lone Star, if any, were proximately caused or solely caused by instrumentalities, conditions, acts, omissions, or events unrelated to the conduct of Rabo or not subject to the control of Rabo.

## NINETEENTH AFFIRMATIVE DEFENSE

Rabo denies all liability in this case. However, in the unlikely event the Court or jury should find any responsibility on the part of Rabo, Rabo invokes the doctrine of proportionate responsibility as contained in Chapter 33 of the Texas Civil Practice & Remedies Code. Lone Star's

claims are barred, in whole or in part, due to Lone Star's own conduct under Sections 33.001 –

33.013 of the Texas Civil Practice & Remedies Code.  Further, in the unlikely event the Court or

jury should find Rabo responsible along with any other party, settling person, or responsible third

party, any recovery against Rabo must be reduced in accordance with the provisions of Sections

33.011 – 33.017 of the Texas Civil Practice & Remedies Code.

### TWENTIETH AFFIRMATIVE DEFENSE

Lone Star is not entitled to recover exemplary damages because it has not alleged facts

which allow recovery of exemplary damages under Chapter 41 of the Texas Civil Practice and

Remedies Code.  Further, its right to recover exemplary damages is limited in accordance with

the provisions of Chapter 41 of the Texas Civil Practice and Remedies Code.

### TWENTY FIRST AFFIRMATIVE DEFENSE

Any recovery of punitive damages must be consistent with federal and state constitutional

restrictions on the imposition of punitive damages.  Rabo alleges that under the facts and

circumstances of this case, an award of exemplary damages would violate substantive and

procedural due process in violation of the Fifth and Fourteenth Amendments of the United States

Constitution in the following respects:

a.      It is unconstitutional to allow a citizen to be punished upon the basis of a standard as

vague and ill-defined as the common law concepts upon which exemplary damages can be

awarded.

b.      It is unconstitutional to allow a citizen to be punished for any conduct when the

citizen is unable to determine, prior to the hearing, what the standards used in assessing that

punishment will be and where the jury has almost total and unbridled discretion in

determining the amount of that punishment.  The standards for assessing exemplary

damages in this case are unconstitutionally vague, and allow the jury to assess exemplary damages based upon criteria wholly unrelated to Rabo's conduct and completely beyond the control of Rabo.

c.      Because the award of exemplary damages has quasi-criminal attributes, both as to rationale and effect, it is unconstitutional to award exemplary damages based solely upon a mere preponderance of the evidence which may be provided by the slightest circumstantial evidence, coupled with speculation and innuendo.

d.      It is unconstitutional for a state to allow a private citizen with a profit motive to seek punishment of another citizen without the full protections of the Texas and United States Constitutions, including privilege against self-incrimination, and the right not to be placed in double jeopardy.  Rabo alleges that the fiction that punishment in civil suits does not invoke the constitutional protections, whereas the same punishment in a criminal suit does, should be abandoned.  In either event, the state is forcing Rabo to forfeit valuable property interests, and it matters not to Rabo whether it loses its property to the state or to a private litigant.

e.      It is unconstitutional to impose grossly excessive or arbitrary punishments on a tortfeasor.

In the alternative, an award of exemplary damages, as sought by Lone Star under the facts and circumstances of this case, would violate the excessive fines, cruel and unusual punishment, and due process clauses of the Texas Constitution.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Rabo reserves the right to assert additional defenses, or to delete affirmative defenses already plead, to the extent that such defenses become known as a result of discovery or otherwise.

WHEREFORE, having fully responded to the First Amended Complaint, Rabo prays for judgment in its favor and against the Plaintiff, as follows:

A.      That Plaintiff take nothing on its Complaint as it relates to Rabo, and that the Complaint be dismissed with prejudice and upon the merits as it relates to Rabo.

B.      That the Court enter judgment against Plaintiff and in favor of Rabo, finding no cause of action.

C.      That the Court award Rabo its reasonable attorneys' fees and costs incurred in this action, to the extent they are allowed by contract or by law.

D.      That the Court award Rabo such other and further relief as the Court deems just and proper.

DATED:  August 8, 2019.

RINEY & MAYFIELD
Thomas C. Riney, SBN: 16935100
W. Heath Henricks, SBN: 240556451
320 South Polk Street, Suite 600
Amarillo, Texas 79101
Telephone:  (806) 468-3200
Facsimile:  (806) 376-4509
Email: triney@rineymayfield.com
Email: hhendricks@rineymayfield.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2019, the foregoing document was filed with the Clerk

of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic

filing users in this case, including the following:

- **William Heath Hendricks**   hhendricks@rineymayfield.com
- **Michael R. Johnson**   mjohnson@rqn.com, dburton@rqn.com;docket@rqn.com
- **John H. Lovell**   john@lovell-law.net, paula@lovell-law.net;melissa@lovell-law.net;kaye@lovell-law.net;courtney@lovell-law.net;dana@lovell-law.net
- **Matthew S Merriott**   matthew@lovell-law.net, melissa@lovell-law.net;paula@lovell-law.net
- **Brad W. Odell**   bodell@mhba.com, memert@mhba.com;mreynolds@mhba.com
- **Thomas C. Riney**   triney@rineymayfield.com, hhendricks@rineymayfield.com;rduke@rineymayfield.com;jschulte@rineymayfield.com;colguin@rineymayfield.com;jcherne@rineymayfield.com
- **Max Ralph Tarbox**   jessica@tarboxlaw.com, tami@tarboxlaw.com;bkecf_tarbox@bkexpress.info; rmr76455@notify.bestcase.com
- **Robert B. Wagstaff**   rwagstaff@mcmahonlawtx.com, wwatson@mcmahonlawtx.com;lvann@mcmahonlawtx.com;alivezey@mcmahonlawtx.com

*/s/ Michael R. Johnson*
Michael R. Johnson

1500099