UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 24055651
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

    -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| IN RE:<br><br>WAGGONER CATTLE, LLC, ET AL<br><br>    Debtors. | Chapter 11<br><br>CASE NO. 18-20126-RLJ-11<br>Jointly Administered |
|---|---|
| LONE STAR BANK OF WEST TEXAS,<br><br>    *Plaintiff,*<br><br>v.<br><br><br>RABO AGRIFINANCE, LLC, f/k/a RABO AGRIFINANCE, INC.,<br><br>    *Defendant*. | **ADV. PROC. NO. 18-02007** |

1

## RABO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7007-1, 7007-2, and 7056-1, Defendant and Counterclaimant Rabo AgriFinance LLC ("**Rabo**"), through counsel, respectfully moves for summary judgment in its favor, and against Plaintiff and Counterdefendant Lone Star State Bank of West Texas ("**Lone Star**"), on various claims, causes of action and issues raised in Lone Star's Third Amended Complaint, and in Rabo's Amended Counterclaim.

Specifically, Rabo moves for summary judgment as follows:

1. Finding, as a matter of law and undisputed fact, that Cliff Hanger paid Waggoner Cattle "in full" for all Holsteins that Waggoner Cattle ever sold, even if "payment in full" under the Intercreditor Agreement ("**ICA**") meant fair market value and not the Transfer Price and, as such, that all breach of contract, conversion and equitable claims asserted by Lone Star against Rabo concerning Holsteins fail as a matter of law because Rabo had the senior lien on all Holsteins and proceeds thereof under the terms of the ICA;

2. Finding, as a matter of law, that all breach of contract, conversion and equitable claims asserted by Lone Star against Rabo with respect to the subset of Holsteins that Lone Star calls "Tucker and Tyler Cattle" also fail as a matter of law because:

    a. Even assuming that the Tucker & Tyler Cattle were sold to Tucker & Tyler Waggoner and were not owned by Cliff Hanger such that the ICA does not apply, the cattle were sold free and clear of Lone Star's liens because (a) Waggoner Cattle was paid in full for the cattle, and (b) the proceeds of the Tucker & Tyler Cattle were deposited into bank accounts at Lone Star and were "immediately available," and Lone Star therefore consented to the sale of the cattle free and clear of its liens; or

2

b.      During the applicable limitations period (June of 2016 forward), all Tucker & Tyler Cattle were indisputably assets that belonged to and were owned by Cliff Hanger, irrespective of whether Tucker & Tyler Waggoner previously owned them.  As assets of Cliff Hanger, Rabo had the senior lien of Tucker & Tyler Cattle under the ICA if (a) the cattle were paid for in full, and (b) the cattle went to a feedyard.   The undisputed facts show that Waggoner Cattle was paid in full for these cattle, and that the cattle went to a feedyard.  Thus, under the ICA, Rabo had the senior lien, and Lone Star has no breach of contract, conversion or equitable claims as a matter of law.

3.      As an alternative finding to points 2(a) and (b) above, if Cliff Hanger transferred the Tucker & Tyler Cattle to Tucker & Tyler Waggoner in non-ordinary course transactions which violated the terms of the Lone Star loan documents, the conversion of the cattle occurred at that point and not a year or more later when the cattle were sold after having been in a feedyard for a year or more.  Lone Star has provided no evidence of the fair market value of the cattle at the time and place of conversion (e.g., when they were transferred without authorization to Tucker & Tyler Waggoner) and, as such, Lone Star's claims fail as a matter of law.  Alternatively, at a minimum, Lone Star's conversion damages are limited to the fair market value of the Tucker & Tyler Cattle at the time of their conversion, and not the amount that was ultimately received for the cattle when they were sold a year or more later.

4.      Finding, as a matter of law and undisputed fact given the Court's construction of the ICA in its Report & Recommendation, that Pasture Cattle and their proceeds are Rabo's first-lien collateral and not Lone Star's first lien collateral and, therefore, that all breach of contract,

conversion and equitable claims asserted by Lone Star related to Pasture Cattle fail as a matter of law. Pasture Cattle are Rabo's collateral, not Lone Star's collateral, because:

    a.    Pasture Cattle are personal property of Cliff Hanger, and the ICA applies;

    b.    Lien priority is governed by the terms of the ICA, and Article 9 lien priority rules have no relevance or application to Pasture Cattle;

    c.    Any Collateral covered by the ICA, including Pasture Cattle, must be either "Waggoner Collateral" or "Cliff Hanger Collateral." There is no third option;

    d.    Under the ICA, Lone Star has the senior lien on "Waggoner Collateral," and Rabo has the senior lien on "Cliff Hanger Collateral";

    e.    Pasture Cattle are not Waggoner Collateral because neither the locational test nor the relational test for Waggoner Collateral is satisfied (the cattle were not located at the calf ranch, and were never part of Waggoner Cattle's business operations);

    f.    Pasture Cattle are Cliff Hanger Collateral because both the locational test and the relational test for Cliff Hanger Collateral is satisfied (e.g., a pasture is a feed yard acceptable to Rabo and Pasture Cattle were part of Cliff Hanger's beef cattle operation); and

    g.    Because Pasture Cattle must be either Waggoner Collateral or Cliff Hanger Collateral under the ICA, and because Pasture Cattle clearly fits more closely into the Cliff Hanger Collateral bucket than the Waggoner Collateral bucket, Pasture Cattle are Cliff Hanger Collateral even if a pasture is not a feed yard acceptable to Rabo.

