LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
John H. Lovell, SBN 12609300
Joe L. Lovell, SBN 12609100
Matthew S. Merriott, SBN 24100846
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone:  806/373-1515
Facsimile:   806/379-7176
*Attorneys for Lone Star State Bank of West Texas*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: § <br> § <br> WAGGONER CATTLE, LLC, ET AL, § <br> § <br> § <br> § <br> *Debtors.* § | | Chapter 11 <br><br> CASE NO. 18-20126-rlj-11 <br> Joint Administration |
| LONE STAR STATE BANK OF § <br> WEST TEXAS, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> RABO AGRIFINANCE, LLC, § <br> f/k/a RABO AGRIFANCE, INC., § <br> § <br> *Defendant.* § <br> § | | ADVERSARY PROCEEDING NO. <br> 18-02007-rlj-11 |

**PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Plaintiff, Lone Star State Bank of West Texas ("Lone Star"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Rules of Bankruptcy Procedure, and files this Second Motion for Partial Summary Judgment in favor of Lone Star and against Defendant, Rabo AgriFinance LLC, f/k/a Rabo Agrifinance, Inc. ("Rabo") as follows:

1

## SUMMARY

1. Lone Star's First Motion for Partial Summary Judgment (the "First MSJ") was intended to narrow the issues to prove certain liability claims and establish the legal framework for the claims to be heard at trial. Now that this framework is known, the parties can know which facts will be relevant. Lone Star brings this Second Motion for Partial Summary Judgment to conclusively establish certain of these facts and resolve several issues remaining from the First MSJ.

2. ***Fraud*** - Lone Star believes that while many aspects of its fraud claims must be resolved at trial, certain claims and facts can be established as a matter of law. Lone Star seeks to establish the representations that were made, their falsity, and the measure of resulting damages.

3. ***Conversion (Payment in Full)*** - The Court has previously determined that the meaning of "payment in full" in the Intercreditor Agreement ("ICA") is a fact question. However, Lone Star believes that whether certain disbursements were payments for cattle is a primarily an accounting question that can be determined as a matter of law.

4. ***Conversion (Tracing)*** – The Court has previously determined that Lone Star retained its first lien on the Tucker & Tyler Cattle and Pasture Cattle. Based on evidence obtained after filing the First MSJ, Lone Star seeks to establish tracing of the remaining proceeds of these cattle and of cattle alleged not to be paid for in full.

5. ***Rabo's Affirmative Defenses and Counterclaims*** – Lone Star seeks to establish that the vast majority—if not all—of Rabo's affirmative defenses are legally and factually baseless. Lone Star further seeks to establish that Rabo has no legally sufficient evidence to establish certain elements of its counterclaims.

## **GROUNDS FOR SUMMARY JUDGMENT**

6. Lone Star seeks the above partial summary judgment relief based on the legal and factual grounds and sub-grounds set out herein. In the event that the Court cannot grant a summary judgment on the requested grounds, Lone Star seeks an order stating the relevant undisputed facts and legal conclusions set out in the sub-grounds or as otherwise determined by the Court.

### **Ground 1 – Rabo defrauded Lone Star with the September 2015 consolidated BBR.**

7. Lone Star was provided with numerous Borrowing Base Reports ("BBRs") for Cliff Hanger that valued Cliff Hanger's collateral in comparison to the outstanding debts. In addition, Lone Star received certain "Consolidated BBRs" that additionally calculated the value of cattle owned by Tucker and Tyler Waggoner or Waggoner Cattle. Lone Star claims that the BBRs contained materially false information that misled Lone Star as to the actual financial condition of Cliff Hanger. Lone Star seeks and is entitled to summary judgment on the following:

   a. Lone Star received certain Cliff Hanger or Consolidated BBRs

   b. Due to the use of false valuation model inputs that were more favorable than could be reasonably projected, the projected value of the cattle on the BBRs was materially overstated.

   c. Rabo was aware of the false inputs and that the false inputs would result in a misrepresentation of the projected cattle value.

   d. Rabo created the September 2015 Consolidated BBR and provided it to Lone Star for Lone Star to evaluate in its loan renewal process.

   e. Lone Star additionally seeks summary judgment on certain material facts supporting its fraud claims, as set forth in detail in Lone Star's brief in support of this motion.