    5.    Finding, as a matter of law, that Lone Star's conversion claims related to cash proceeds that were first deposited into Cliff Hanger's bank account at Rabobank, N.A. before

4

allegedly being swept out by Rabo are barred by Article 9.332(a) of the Uniform Commercial Code.

6. Finding, as a matter of law and given the Court's existing rulings regarding Beef Cattle and proceeds, that Lone Star's request to recover the amount of its entire unpaid debt is legally insupportable, and that Lone Star's conversion damages will now be limited to fair market value of any collateral or proceeds that Lone Star can ultimately prove were converted by Rabo.

7. Finding, as a matter of law and undisputed fact, that Lone Star's remaining fraud claims related to the Cliff Hanger Borrowing Base Reports (the "**Cliff Hanger BBRs**") fail and that Rabo is entitled to summary judgment on those claims because (a) the alleged misrepresentations relate to future estimates and predictions of the cost-of-gain for cattle and are not statements of presently existing material facts, (b) Lone Star's fraud claim alleges that Lone Star was defrauded immediately after Rabo made its loan in 2014, and yet Rabo did not even send a Cliff Hanger BBR until December of 2015, more than a year later, (c) the Cliff Hanger BBRs that Lone Star did receive showed a consistently declining business operation even if the problems were worse than the BBRs reported; and (d) Lone Star's alleged fraud damages are entirely speculative and conjectural.

8. Finding, as a matter of law, that Lone Star's conspiracy claim fails because there is no evidence that Rabo conspired with anyone and also because the predicate tort for that claim—Rabo's alleged fraud concerning the Cliff Hanger BBRs—is legally deficient.

9. Finding, as a matter of law, that Lone Star's money had and received claim fails because such a claim is conceptually an unjust enrichment claim, and it was not unjust or inequitable for Rabo to take collateral proceeds that it has the senior lien upon. Further, the claim

5

is duplicative and redundant to Lone Star's conversion claims. Additionally, a money had and received claim is an equitable claim that looks to whether the defendant holds money that belongs to the plaintiff. Here, Rabo does not "hold any money" that might belong to Lone Star. While Lone Star claims that Rabo received money that belonged to it, even if true (and it is not true), that money is no longer in Rabo's possession. Finally, a money had and received claim fails as a matter of law when a written contract covers the subject matter of the parties' dispute. Here, the ICA covers the subject matter of the parties' dispute, so this claim fails.

10. Finding, as a matter of law, that the equitable subordination claim contained in Lone Star's Third Amended Complaint was either previously dismissed, or is barred by *res judicata* or is otherwise legally insupportable because there are no remaining cattle or proceeds to which Rabo's liens could be subordinated.

11. Finding, as a matter of law, that Lone Star's estoppel claim fails because (a) no cattle or proceeds exist on which Rabo can assert a lien ahead of Lone Star, (b) the alleged fraud and wrongdoing that is specifically described to support this cause of action was committed by Quint Waggoner and his agents and Rabo was merely the alleged "beneficiary of this fraud" not a participant in it, and (c) the estoppel claim is duplicative of Lone Star's legal claims for breach of contract and conversion that it has already elected to pursue against Rabo.

## SUMMARY/RELIEF REQUESTED

The law, undisputed facts and grounds for this motion are set forth in the memorandum in support that Rabo has filed contemporaneously herewith. To the extent applicable, Rabo's memorandum also addresses the various legal elements of the claims and counterclaims that are the subject of Rabo's motion.

Based on this motion and the accompanying memorandum in support, Rabo respectfully requests the entry of an order granting it summary judgment as requested herein. Alternatively, Rabo asks the Court to issue a second Report and Recommendation recommending that summary judgment be granted in favor of Rabo, and against Lone Star, as requested herein.

DATED this 21st day of September, 2022.

>UNDERWOOD LAW FIRM, P.C.
>Thomas C. Riney, SBN: 16935100
>W. Heath Hendricks, SBN: 24055651
>500 South Taylor, Suite 1200, LB 233
>Amarillo, Texas 79101
>Telephone: (806) 376-5613
>Facsimile: (806) 379-0316
>Email: tom.riney@uwlaw.com
>Email: heath.hendricks@uwlaw.com
>
>   --and--
>
>RAY QUINNEY & NEBEKER P.C.
>Michael R. Johnson *(Pro Hac Vice)*
>36 South State Street, Suite 1400
>Salt Lake City, UT 84111
>Telephone:  (801) 532-1500
>Facsimile:  (801) 532-7543
>Email:  mjohnson@rqn.com
>
>
>*/s/ Michael R. Johnson*
>Michael R. Johnson
>*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2022, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to the following electronic filing users in this case:

>John H. Lovell, SBN 12609300
>john@lovell-law.net
>Matthew S. Merriott, SBN 24100846
>matthew@lovell-law.net
>LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
>112 West 8th Avenue, Suite 1000
>Eagle Centre Building
>Amarillo, Texas 79101
>*COUNSEL FOR LONE STAR STATE BANK OF WEST TEXAS*

>>*/s/ Michael R. Johnson*
>>Michael R. Johnson