### **Ground 2 – As a result of the fraud, Lone Star was injured by the subordination of its liens.**

8. Assuming that Lone Star's lien was subordinated as to the Waggoner Cattle calves purchased for less than fair market value and as to the Beef Cattle shipped to feedyards, Lone Star

3

alleges that the conditions for subordination only occurred due to Lone Star's reliance on Rabo's misrepresentations. Rabo was only able to continue receiving such a first lien because Lone Star was defrauded into allowing the operations to continue. Lone Star seeks and is entitled to summary judgment on the following:

    a.    Had Lone Star known the truth, Lone Star would have not renewed its loans and would have asserted the full rights available to it under its credit agreements and state law.

    b.    Lone Star had the right to demand that Waggoner Cattle sell calves at a reasonable price.

    c.    Rabo's fraud damaged Lone Star and enriched Rabo by the amount by which Lone Star's collateral position was diminished and Rabo's collateral position was improved due to the purchase of calves for less than a reasonable price after January 1, 2016.

    d.    Lone Star had the right to require the sale of the Beef Cattle and payment of proceeds to Lone Star prior to their shipment to the Cliff Hanger Feedyards.

    e.    Rabo's fraud damaged Lone Star and enriched Rabo by the amount by which Lone Star's collateral position was diminished and Rabo's collateral position was improved due to the shipment of Beef Cattle to the Cliff Hanger Feedyards after January 1, 2016.

**Ground 3 – Rabo bears the burden to establish satisfaction of the "Payment in Full" condition in the ICA.**

9.    For Holstein Cattle, a condition precedent to subordination under the ICA is payment in full. Lone Star seeks and is entitled to summary judgment on the following:

    a.    Because Rabo is the party that seeks the benefit of the ICA contract, Rabo bears the burden to establish that the conditions for subordination were satisfied.

**Ground 4 – Certain payments from Cliff Hanger to Waggoner Cattle were transfers of capital, not payments for Waggoner Cattle calves or loans that could be offset.**

10.    Certain of the funds transferred from Cliff Hanger to Waggoner Cattle were booked in an intercompany "Due to/Due from" account. Lone Star contends that this account merely

4

reflects intercompany transfers, not loans. Additionally, certain funds transferred from Cliff Hanger to Waggoner Cattle were initially booked as purchases of inventory in Cliff Hanger and were booked as sales in Waggoner Cattle, but were reclassified to reflect that they were payments related to the Tucker & Tyler Cattle. Lone Star seeks and is entitled to summary judgment on the following:

    a. The DTDF Accounts merely reflected the transfer of assets and the payments booked in that account were not loans to Waggoner Cattle.

    b. At least the following distributions booked in the DTDF Accounts were not payments for calves purchased from Waggoner Cattle:

        i. $1,167,738.25 of these payments were a distribution, approved by Rabo, of remaining lending capacity for cattle shipped to feedyards prior to funding.

        ii. At least $2,250,000 of these payments were distributions of profits that were approved by Rabo.

        iii. At least $3.7 million of these payments that were for capital improvements at the Bugtussle Calf Ranch.

        iv. Any amounts advanced to pay for or finance calves owned by Tucker and Tyler Waggoner.

    c. Any portion of amounts booked as purchases/sales of cattle that was to pay for or finance calves owned by Tucker and Tyler Waggoner is not a payment for calves purchased from Waggoner Cattle.

**Ground 5 – Previous Tracing of cattle proceeds to Rabo is no longer disputed.**

11. Lone Star re-asserts its previous summary judgment grounds on the tracing of collateral based on the deposition of Steve Dawson, Rabo's accounting expert, who clarified that assuming Lone Star had the first lien on the collateral as alleged, then Lone Star had successfully traced the proceeds of that collateral. Lone Star seeks and is entitled to summary judgment on the following:

    a.    The proceeds of the Tucker & Tyler Cattle received by Rabo after June 29, 2016 totals $7,777,507. Based on the Court's prior ruling, Rabo is liable for conversion of this amount.

    b.    The proceeds of the Pasture Cattle received by Rabo after June 29, 2016 totals $3,912,086. Based on the Court's prior ruling, Rabo is liable for conversion of this amount.

    c.    The proceeds received by Rabo for the cattle booked in the DTDF accounts when transferred to Cliff Hanger (the "Offset Cattle") totals $2,730,662. Based on the ruling requested in Ground 4a, the DTDF Account was not a debt that could be offset as a payment for cattle and therefore no payment was made for the Offset Cattle and Lone Star's first lien survived. Rabo is therefore liable for conversion of this amount.

    d.    The proceeds of the Beef Cattle in feedyards received by Rabo totals $7,381,783.

### **Ground 6 – The majority of Rabo's affirmative defenses fail.**

12.    Lone Star seeks and is entitled to summary judgment on the following:

    a.    There is no legally sufficient evidence for the defenses identified in Section VIII.A of Lone Star's brief in support of this Motion.

    b.    Rabo's defenses identified in Section VIII.B of Lone Star's brief in support of this Motion do not prevent Lone Star's recovery, either because they have been addressed in prior rulings, been rendered moot, or have been withdrawn.

### **Ground 7 – Rabo's claims based on alleged overpayments fail**

13.    Even assuming that there were overpayments made, Rabo must establish that (1) Lone Star received the overpayments and that (2) such receipt of overpayment violated Rabo's property rights or contract rights. The Court has already ruled against Rabo on its claim that Lone Star indirectly received the benefits of the overpayments via improvements to Lone Star's collateral. Lone Star seeks and is entitled to summary judgment on the following:

    a.    There is no evidence supporting Rabo's assertion that Lone Star received proceeds of Rabo's first lien collateral or funds advanced to Cliff Hanger because Rabo cannot trace such proceeds or funds from Cliff Hanger to Waggoner Cattle to Lone Star.

6

    b.    Even if traceable from Rabo to Lone Star, Lone Star is not liable for the receipt of funds advanced by Rabo because Rabo has no basis to claim that Lone Star violated Rabo's property or contract rights in receiving those funds.

**Ground 8 – Rabo's claims based on post-ICA nondisclosures fail**

14.    Rabo asserts that Lone Star breached the ICA by failing to inform Rabo of the Debtors' defaults and seeks damages for the amount of Rabo's loss that could have been avoided had these defaults been disclosed. Lone Star seeks and is entitled to summary judgment on the following:

    a.    There is no evidence of proximate cause because there is no evidence that Lone Star knew of any default of which Rabo was unaware.

    b.    There is no evidence of damages because there is no evidence that Rabo could have avoided any loss if the alleged defaults had been disclosed.

    c.    There is no admissible evidence of damages because Rabo has failed to disclose its calculation of damages under Rule 26(a)(1)(A)(iii).

**Ground 9 – Lone Star's lawsuit is not a breach of the ICA.**

15.    Rabo asserts that Lone Star breached the ICA by filing this suit, claiming that the agreement not to "contest the validity, enforceability, perfection, or priority of the lien and security interest of the other creditor" bars Lone Star's tort claims. Doc. 247 ¶ 219. Because (as previously determined) the ICA does not bar Lone Star's tort claims, Lone Star seeks and is entitled to summary judgment on this claim.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, upon the Court's consideration of this Motion and the evidence, arguments and authorities presented in Plaintiff's Brief in Support of its First Motion for Partial Summary Judgment, the Court grant this Motion and enter judgment in favor of Plaintiff and against Defendant for the damages sustained by Lone Star as a result of Rabo's fraud.

Plaintiff further prays that the Court enter judgment in favor of Plaintiff and against Defendant for the additional sums of converted proceeds of Lone Star's collateral as found by the Court.

Plaintiff further prays that the Court find and determine all these material facts and amounts regarding which there is no bona fide dispute.

Plaintiff further prays for all other and further relief to which Plaintiff may show itself justly entitled, whether legal or equitable, whether general or special.

Dated this 23rd day of September, 2022.

Respectfully submitted,

LOVELL LOVELL ISERN & FARABOUGH, LLP
John H. Lovell, SBN 12609300
john@lovell-law.net
Joe L. Lovell, SBN 12609100
joe@lovell-law.net
Matthew S. Merriott, SBN 24100846
matthew@lovell-law.net
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

By: /s/ John H. Lovell
    John H. Lovell

*Attorneys for Plaintiff,
Lone Star State Bank of West Texas*

**Certificate of Service**

    I hereby certify that on September 23, 2022, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case, including the following:

| | |
|---|---|
| Michael Johnson<br>RAY QUINNEY & NEBEKER, P.C.<br>36 South State, Suite 1400<br>Salt Lake City, UT 84111 | *Via ecf service: mjohnson@rqn.com* |

and

| | |
|---|---|
| Thomas C. Riney | *Via ecf service: tom.riney@Uuwlaw.com* |
| W. Heath Hendricks | *Via ecf service: Heath.Hendricks@uwlaw.com* |
| UNDERWOOD LAW FIRM, P.C.<br>500 S. Taylor, Suite 1200, LB 233<br>Amarillo, Texas 79101<br>*Attorneys for Rabo Agrifinance, LLC* | |

                                                                 */s/ John H. Lovell*
                                                                  John H. Lovell